# EXHIBIT D

## Apple's "Cease and Desist"

## Notice

Larry Golden, CEO
ATPG Technology, LLC
740 Woodruff Rd., Greenville, SC 29607
Tel 864-288-5605 / Atpg-tech@charter.net

July 1, 2019

Via Electronic Mail

Apple
Krista Grewal, Counsel IP Transactions
One Apple Park Way
Cupertino, CA 95014
T 408 974 5376
E kgrewal@apple.com
www.apple.com

RE: Cease and Desist Request

Ms. Grewal:

My correspondence with you was not an inquiry. My correspondence with you was to give you another "notice" (the first "notice" was delivered to Apple in 2010). This correspondence is to demand a "cease and desist" of Apple's direct infringement, induced infringement, and prosecution of Apple's patent applications that do not antedate my Patents; and, which are anticipated by my Patents.

Certain Apple Inc.'s smartphones, laptops, tablets, and smartwatches are infringing at least one patent claim of PO's following patents: [7,385,497]; [7,636,033]; [8,106,752]; [8,334,761]; [8,531,280]; [RE43,891]; [RE43,990]; [9,096,189]; [9,589,439]; and, [10,163,287].

Certainly, I appreciate the comment you made in defense of Apple's infringing activities in your last correspondence via email dated June 27, 2019: "As an example, no Apple product includes detectors or indicator lights for detecting "at least one of chemical, biological, radiological, or explosive" agents and compounds as required by the asserted patents."

To address your comments above. Apple's smartphones; Apple's smartwatches; or Apple's smartphones interconnected to Apple's smartwatches; all, infringes at least one patent claim for a CMDC device(s) of the PO's patents listed above for chemical, biological, radiological, or explosive" agents and compounds. (Exhibit 1 for Chart Outline of Patent Claims)

Apple has applied for patents for its smartphones and smartwatches that covers chemical and biological detection; biometric fingerprint and signature; motion sensors; and, the detection of humans. I expect Apple to submit to the USPTO an IDS to disclose my patents as prior art references for continued prosecution. If you fail to do so, I will seek to have the issued patents invalidated.

1

Because Apple's smartphones; Apple's smartwatches; or Apple's smartphones interconnected to Apple's smartwatches infringes my CMDC device(s), I am demanding Apple "cease and desist" the manufacture, offer for sell, the sell, and the inducement of others to infringe my patented invention(s) (i.e. the government, the automobile industry, the medical industry, the home security industry, etc.)

**Apple Watch:** You can check your heart rate any time using the Heart Rate app. Open the app, then wait for Apple Watch to measure your heart rate. You can also turn on heart rate notifications, so you know if your heart rate remains above or below a chosen beats per minute (BPM), or to occasionally check for an irregular heart rhythm.

**PO's specifications:** "The present invention comprehends a chemical… detector…"
New patents suggest Apple wants to teach your Watch to smell, which…
https://www.mobihealthnews.com/.../new-patents-suggest-apple-wants-teach-your-wat...
"Apr 8, 2019 - The two sensors could also be used to detect pollution or carbon monoxide, patents from Apple that suggest the company might be working on chemical smell ... devices, which could mean phones, tablets or smartwatches."

**PO's specifications:** "Product grouping 2 (sensors) include, but are not limited to… biological… detectors…"
Apple now says its smartwatch tech to detect atrial fibrillation is not for...
https://www.washingtonpost.com/.../apple...smartwatch...detect.../cb5c46bc-f978-11e8-8...
"Dec 6, 2018 - Apple now says its smartwatch tech to detect atrial fibrillation is not for... for the "worried well" who want to monitor their biological signals…" "[t]his is the beginning of a real sea change in how physiologic and biologic data can be collected outside traditional care settings."

**PO's specifications:** "Product grouping 6 (biometrics) include, but are not limited to, fingerprint recognition…"
Your heart rate. What it means, and where on Apple Watch you'll find it...
https://support.apple.com/en-us/HT204666
"May 13, 2019 - To use the electrical heart sensor to measure your heart rate, open the Heart Rate app and place your finger on the Digital Crown. You will get a faster reading with higher fidelity — getting a measurement every second instead of every 5 seconds. You can also use the electrical heart sensor to take an ECG with the ECG app. The ECG app can record your heartbeat and rhythm using the electrical heart sensor on the Apple Watch."

**PO's specifications:** "Product grouping 6 (biometrics) include, but are not limited to… signature…"
Blood signature could improve early TB diagnosis – ScienceDaily
https://www.sciencedaily.com/releases/2018/06/180619122732.htm
A Blood RNA Signature Detecting Severe Disease in Young Dengue...
https://www.ncbi.nlm.nih.gov/pubmed/29490079
Gene expression signature for detection of gastric cancer in peripheral blood...
https://www.ncbi.nlm.nih.gov/pubmed/29928354

2

Blood-Based Protein Signatures for Early Detection of Colorectal Cancer
https://www.nature.com › ... › clinical and systematic review

**PO's specifications:** "Product grouping 2 (sensors) include, but are not limited to… motion sensors…
Apple Watch Series 5 Features Might Include Cool Motion Detecting...
https://www.ibtimes.com/apple-watch-series-5-features-might-include-cool-motion-detec...
"Apr 15, 2019 - The sensor could work through the smartwatch's ECG and built-in tilt sensor, which means that by making specific wrist movements it can carry out commands that usually needs the user tapping on the screen to work. This includes opening iMessages and even scrolling through quick replies to answer. Another possibility is the detecting blood flow patterns of a user's wrist to allow them to answer a call. Change in blood flow when a wearer closes his wrist and then opening the hands again could actually be enough to answer a phone call."

**PO's specifications:** "Product grouping 2 (sensors) include, but are not limited to… detection of humans…"
How to set up and use fall detection on Apple Watch Series 4 | iMore
https://www.imore.com/how-set-and-use-fall-detection-apple-watch-series-4
"Dec 4, 2018 - With fall detection, Apple Watch users have some peace of mind. When a fall occurs, the watch can help you reach out to your ...With fall detection, your Apple Watch is intuitive enough to know if you're moving. When you are following a fall, it will wait for you to stop to respond to the alert. If you're immobile and not moving, the watch will contact emergency services automatically if you don't answer within 60 seconds."

I included the dependent claims of my RE43,990 patent in the attached chart because the PO is filing a petition at the Patent Office (under the Administrative Procedures Act) to withdraw / unwind the cancellation certificate regarding the independent claims 11, 74, & 81 of the Plaintiff's RE43,990 patent. The *Return Mail, Inc. v. United States Postal Service* decision was based on "subject matter jurisdiction," which means it is Supreme Court law now that the entire action against PO's patent was outside of the Agency's statutory authority. The "cure" will be to ask them to nuke the resulting certificate.

I'm not interested in you responding to me with "spin" on what I have patented. Respond only if you are ready to negotiate a settlement. I have done all I need to do prior to filing in the District Court ("notice" and "cease and desist").

Thanks for your time,

Larry Golden

# EXHIBIT 1

# FINAL AMENDED COMPLAINT and CLAIM CHART OUTLINE: LARRY GOLDEN vs. THE UNITED STATES (CASE NUMBER: 13-307 C)

**Patent #: 9,589,439; Independent Claim 22**

**Page 13 Claim Chart; Page 35 Amended Complaint**

| Apple's iPhone / iPad Camera Biosensor for Facial Heart Rate Monitor (detection device) | Patent #: 9,589,439; Independent Claim 22 | Patent #: RE 43,990; Dependent Claims 18, 118, 12, 28, 25, 30, 22, 20 |
|---|---|---|

**Page 19 Claim Chart; Page 37 Amended Complaint**

| Apple's iPhone 5, 5c, 5s, 6, 6 Plus and the iPad interconnected to the Apple Watch (detection device) | Patent #: 9,589,439; Independent Claim 22 | Patent #: RE 43,990; Dependent Claims 18, 118, 12, 28, 25, 30, 22, 20 |
|---|---|---|

**Page 25 Claim Chart; Page 40 Amended Complaint**

| Apple's iPhone / iPad (monitoring equipment); Apple Watch (detection device); interconnected to the August Smart Lock (locking device) | Patent #: 9,589,439; Independent Claim 22 | Patent #: RE 43,990; Dependent Claims 18, 118, 12, 28, 25, 30, 22, 20 |
|---|---|---|

**Page 31 Claim Chart; Page 42 Amended Complaint**

| Apple's iPhone / iPad (monitoring equipment); Apple Watch (detection device); Apple's HomeKit; August Connect; interconnected to the August Smart Lock (locking device) | Patent #: 9,589,439; Independent Claim 22 | Patent #: RE 43,990; Dependent Claims 18, 118, 12, 28, 25, 30, 22, 20 |
|---|---|---|

**Page 37 Claim Chart; Page 44 Amended Complaint**

| Apple's iPhone / iPad (monitoring equipment); Apple Watch (detection device); interconnected to Ford's MyFord Mobile App (locking device) | Patent #: 9,589,439; Independent Claim 22 | Patent #: RE 43,990; Dependent Claims 18, 118, 12, 28, 25, 30, 22, 20 |
|---|---|---|

**Patent #: 9,589,439; Independent Claim 13**

**Page 79 Claim Chart; Page 65 Amended Complaint**

| Apple iPAD Tablet Boeing MH-6 Little Bird Helicopter | Patent #: 9,589,439; Independent Claim 13 | Patent #: RE 43,990; Dependent Claims (18, 118, 12, 28, 25, 20, 32, 30) |
|---|---|---|

**Page 84 Claim Chart; Page 67 Amended Complaint**

| Navy Marine Corps Intranet (NMCI) Network - Apple iPad | Patent #: 9,589,439; Independent Claim 13 | Patent #: RE 43,990; Dependent Claims (18, 118, 12, 28, 25, 20, 32, 30) |
|---|---|---|

**Page 94 Claim Chart; Page 72 Amended Complaint**

| Variable's "NODE+Oxa" for the Apple (iPhone) Smartphone | Patent #: 9,589,439; Independent Claim 13 | Patent #: RE 43,990; Dependent Claims (18, 118, 12, 28, 25, 20, 32, 30) |
|---|---|---|

**Patent #: 9,589,439; Independent Claim 16**

**Page 157 Claim Chart; Page 95 Amended Complaint**

| iPhone "Biodetector" Smartphone | Patent #: 9,589,439; Independent Claim 16 | Patent #: RE 43,990; Dependent Claims (118, 18, 122, 124, 108) |
|---|---|---|

**Patent #: 9,589,439; Independent Claim 17**

**Page 168 Claim Chart; Page 99 Amended Complaint**

| "VOCket System" / "Nett Warrior" Smartphone System | Patent #: 9,589,439; Independent Claim 17 | Patent #: RE 43,990; Dependent Claims (119, 17, 18, 124, 108) |
|---|---|---|

**Page 177 Claim Chart; Page 79 Amended Complaint**

| "Biotouch System" / "Nett Warrior" Smartphone System | Patent #: 9,589,439; Independent Claim 17 | Patent #: RE 43,990; Dependent Claims (119, 17, 18, 124, 108) |
|---|---|---|

**Patent #: 9,589,439; Independent Claim 19**

**Page 188 Claim Chart; Page 106 Amended Complaint**

| EAGER: Mobile-Phone Based Single Molecule Imaging for DNA | Patent #: 9,589,439; Independent Claim 19 | Patent #: RE 43,990; Dependent Claims 118, 92, 25, 12, 124, 99 |
|---|---|---|

**Page 193 Claim Chart; Page 108 Amended Complaint**

| INSPIRE Track 2: Public Health Nanotechnology and Mobility (PHeNoM) | Patent #: 9,589,439; Independent Claim 19 | Patent #: RE 43,990; Dependent Claims 118, 92, 25, 12, 124, 99 |
|---|---|---|

**Page 198 Claim Chart; Page 110 Amended Complaint**

| PFI:BIC Human-Centered Smart-Integration of Mobile Imaging and Sensing | Patent #: 9,589,439; Independent Claim 19 | Patent #: RE 43,990; Dependent Claims 118, 92, 25, 12, 124, 99 |
|---|---|---|

**Page 203 Claim Chart; Page 113 Amended Complaint**

| EFRI-BioFlex: Cellphone-Based Digital Immunoassay Platform | Patent #: 9,589,439; Independent Claim 19 | Patent #: RE 43,990; Dependent Claims 118, 92, 25, 12, 124, 99 |
|---|---|---|

**Page 208 Claim Chart; Page 115 Amended Complaint**

| "Multimode Smartphone Biosensor" | Patent #: 9,589,439; Independent Claim 19 | Patent #: RE 43,990; Dependent Claims 118, 92, 25, 12, 124, 99 |
|---|---|---|

**Page 213 Claim Chart; Page 117 Amended Complaint**

| EAGER: Lab-in-a-Smartphone | Patent #: 9,589,439; Independent Claim 19 | Patent #: RE 43,990; Dependent Claims 118, 92, 25, 12, 124, 99 |
|---|---|---|

**Page 218 Claim Chart; Page 119 Amended Complaint**

| PFI-BIC "Pathtracker: Smartphone-based for Mobile Infectious Disease Detection | Patent #: 9,589,439; Independent Claim 19 | Patent #: RE 43,990; Dependent Claims 118, 92, 25, 12, 124, 99 |
|---|---|---|

**Page 223 Claim Chart; Page 122 Amended Complaint**

| I-Corps: Ultra-Sensitive Lateral Flow Reporters / Lab-on-Phone Platform | Patent #: 9,589,439; Independent Claim 19 | Patent #: RE 43,990; Dependent Claims 118, 92, 25, 12, 124, 99 |
|---|---|---|

**Page 228 Claim Chart; Page 124 Amended Complaint**

| Smartphone (iPhone) Microscope | Patent #: 9,589,439; Independent Claim 19 | Patent #: RE 43,990; Dependent Claims 118, 92, 25, 12, 124, 99 |
|---|---|---|

**Page 233 Claim Chart; Page 126 Amended Complaint**

| Smartphone (iPhone) Biosensor "Cradle" | Patent #: 9,589,439; Independent Claim 19 | Patent #: RE 43,990; Dependent Claims 118, 92, 25, 12, 124, 99 |
|---|---|---|

**Page 238 Claim Chart; Page 128 Amended Complaint**

| AOptix Stratus MX Peripheral for the Apple (iPhone) Smartphone | Patent #: 9,589,439; Independent Claim 19 | Patent #: RE 43,990; Dependent Claims 118, 92, 25, 12, 124, 99 |
|---|---|---|

**Page 244 Claim Chart; Page 131 Amended Complaint**

| PositiveID - Boeing / M-Band Apple (iPhone) Smartphone | Patent #: 9,589,439; Independent Claim 19 | Patent #: RE 43,990; Dependent Claims 118, 92, 25, 12, 124, 99 |
|---|---|---|

**Patent #: 9,589,439; Independent Claim 20**

**Page 255 Claim Chart; Page 84 Amended Complaint**

| "Cell-All": Apple iPhone | Patent #: 9,589,439; Independent Claim 20 | Patents: 8,106,752; & RE 43,990; Dependent Claims (34); (118, 18, 92, 25, 124) |
|---|---|---|

**Page 261 Claim Chart; Page 135 Amended Complaint**

| "Kromek D3S-NET": Apple iPhone | Patent #: 9,589,439; Independent Claim 20 | Patents: 8,106,752; & RE 43,990; Dependent Claims (34); (118, 18, 92, 25, 124) |
|---|---|---|

**Page 267 Claim Chart; Page 138 Amended Complaint**

| Biomeme "two3" Mobile Thermocycler: Apple iPhone | Patent #: 9,589,439; Independent Claim 20 | Patents: 8,106,752; & RE 43,990; Dependent Claims (34); (118, 18, 92, 25, 124) |
|---|---|---|

**Page 273 Claim Chart; Page 140 Amended Complaint**

| Smartphone-operated "LAMP box": Apple iPhone | Patent #: 9,589,439; Independent Claim 20 | Patents: 8,106,752; & RE 43,990; Dependent Claims (34); (118, 18, 92, 25, 124) |
|---|---|---|

**Page 279 Claim Chart; Page 143 Amended Complaint**

| Alluviam LLC HazMasterG3: Apple iPhone | Patent #: 9,589,439; Independent Claim 20 | Patents: 8,106,752; & RE 43,990; Dependent Claims (34); (118, 18, 92, 25, 124) |
|---|---|---|

**Page 285 Claim Chart; Page 146 Amended Complaint**

| FePhone Point-of-Care: Apple iPhone | Patent #: 9,589,439; Independent Claim 20 | Patents: 8,106,752; & RE 43,990; Dependent Claims (34); (118, 18, 92, 25, 124) |
|---|---|---|

**Page 291 Claim Chart; Page 148 Amended Complaint**

| NutriPhone Lab-on-a-Chip: Apple iPhone | Patent #: 9,589,439; Independent Claim 20 | Patents: 8,106,752; & RE 43,990; Dependent Claims (34); (118, 18, 92, 25, 124) |
|---|---|---|

**Page 297 Claim Chart; Page 150 Amended Complaint**

| FeverPhone: Apple iPhone | Patent #: 9,589,439; Independent Claim 20 | Patents: 8,106,752; & RE 43,990; Dependent Claims (34); (118, 18, 92, 25, 124) |
|---|---|---|

**Page 303 Claim Chart; Page 153 Amended Complaint**

| Solar Thermal PCR Test: Apple iPhone | Patent #: 9,589,439; Independent Claim 20 | Patents: 8,106,752; & RE 43,990; Dependent Claims (34); (118, 18, 92, 25, 124) |
|---|---|---|

**Page 309 Claim Chart; Page 156 Amended Complaint**

| Lab-on-a-Drone: Apple iPhone | Patent #: 9,589,439; Independent Claim 20 | Patents: 8,106,752; & RE 43,990; Dependent Claims (34); (118, 18, 92, 25, 124) |
|---|---|---|

**Patent #: RE 43,891; Independent Claim 44**

**Page 364 Claim Chart; Page 172 Amended Complaint**

| Dream Hammer's "Ballista" Software for Computer, Tablet or Smartphone | Patent #: RE 43,891; Independent Claim 44 | Patent #: RE 43,891; Dependent Claims (55, 27) |
|---|---|---|

From: atpg-tech@charter.net
To: "Krista Grewal" <kgrewal@apple.com>, "atpg-tech@charter.net" <atpg-tech@charter.net>
Cc:
Bcc:
Priority: Normal
Date: Friday August 14 2020 12:47:04PM
Re: ATPG Patent Portfolio Apple

Ms. Grewal:

My name is Larry Golden and we have had some communication in the past when you first contacted me to direct future correspondence to you instead of directing it to Apple's CEO. If that's no longer relevant, please advise on where in the future to direct my communication.

I am sending you this as a notice of filings: My offer to negotiate an agreement before litigation begins still stand. I have four filings that implicates Apple. First, I have narrowed my case at the Court of Federal Claims (copy of amendment attached). Second, I filed a complaint of infringement in the U.S. District Court; S.C. District-Greenville Division (copy of complaint attached). Third, I filed a complaint of Antitrust in the U.S. District Court; S.C. District-Greenville Division (copy of complaint attached). Fourth, I am petitioning the Supreme Court.

Of course you know a positive opinion in either one of the cases triggers a chain reaction. In at least two of the cases I am asking for injunctive relief and trials by jury. Also, in at least two of the cases I am targeting a percentage of ownership in of Apple. I am also targeting negotiating a non-exclusive agreement with at least one of your competitors. In so doing, it gives me the leverage I need to file with the International Trade Commission (ITC).

Personally, I am not trying to hurt Apple's business, but I can't be held responsible if Apple allows its pride to dictate decisions that hurts its bottom line in the markets with investors and consumers. An agreement and Apple is removed from further litigation.

Please acknowledge receipt of this e-mail. If not I will again send notice to your Apple's CEO Tim Cook.

Larry Golden
8642885605 / 8649927104
atpg-tech@charter.net


------------------------------------------

From: "Krista Grewal"
To: atpg-tech@charter.net
Cc:
Sent: Thursday June 27 2019 12:44:29PM
Subject: Re: ATPG Patent Portfolio Apple / Motorola

Dear Larry,

Please see the attached correspondence.

Regards,

Krista

From: atpg-tech@charter.net
To: "Krista Grewal" <kgrewal@apple.com>
Cc:
Bcc:
Priority: Normal
Date: Tuesday August 20 2019 8:01:33AM
Re: Cease and Desist

Dear Krista,

Please see the attached correspondence. If you're not considering settlement there's no need for you to respond.

Larry


-------------------------------------------

From: "Krista Grewal"
To: atpg-tech@charter.net
Cc:
Sent: Thursday August 15 2019 5:05:33PM
Subject: Re: Cease and Desist

Dear Larry,

Please see the attached correspondence.

Regards,

Krista

Krista Grewal: Counsel for Apple IP Transactions

I don't fully understand your position but I hope it is good enough for your boss Tim Cook. Here again is my position. I am filing in District Court very soon. I am requesting a jury Trial. I am going to litigate my case on at least 95% extrinsic evidence. "[e]vidence that relates to a contract, but is not contained within the document itself (for example, circumstances surrounding the negotiations of the contract). This evidence is not admissible unless there is an ambiguity in the contract". I had several implied-in-fact contracts that the Government breached when they entered in to several contracts with Apple for the development, use, and commercialization of my CMDC devices (refer to at least pages 17-44 of the attached document – "Intellectual Property Subject Matter as Plaintiff-Appellant's Private Property"). To support my written pleadings of "extrinsic evidence" I will introduce my video that can be found at: "*YouTube Larry Golden*" for any search engine; "*Larry Golden CMDC – YouTube*" for Google search engine; and, "*Documentary Video*" on my website at [atpg-tech.com] I have intrinsic (i.e. patents and patent claims) and extrinsic evidence to show "WHY" my CMDC device (i.e. Apple's mobile devices) was ever brought into existence.

### Extrinsic Evidence in Deciding Claims of Patent Eligibility

In a second case, the Court of Appeals for the Federal Circuit issued an opinion that allowed extrinsic evidence use. In the decision, *Aatrix Software, Inc., v. Green Shades Software, Inc*., No. 2017-1452 (Fed. Cir. February 14, 2018), the Federal Circuit held that factual questions can be used to preclude dismissal of complaint of patent ineligibility. Therefore, factual determinations may now be considered by the court. In effect, motions to dismiss and motions for summary judgment may now consider additional evidence. In essence, it allows a patentee to add evidence or rely on allegations outside of the patent application itself. The court may now consider additional evidence offered by the patentee that has been entered into the court record.

### Issues Raised in Court Allowed, Though Not Part of Patent Record

For example, in *Aatrix*, the court considered the complainant's allegations that the claimed invention "reduces the risk of thrashing." However, the patent itself made no mention of this. As the reduced risk of thrashing has become an issued raised and discussed in court, it became part of the court record but was still never officially a part of the patent. As such, this would be considered extrinsic evidence. And departing with

most precedential decisions, the court in this case decided to rely on the allegations in finding that the patent was patentable because it was not conventional nor routine.

**Declarations as Extrinsic Evidence**

Specifically, the court noted, as part of the extrinsic evidence considered, that the patentee submitted declarations that discussed the claimed inventions in detail.  And in an opinion that seemed to fault the lower district court for not considering these declarations, the court reversed the district court's findings.  This seems to be part of a new trend in determining patent eligibility as another recent court case, *Inventor Holdings, LLC v. Bed Bath & Beyond*, Inc. also allowed reliance on extrinsic information to support patent eligibility.  In *Inventor Holdings*, the patentee argued its invention required complex programming, but the court noted that the patentee did not cite that in its patent or anywhere in the record.

https://www.klemchuk.com/ip-law-trends/federal-court-appeals-agrees-allow-use-extrinsic-evidence

This completes your Notice. I have the paperwork and plan to file before the end of the month. If you are interested in negotiating a non-disclosure settlement, I suggest you contact me immediately.

From: atpg-tech@charter.net
To: "kgrewal@apple.com" <kgrewal@apple.com>
Cc:
Bcc:
Priority: Normal
Date: Monday July 1 2019 10:00:35PM
FW: Re: Cease and Desist

Please see the attached "Apple Cease and Desist Reply..."

Larry


-----------------------------------------

From: "Krista Grewal"
To: atpg-tech@charter.net
Cc:
Sent: Thursday June 27 2019 12:44:29PM
Subject: Re: ATPG Patent Portfolio Apple / Motorola

Dear Larry,

Please see the attached correspondence.

Regards,

Krista

# ATPG Technology, LLC
*(Anti-Terrorism Product Grouping)*

**522 Peach Grove Place, Mauldin, SC 29662**
**E-mail: atpg-tech@charter.net**
**Bus. 864-288-5605 / Mobile: 864-992-7104**

November 11, 2010

Apple, Inc.
Attn: Bruce Sewell, SVP & General Counsel
1 Infinite Loop
Cupertino, CA 95014

Dear Sir:

My name is Larry Golden, CEO ATPG Technology, LLC. Thanks for allowing me the opportunity to present technology that is beneficial for projects being researched and developed within your Company.

I'm interested in speaking with you about the possibility of a licensing agreement(s) on the technology covered in my Patents.

I have been granted two (2) patents and have two (2) continuation patent applications that should be ready for issue within the next four (4) months.

My technology covers electronic devices, mobile devices, authentication (biometrics) technology; mobile devices lock and unlock features, RFID reader technology for mobile devices, embedded sensors in electronic devices, embedded sensors in mobile and portable devices, mobile phones as readers, embedded sensors in cell phone cases; mobile, electronic and portable devices used as monitoring equipment for locating, tracking, navigating and status of sensors.

I briefly read through the over 500 patent applications filed by Apple, Inc. available on the net and pulled out a few applications I thought covered technology similar to that I listed above. [see list below]

20100207721 SYSTEMS AND METHODS FOR IDENTIFYING UNAUTHORIZED USERS OF AN ELECTRONIC DEVICE 08-19-2010 (Gloria Lin)

20100082821 Device-to-device workflows - Systems, methods, and devices are provided for performing a workflow with two or more electronic devices 04-01-2010 (Gloria Lin)

20100078475 System and method for transportation check-in 04-01-2010 (Gloria Lin)

20100042954 Motion based input selection - method for selecting an input value based on sensed motion is provided 02-18-2010 (Gloria Lin)

20100113950 Seamlessly Embedded Heart Rate Monitor - This is directed to an electronic device having an integrated sensor for detecting a user's cardiac activity 05-06-2010

20100081385 Peer-to-peer host station - method and system is disclosed for allowing the sharing of one or more system resources between multiple devices 04-01-2010

20100078562 HIDDEN SENSORS IN AN ELECTRONIC DEVICE - electronic device having one or more sensors is provided 04-01-2010

20100017506 SYSTEMS AND METHODS FOR MONITORING DATA AND BANDWIDTH USAGE 01-21-2010

20100017118 PARKING & LOCATION MANAGEMENT PROCESSES & ALERTS 01-21-2010

20090301633 TAMPER RESISTANT LABEL FOR DETECTING DEVICE OPENINGS 12-10-2009

20090287067 INTEGRATED SENSORS FOR TRACKING PERFORMANCE METRICS 11-19-2009

20090279696 SYSTEM AND METHOD OF PERFORMING AUTHENTICATION 11-12-2009

20090279689 SYSTEM AND METHOD OF AUTHENTICATION - Disclosed herein are systems, methods and computer readable media for performing authentication 11-12-2009

20090229892 SWITCHABLE SENSOR CONFIGURATIONS - input device with switchable sensor configurations 09-17-2009

20090175509 Personal computing device control using face detection and recognition 07-09-2009

20090175499 Systems and methods for identifying objects and providing information related to identified objects 07-09-2009

20090170532 Event-based modes for electronic devices 07-02-2009

20090170492 User-programmed automated communications 07-02-2009

20090170480 Systems and methods for intelligent and customizable communications between devices 07-02-2009

20090169070 Control of electronic device by using a person's fingerprints 07-02-2009

20090167699 TOUCH SCREEN RFID TAG READER - The efficient incorporation of RFID circuitry within touch sensor panel circuitry is disclosed 07-02-2009

20090167509 TACTILE FEEDBACK IN AN ELECTRONIC DEVICE 07-02-2009

20090167508 TACTILE FEEDBACK IN AN ELECTRONIC DEVICE 07-02-2009

20090150114 ACTIVITY MONITORING SYSTEMS AND METHODS - activity monitor comprises housing for attachment to a person 06-11-2009

20090143007 Methods and systems for mixing media with communications 06-04-2009

20090085760 Security using electronic devices - Systems and methods for providing security to a user of an electronic device are provided 04-02-2009

20090083850 EMBEDDED AUTHENTICATION SYSTEMS IN AN ELECTRONIC DEVICE 03-26-2009

20090083847 EMBEDDED AUTHENTICATION SYSTEMS IN AN ELECTRONIC DEVICE 03-26-2009

20090059731 Devices and systems for outputting contextual information about an event for which an alarm is set on an electronic device 03-05-2009

20090040703 HOUSING COMPONENTS FOR ELECTRONIC DEVICES AND METHODS FOR CONSTRUCTING THE SAME 02-12-2009

20080259829 Personal area network systems and devices and methods for use thereof 10-23-2008

Look forward to speaking with you soon,


Larry Golden
CEO, ATPG Technology, LLC



May 22, 2019                                        Via Email (atpg-tech@charter.net)

Larry Golden
740 Woodruff Rd., #1102
Greenville, SC 29607

      Re:    ATPG Technology, LLC Patent Portfolio

Dear Larry,

We write in response to your letter of April 5, 2019.

Your letter does not provide Apple with enough information to investigate any allegations of infringement, nor does it provide the information we requested in our April 4, 2019, letter. Your letter identifies US patents RE 43,990, 7,385,497, 9,096,189, 9,589,439, and 10,163,287.  However, it appears that you provided partial claim charts for the '287, '439, '189 and '990 patents not to any particular Apple product, but to the "DHS;S&T Directorate; "'Cell-All'."  If you believe Apple is infringing any of your intellectual property rights including the patents listed in your letter, please provide detailed claim charts explaining the basis for your assertion including identifying each asserted claim and how you believe each asserted claim limitation is practiced by a particular Apple product. This will enable us to investigate the matter further.

Additionally, we understand that the patents listed in your letter are invalid for a number of reasons.  For example, in IPR2014-00714, we understand from the Final Written Decision that the PTAB held that you had not shown that the three substitute claims 154-156 for RE 43,990 were valid over the prior art of record.  For this among other reasons, all asserted independent claims of RE 43,990 were canceled, and the request to substitute claims 154-156 was denied.  Given that you state in your letter that at least one independent claim of the '189, '439, and '287 patents is substantially related to cancelled independent claim 11 of the '990 patent, we believe these patents, as well as the additional patents listed in your letter, are invalid at least for the same reasons as set forth in IPR2014-00714.

Apple
One Apple Park Way
MS 169-3IPL
Cupertino, CA 95014

T  408 974 5376
E  kgrewal@apple.com
www.apple.com



Finally, your allegation that "the specifications of my patents can challenge every limitation of Apple's 1st Patent for an 'electronic device' i.e. smartphone" is unclear.  If you are alleging that your patent invalidates Apple's patents, that is not the case.  Apple's breakthrough patents and products contain innovative features that are developed independently by Apple engineers.

If you disagree with our assessment, please provide a detailed explanation of your position, including the information requested in this letter. Otherwise, we will consider this matter closed.

Regards,

Krista Grewal
Counsel, IP Transactions

2



June 27, 2019                                    Via Email (atpg-tech@charter.net)

Larry Golden
740 Woodruff Rd., #1102
Greenville, SC 29607

      Re:   ATPG Technology, LLC Patent Portfolio

Dear Larry,

We write in response to your email of June 5, 2019.

Despite multiple requests, your email does not identify any specific Apple products that infringe any of your patents, nor complete claim charts supporting any assertion.  We have nevertheless reviewed US patents 7,385,497, 9,096,189, 9,589,439, and 10,163,287 and understand that all of the asserted patents relate to anti-terrorist detection and prevention systems.  We conclude that the patents do not cover Apple's products or services.  As an example, no Apple product includes detectors or indicator lights for detecting "at least one of chemical, biological, radiological, or explosive" agents and compounds as required by the asserted patents.  Additionally, we maintain our belief that the asserted patents are invalid for at least the reasons described in our previous letters.

We trust this addresses your inquiry and consider this matter closed.

Regards,

Krista Grewal
Counsel, IP Transactions

Apple
One Apple Park Way
MS 169-3IPL
Cupertino, CA 95014

T  408 974 5376
E  kgrewal@apple.com
www.apple.com

From: "Krista Grewal" <kgrewal@apple.com>
To: atpg-tech@charter.net
Cc:
Bcc:
Priority: Normal
Date: Thursday June 27 2019 12:44:29PM
Re: ATPG Patent Portfolio Apple / Motorola

Dear Larry,

Please see the attached correspondence.

Regards,

Krista


Krista Grewal
kgrewal@apple.com


On Jun 5, 2019, at 8:54 AM, atpg-tech@charter.net wrote:

Krista Grewal: Counsel for Apple IP Transactions


Steve Jobs and Tim Cook has taken my technology and made a TRILLION dollar company. I, on the other hand, have to struggle from paycheck to paycheck just to make ends meet. I don't have a retirement and I have spent my daughters' college savings defending my intellectual property. I live in Government housing and struggle to pay rent every month. Therefore, what I am about to share with you is not a threat, it is a planned course of action because I don't feel you really care about how many billions of dollars you have taken from me.


Before I get started, I need to clear up a few things about the IPR. The three 102 patent references of Astrin, Breed, and Mostov; the eighteen 102 publications; and, the Expert's Declaration were all sent over to the USPTO and the Examiner determined none of the material cover's my patent claims as a whole. Since that time, I have twenty-six Independent claims (included in three issued patents) that covers the communicating, monitoring, detecting, and controlling (CMDC) device. The three 102 patent references of Astrin, Breed, and Mostov; the eighteen 102 publications; and, the Expert's Declaration were all examined and signed off on during the prosecution of the twenty-six independent claims. As it stands right now the twenty-six independent claims has the presumption of validity, and if you plan to challenge, you need to do so on the higher standard of "clear and convincing evidence" (Mostov reference attached).


My strategy plan not only involves going after Apple for infringement, I'm going after Apple for three times the damages because I notified Apple's CEO (Cook) and Apple's SVP and General Counsel (Sewell) with a letter proposing a licensing agreement in year 2010 (copy of letter attached).

I'm going after various components of Apple's ecosystem system.

Distribution: As I have notified you before, I am preparing to file in the ITC court in hopes of being granted an exclusion order to prevent the shipment of Apple's CMDC smartphone and smartwatch devices from entering the United States (check your inventory for the number of Apple device purchases made by Larry Golden in Greenville, SC at Best Buy within the past two years).

Customers: I plan to file motions for injunctive relief against FCA US LLC, Ford, and Chevrolet. At least those three automobile manufacturers are infringing several of my patents to include the patent claims that covers Apple's CMDC smartphones. I will ask for a "cease and desist" order on Apple's CMDC smartphones being used with any automobiles (I have attached copies of letters sent to FCA US LLC, Ford, and Chevrolet and have provided you with GM charts that covers the other infringing devices and systems of my patents: "Apple GM CMDC Devices Chart"; "GM's Remote Access Systems Chart"; "GM's Pre-programmed Stall, Stop, Slowdown System"; "GM's Stolen Vehicle Slowdown Chart")

Partners: Qualcomm received a contract from the Government (Cell-All project; year 2007) to include certain central processing units (CPUs) and CDMA technology. I didn't ask for Qualcomm to be included in the development of my CMDC devices and I didn't authorize Qualcomm the use of my CMDC devices to make billions. Qualcomm and Apple are set to introduce your versions of 5G into my CMDC devices without paying me for the privilege. I plan to file a "Cease and Desist" motion and a motion for "Injunctive Relief" against Qualcomm in the District Court and file for an "Exclusion Order" against Qualcomm in the ITC Court (I have attached a Qualcomm Infringement Chart)

Service Providers: I plan to file a "Cease and Desist" motion and a motion for "Injunctive Relief" against AT&T, Verizon, T-Mobile, and Sprint. I plan also to file for infringement against AT&T, Verizon, T-Mobile, and Sprint under title 35 U.S. Code § 271 - Infringement of patent (a) "Except as otherwise provided in this title, whoever without authority makes, uses, <u>offers to sell, or sells any</u> <u>patented invention</u>, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

Shareholders: My strongest defense against theft is to tell the truth. If I can't work out something with Apple I am going to start and maintain a social media campaign with a "documentary video" of the history of the CMDC device and why it was developed. The truth of the video is that it reveals how Apple and the Government stole billions from a citizen who simply wanted to provide strategies on how to restore the Nation's economy with new technology such as the CMDC device for preventing terrorist attacks. I'm looking for the analyst to downgrade Apple. Should I find one little crack in Apple's ecosystem, I believe the shareholders will respond to any lying, thieving, company who wants to take from the little guy. It's ironic, the Government is always blaming China and other Countries for stealing our intellectual property. (My video can be found on my website: atpg-tech.com or you can google Larry Golden CMDC – YouTube).

Competition: I made Motorola an offer. I offered to license all of my patents to Motorola for $29 million dollars as an initial payment and $29 million dollars paid out over the next 10 years. That represents 1% of the value of the deal between Lenovo and Motorola. I'm trying to position Motorola to be there to pick up the pieces from the fallout of Apple, Samsung, and LG. If they chose not to accept my offer, they too will be named in the lawsuit and will have to endure a challenge to their ecosystem as well. (a letter to Motorola is attached).

I am making Apple an offer. I will license all of my patents, including my pending continuation patent application and my pending re-issue patent application when they issue for 1% of the One Trillion dollar value that has been placed on Apple. 1% is equivalent to $10 billion as an initial payment and $10 billion spread over the next 10 years. If it helps I will sign a non-disclosure agreement and cease any and all litigation plans.


Larry


-----------------------------------------

From: "Krista Grewal"
To: atpg-tech@charter.net
Cc:
Sent: Wednesday May 22 2019 5:09:41PM
Subject: Re: ATPG Patent Portfolio

Dear Larry,

Please see the attached correspondence.

Regards,

Krista

From: "Krista Grewal" <kgrewal@apple.com>
To: atpg-tech@charter.net
Cc:
Bcc:
Priority: Normal
Date: Wednesday May 22 2019 5:09:41PM
Re: ATPG Patent Portfolio

Dear Larry,

Please see the attached correspondence.

Regards,

Krista


Krista Grewal
kgrewal@apple.com


On Apr 5, 2019, at 10:11 AM, atpg-tech@charter.net wrote:

Please see the attached.

Larry


-----------------------------------------

From: "Krista Grewal"
To: atpg-tech@charter.net
Cc:
Sent: Thursday April 4 2019 3:22:48PM
Subject: ATPG Patent Portfolio


Dear Larry,

Please see the attached correspondence.

Regards,

Krista


<Apple Reply Letter back to Apple.docx><Claim Chart for Apple and Cell-All.docx><Claim Chart worksheet 2019.docx>



May 22, 2019                                    Via Email (atpg-tech@charter.net)

Larry Golden
740 Woodruff Rd., #1102
Greenville, SC 29607

        Re:    ATPG Technology, LLC Patent Portfolio

Dear Larry,

We write in response to your letter of April 5, 2019.

Your letter does not provide Apple with enough information to investigate any allegations of infringement, nor does it provide the information we requested in our April 4, 2019, letter. Your letter identifies US patents RE 43,990, 7,385,497, 9,096,189, 9,589,439, and 10,163,287. However, it appears that you provided partial claim charts for the '287, '439, '189 and '990 patents not to any particular Apple product, but to the "DHS;S&T Directorate; "'Cell-All'." If you believe Apple is infringing any of your intellectual property rights including the patents listed in your letter, please provide detailed claim charts explaining the basis for your assertion including identifying each asserted claim and how you believe each asserted claim limitation is practiced by a particular Apple product. This will enable us to investigate the matter further.

Additionally, we understand that the patents listed in your letter are invalid for a number of reasons. For example, in IPR2014-00714, we understand from the Final Written Decision that the PTAB held that you had not shown that the three substitute claims 154-156 for RE 43,990 were valid over the prior art of record. For this among other reasons, all asserted independent claims of RE 43,990 were canceled, and the request to substitute claims 154-156 was denied. Given that you state in your letter that at least one independent claim of the '189, '439, and '287 patents is substantially related to cancelled independent claim 11 of the '990 patent, we believe these patents, as well as the additional patents listed in your letter, are invalid at least for the same reasons as set forth in IPR2014-00714.

Apple
One Apple Park Way
MS 169-3IPL
Cupertino, CA 95014

T  408 974 5376
E  kgrewal@apple.com
www.apple.com



Finally, your allegation that "the specifications of my patents can challenge every limitation of Apple's 1st Patent for an 'electronic device' i.e. smartphone" is unclear.  If you are alleging that your patent invalidates Apple's patents, that is not the case.  Apple's breakthrough patents and products contain innovative features that are developed independently by Apple engineers.

If you disagree with our assessment, please provide a detailed explanation of your position, including the information requested in this letter. Otherwise, we will consider this matter closed.

Regards,

Krista Grewal
Counsel, IP Transactions

2



April 4, 2019                          Via Email (atpg-tech@charter.net)

Larry Golden
740 Woodruff Rd., #1102
Greenville, SC 29607

          Re:     ATPG Technology, LLC Patent Portfolio

Dear Larry,

Your letter dated March 15, 2019 to Apple has been directed to my attention.  Please direct all future correspondence to me.

Apple respects the valid intellectual property rights of third parties, and we will investigate detailed allegations of infringement.  Your letter identifies US patents 7,385,497, 7,636,033, 8,106,752, 8,334,761, 8,531,280, 9,096,189, 9,589,439, and 10,163,287.  However, you provided partial claim charts only for US patents 9,589,439 and RE 43,990 identifying Apple's iPhone 5, 5c, 5s, 6, 7, 8, 9 and 10, Apple's iWatch Series 3, and Apple's HomeKit.  If you believe Apple is infringing any of your intellectual property rights including the patents listed in your letter, please explain the basis of any such allegations, including providing detailed claim charts explaining the basis of your assertion for each patent.

Additionally, we understand that RE 43,990 is a reissue of 7,636,033 and 9,589,439 is a continuation of 7,636,033.  We note that all asserted independent claims of RE 43,990 have been canceled in IPR2014-00714.  The claims of U.S. Patent 9,589,439 appear to be substantially similar to RE43,990 and are invalid for at least the same reasons as laid out for RE 43,990 in IPR2014-00714.

Accordingly, for at least these reasons, Apple believes that it does not need a license to ATPG's patents.  The reasons discussed above are merely examples of why Apple does not

Apple
One Apple Park Way
MS 169-3IPL
Cupertino, CA 95014

T  408 974 5376
E  kgrewal@apple.com
www.apple.com



need a license, and are not exhaustive.  If ATPG disagrees with our assessment, please provide a detailed explanation of ATPG's position.  Otherwise, we will consider this matter closed.

Sincerely,

Krista Grewal
Counsel, IP Transactions

From: atpg-tech@charter.net
To: "Krista Grewal" <kgrewal@apple.com>
Cc:
Bcc:
Priority: Normal
Date: Friday April 5 2019 12:11:33PM
RE: ATPG Patent Portfolio

Please see the attached.

Larry

------------------------------------------

From: "Krista Grewal"
To: atpg-tech@charter.net
Cc:
Sent: Thursday April 4 2019 3:22:48PM
Subject: ATPG Patent Portfolio

Dear Larry,

Please see the attached correspondence.

Regards,

Krista

# ATPG Technology, LLC
### *Anti-Terrorism Product Grouping*

Larry Golden, CEO

740 Woodruff Rd., #1102, Greenville, SC 29607

Business: 864-992-7104; Home: 864-288-5605; E-mail: atpg-tech@charter.net

April 5, 2019

Apple

Attn: Krista Grewal Counsel, IP Transactions

One Apple Park Way

Cupertino, CA 95014

Re: Reply to Response Letter received from Ms. Grewal; via email (kgrewal@apple.com)

Ms. Grewal:

First things first. I'm not real concern with your assessment of my Patents and my patent claims for the following reasons:

1. The three independent claims (11, 74, & 81) of the RE43,990 and the three substitute claims, I introduced in the IPR were not proven to be invalid.

2. The USPTO stated during the IPR, that the three prior art patents; the eighteen publications; and, the Expert's Declaration did not cover my invention(s) as a whole.

3. The three prior art patents; the eighteen publications; and, the Expert's Declaration was submitted to the USPTO during the prosecution of the three patents issued post the IPR ('189, '439, & '287).

I have attached charts of at least one independent claim of the '189, '439, & '287 patents to show how the claims are substantially related to the cancelled independent claim 11 of the RE43,990 patent, and how the specifications of at least one "electronic device" of Apple, Samsung, LG, and Qualcomm reads on at least one independent claim of the '189, '439, & '287 patents.

I have likewise included charts to show how independent claim 1 of the first patent ('497) I was ever issued (filed; 04-05-06); is substantially related to at least one independent claim of the '189, '439, & '287 patents, and how the specifications of at least one "electronic device" of Apple, Samsung, LG, and Qualcomm reads on at least one independent claim of the '497, '189, '439, & '287 patents.

I have also attached a chart to show how the specifications of my patents can challenge every limitation of Apple's 1st Patent for an "electronic device" i.e. smartphone. I have a chart to show how the Department of Homeland Security (DHS) entered into an agreement with Apple, Samsung, LG, and Qualcomm for the development of my *new and improved* cell phone.

My Communicating, Monitoring, Detecting, and Controlling (CMDC) Device; or, my *new and improved* cell phone; comprises: a cell phone detection device (i.e. smartwatch); short range radio frequency (RF) i.e. Near-field communication (NFC); a transmitter to send signals to lock or unlock doors, to activate or deactivate security systems, or to activate or deactivate the cell phone detection device; at least one of a chemical sensor, a biological sensor, or human sensor;  a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, or iris scan. My device that includes all of the above features antedates Apple's smartphone.

Therefore, that shouldn't be your first concern. Your concern should be what happens when I prove my "Domestic Industry"? I recommend reading the documentary and viewing my "oral argument" video I have prepared for the ITC—found on my website: **atpg-tech.com**

When I establish "domestic industry", I plan to petition the Regulators that Apple is too big and that I am entitled to at least 49% of Apple. You have the power to stop all of that.

I am proposing Apple takes the lead in negotiations with me, obtain a non-exclusive license, sign a non-disclosure, and be willing to disclose to the Claims Court that we have an agreement. This offer is not valid after the filing on my Complaint. I'm trying to work with you.


Thanks,
Larry Golden

| Apple's 1st Patent for the Smartphone (i.e. electronic device) ornamental design: First application filing date is January 5, 2007 (App. # D/270,887) | Plaintiff's Specifications for the Detector Case (i.e. electronic device) ornamental design: USPTO Disclosure Document filed Nov. 17, 2004; First application filing date is April 5, 2006 (App. # 11/397,118) |
|---|---|
| Electronic Device: "The device (i.e. electronic device) which controls the flow of electrons is called electronic device. These devices are the main building blocks of electronic circuits. The various electronic devices are computers, mobile phones, etc." Retrieved from: https://www.physics-and-radio-electronics.com/electronic-devices-and-circuits.html | Electronic Device: The detector case includes a power source (battery or electrical)… A cpu 40 is mounted within the detector case 12 and electrically interconnects, routes, and transmits signals among items hereinafter further described and also communicates |
| FIG. 1 is a front perspective view of an electronic device in accordance with the present design. | The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 2 is a rear perspective view for the electronic device. | The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 3 is a front view for the electronic device. | The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 4 is a rear view for the electronic device. | The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 5 is a top view for the electronic device. | The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 6 is a bottom view for the electronic device. | The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |

| | |
|---|---|
| FIG. 7 is a left side view for the electronic device; and, | The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| FIG. 8 is a right side view for the electronic device | The detector case 12 includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 |
| The broken lines depicted in FIGS. 1, 2, and 6 of the inner rectangle, at the center bottom of the electronic device, represent the bounds of the claimed design, while the broken lines inside the rectangle, shown only in FIG. 6, are directed to environment and are for illustrative purposes only; the broken lines from no part of the… design. | Fig. 1 is an illustrative drawing of the rectangle design of the detector case; and, Fig. 17 are illustrative drawings of the rectangle design of the cell phone (i.e. smartphone) and the cell phone detector case |
| The article is not limited to the scale shown herein. As indicated in the title, the article of manufacture to which the ornamental design has been applied is an electronic device. ***Examples of an electronic device are a computer, a portable or hand-held device, a personal digital assistant, a communication device (e.g., cellular phone), a novelty item, toy, and/or the like.*** | FIG. 15 is a representative schematic view of… a monitoring PC or computer terminal. It is another objective of the present invention to provide… products grouped together by common features in several product groupings such as design similarity… product grouping strategy has been developed wherein products… having the same or similar design… [i]n addition to grouping products together by features, designs and materials… ***FIG. 17 is a perspective view... of the present invention illustrating the incorporation of the features and elements of the detector case to a cell phone and cell phone case*** |
| The first iPhone featured a two-tone back that was mostly made of aluminum — a design element that the company would return to this year with the release of the iPhone 5 with a predominantly metal back. Apple's interim devices opted for different materials: The iPhone 3G and 3GS had plastic backs, while the iPhone 4 and 4S backs were made of glass. Retrieved from: https://appleinsider.com/articles/12/12/18/apple-wins-patent-for-first-iphone-designed-by-jobs-ive | … [P]roduct grouping strategy has been developed wherein products made from the same or similar material, products having the same or similar design… [i]n addition to grouping products together by features, designs and materials… the products grouped into what may be referred to as Product grouping 3 (detector case; modified and adapted)… the products grouped into what may be referred to as Product grouping 4 (monitoring & communication devices) include… mobile communication devices… personal computers (PCs), laptops, cell phones, personal digital assistants (PDAs)… handhelds |

| The DHS S&T Cell-All Initiative request for an improved cell phone with detection capability. *"A utility patent is a patent that covers the creation of a new or improved— and useful—product, process, or machine".* | Plaintiff's Integrated CMDC Device is a Cell Phone and the Cell Phone Detection Device (Claim 23 of Patent Number 9,589,439) |
| --- | --- |
| A *new or improved cell phone* comprising: | A cell phone comprising: |
| a central processing unit (CPU) for executing and carrying out the instructions of a computer program for a *new or improved cell phone* | a central processing unit (CPU) for executing and carrying out the instructions of a computer program; |
| a transmitter for transmitting signals and messages to a *Synkera MikroKera Ultra Detection Device*; a receiver for receiving signals from the; *Synkera MikroKera Ultra Detection Device* | a transmitter for transmitting signals and messages to a cell phone detection device; a receiver for receiving signals from the cell phone detection device; |
| at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection for a *new or improved cell phone* | at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection; |
| the cell phone is at least a fixed, portable or mobile communication device interconnected to the *Synkera MikroKera Ultra Detection Device*, capable of wired or wireless communication therebetween; and | the cell phone is at least a fixed, portable or mobile communication device interconnected to the cell phone detection device, capable of wired or wireless communication therebetween; and |

| | |
|---|---|
| whereupon the ***new or improved cell phone*** is interconnected to the cell phone detection device to receive signals or send signals to lock or unlock doors, to activate or deactivate security systems, to activate or deactivate multi-sensor detection systems, or to activate or deactivate the ***Synkera MikroKera Ultra Detection Device***; | whereupon the cell phone is interconnected to the cell phone detection device to receive signals or send signals to lock or unlock doors, to activate or deactivate security systems, to activate or deactivate multi-sensor detection systems, or to activate or deactivate the cell phone detection device; |
| at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the ***new or improved cell phone*** | at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; |
| wherein at least one of the satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection is capable of signal communication with the transmitter or the receiver of the ***new or improved cell phone*** | wherein at least one of the satellite connection, Bluetooth connection, WiFi connection, internet connection, radio frequency (RF) connection, cellular connection, broadband connection, long range radio frequency (RF) connection, short range radio frequency (RF) connection, or GPS connection is capable of signal communication with the transmitter or the receiver; |
| wherein the ***new or improved cell phone*** is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature such that the ***new or improved cell phone*** is locked by the biometric lock disabler to prevent unauthorized use; and | wherein the cell phone is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan, or signature such that the cell phone is locked by the biometric lock disabler to prevent unauthorized use; and |
| whereupon a signal sent to the receiver of the ***Synkera MikroKera Ultra Detection Device*** from at least one of the chemical sensor, the biological sensor, the explosive sensor, the human sensor, the contraband sensor, or the radiological sensor, causes a signal that includes at least one of location data or sensor data to be sent to the ***new or improved cell phone.*** | whereupon a signal sent to the receiver of the cell phone detection device from at least one of the chemical sensor, the biological sensor, the explosive sensor, the human sensor, the contraband sensor, or the radiological sensor, causes a signal that includes at least one of location data or sensor data to be sent to the cell phone. |

# EXHIBIT E

COFC; 13-307C, *Golden v. US*,

"NOTICE" Issued by the Court for

Apple to Appear

# In the United States Court of Federal Claims

**LARRY GOLDEN**



**v.**

No. 13-307 C

**THE UNITED STATES**

## NOTICE

To:  **Apple, Inc.**
**c/o CT Corporation System**
**818 West Seventh Street**
**Suite 930**
**Los Angeles, CA 90017**

Pursuant to Rule 14 of the Rules of the United States Court of Federal Claims, you are hereby notified of the above-captioned case in which you may have an interest. If you have an interest in the subject matter of this case, within forty-two (42) days after service of this Notice upon you, you may file a complaint or answer herein in accordance with Rule 14. For your information, this Notice is accompanied by copies of the following pleadings that have been filed herein: **Plaintiff's Sixth Amended Complaint, Defendant's Answer to the Sixth Amended Complaint and Defendant's Third Motion for Notice.**

In testimony whereof, I have hereunto set my hand and affixed the Seal of said Court at Washington, DC, this 31st day of March 2021

By: _____
Lisa L. Reyes, Clerk
U.S. Court of Federal Claims

## RETURN OF SERVICE

Service of the above Notice was accomplished by forwarding same to the above named at the address indicated by registered or certified mail, return receipt requested. See return receipt attached showing service on _____
(Date)

_____
Attorney of Record

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LARRY GOLDEN,

                Plaintiff, *pro se*,

    v.

THE UNITED STATES,

                Defendant.

No. 13-307 C

Senior Judge Eric G. Bruggink

## DEFENDANT'S SUBSTITUTE RETURN OF SERVICE OF RULE 14(b) NOTICE ON APPLE, INC.

Pursuant to Rule 14(b) of the Rules of the United States Court of Federal Claims (RCFC) and the Court's March 29, 2021 Order (Dkt. 222), defendant the United States (the Government) hereby files its substitute return of service on Apple, Inc., indicating completion of the required service of the Clerk's RCFC 14 Notice (*see* Dkt. 224). With the Notice, the Government also served: (1) Plaintiff's Sixth Amended Complaint (Dkt. 195) and its attached exhibits; (2) the Government's Third Motion for Notice (Dkt. 216); (3) the Government's Answer to the Sixth Amended Complaint (Dkt. 217); and (4) the Court's March 29, 2021 Order (Dkt. 222). A copy of the Postal Service tracking information, evidencing serving of the original copy of the Notice, is also filed with this certificate as Exhibit 1. The certified mail return receipt, however, has not been received by the Government. As indicated by the Postal Service website, the Notice was served on April 26, 2021.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

GARY L. HAUSKEN
Director


/s/ Grant D. Johnson
GRANT D. JOHNSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
*Grant.D.Johnson@usdoj.gov*
(202) 305-2513

May 17, 2021                          *Attorneys for the Defendant,*
                                      *The United States*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing "DEFENDANT'S RETURN OF

SERVICE ON APPLE, INC." was sent on May 17, 2021 via e-mail and U.S. Mail, to:

Larry Golden
740 Woodruff Road
#1102
Greenville, SC 29607
atpg-tech@charter.net


Plaintiff, *pro se*



/s/ Grant D. Johnson
Grant D. Johnson
Department of Justice

# Exhibit 1

# In the United States Court of Federal Claims

**LARRY GOLDEN**

COPY

v.                                                    **No. 13-307 C**

**THE UNITED STATES**

## NOTICE

To:   **Apple, Inc.**
      **c/o CT Corporation System**
      **818 West Seventh Street**
      **Suite 930**
      **Los Angeles, CA 90017**

        Pursuant to Rule 14 of the Rules of the United States Court of Federal Claims, you are hereby notified of the above-captioned case in which you may have an interest.   If you have an interest in the subject matter of this case, within forty-two (42) days after service of this Notice upon you, you may file a complaint or answer herein in accordance with Rule 14.   For your information, this Notice is accompanied by copies of the following pleadings that have been filed herein: **Plaintiff's Sixth Amended Complaint, Defendant's Answer to the Sixth Amended Complaint and Defendant's Third Motion for Notice.**

                                In testimony whereof, I have hereunto set my hand and
                                affixed the Seal of said Court at Washington, DC, this
                                31st day of March 2021

                        By: _Lisa L. Reyes_
                                Lisa L. Reyes, Clerk
                                U.S. Court of Federal Claims

### RETURN OF SERVICE

        Service of the above Notice was accomplished by forwarding same to the above named at the address indicated by registered or certified mail, return receipt requested.   See return receipt attached showing service on  _April 26, 2021_
                (Date)

                                                _____
                                                Attorney of Record

5/17/2021                                          USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs >

## Track Another Package +

**Tracking Number:** 70151520000307276099                    Remove ✕

Your item has been delivered to an agent for final delivery in LOS ANGELES, CA 90017 on April 26,
2021 at 9:49 am.

## ✓ Delivered to Agent for Final Delivery

April 26, 2021 at 9:49 am
LOS ANGELES, CA 90017

Feedback

**Get Updates** ⌄

---

**Text & Email Updates**                                                    ⌄

---

**Tracking History**                                                        ⌃

**April 26, 2021, 9:49 am**
Delivered to Agent for Final Delivery
LOS ANGELES, CA 90017
Your item has been delivered to an agent for final delivery in LOS ANGELES, CA 90017 on April 26, 2021 at
9:49 am.

**April 26, 2021, 9:45 am**
Arrived at Post Office
LOS ANGELES, CA 90057

5/17/2021
Case 3:22-cv-04152-VC    Document 1-2    Filed 07/15/22    Page 43 of 43
Case 1:13-cv-00307-EGB    Document 209-1 Tracking Results 5/7/21    Page 4 of 4

**April 25, 2021, 4:58 pm**
Departed USPS Regional Facility
LOS ANGELES CA DISTRIBUTION CENTER

**April 25, 2021, 11:34 am**
Arrived at USPS Regional Facility
LOS ANGELES CA DISTRIBUTION CENTER

**April 24, 2021**
In Transit to Next Facility

**April 23, 2021, 9:56 pm**
Arrived at USPS Regional Facility
GAITHERSBURG MD DISTRIBUTION CENTER

---

**Product Information**                                    ⌄

Feedback

**See Less** ⌃

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**