1  Jack P. DiCanio (SBN 138782)
   SKADDEN, ARPS, SLATE, MEAGHER &
2  FLOM LLP
   525 University Avenue, Suite 1400
3  Palo Alto, California 94301
   Telephone: (650) 470-4500
4  Facsimile: (650) 470-4570
   Email: jack.dicanio@skadden.com
5
   Karen Hoffman Lent (*pro hac vice* pending)
6  SKADDEN, ARPS, SLATE, MEAGHER &
   FLOM LLP
7  One Manhattan West
   New York, NY 10001
8  Tel: (212) 735-3000
   karen.lent@skadden.com
9
   Julia K. York (*pro hac vice* pending)
10 SKADDEN, ARPS, SLATE, MEAGHER &
   FLOM LLP
11 1440 New York Avenue, N.W.
   Washington, DC 20005-2111
12 Telephone: (202) 371-7000
   Facsimile: (202) 393-5760
13 Email: julia.york@skadden.com

14 *Attorneys for Defendant Apple Inc.*

15            **UNITED STATES DISTRICT COURT**

16           **NORTHERN DISTRICT OF CALIFORNIA**

17              **SAN FRANCISCO DIVISION**

18

19 LARRY GOLDEN,                          Case No. 3:22-cv-04152-VC

20          *Pro Se* Plaintiff,            **DEFENDANT'S NOTICE OF MOTION
                                           AND MOTION TO DISMISS PLAINTIFF'S
20      v.                                 COMPLAINT; MEMORANDUM OF
                                           POINTS AND AUTHORITIES IN
21 APPLE INC.,                             SUPPORT THEREOF**

22          Defendant.
                                           Hearing Date: October 6, 2022
23                                         Time:         9:30 a.m.
                                           Place:        Courtroom 4, 17th Floor
24                                         Judge:        Hon. Vince Chhabria

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 6, 2022, at 9:30 a.m., or as soon thereafter as this matter may be heard, in Courtroom 4 of this Court, located on the 17th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, Defendant Apple Inc. will move the Court for an order dismissing Plaintiffs' Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that Plaintiff lacks standing and fails to state a claim on which relief may be granted.

Defendant respectfully requests an order dismissing without leave to amend all causes of action brought against it in the above-captioned matter.  This Motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; any reply memorandum; the pleadings and files in this action; and such other matters Defendant may present at or before the hearing.

DATED: August 30, 2022

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

By: /s/ *Jack P. DiCanio*

Jack P. DiCanio (SBN 138782)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: jack.dicanio@skadden.com

Karen Hoffman Lent (*pro hac vice* pending)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com

Julia K. York (*pro hac vice* pending)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: julia.york@skadden.com

*Attorneys for Defendant Apple Inc.*

1

2

## TABLE OF CONTENTS

Page

BACKGROUND ..........................................................................................................2

I.    PLAINTIFF'S PATENTS ...............................................................................2

II.   PROCEDURAL HISTORY ............................................................................2

III.  SUMMARY OF PLAINTIFF'S ALLEGATIONS ............................................4

ARGUMENT ..............................................................................................................5

I.    THE COURT LACKS SUBJECT MATTER JURISDICTION. .....................6

      A.    Plaintiff Is Precluded from Re-Litigating His Infringement Claims ...........6

      B.    Plaintiff Lacks Article III Standing to Pursue His Antitrust Claims. ..........7

II.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM. .........................8

      A.    Plaintiff's Patent Infringement Allegations Fail to State a Claim ...............8

            1.    Plaintiff Does Not Plausibly Allege that Apple Directly
                  Infringes. ..............................................................................9

            2.    Plaintiff Does Not Plausibly Allege Indirect Infringement. ..........10

      B.    Plaintiff's Antitrust Allegations Fail to State a Claim ..............................11

            1.    Plaintiff's Section 1 Claims Lack Plausible Allegations of a
                  Conspiracy ...........................................................................11

            2.    Plaintiff's Contradictory Section 2 Claims Are Wholly
                  Conclusory ...........................................................................12

            3.    Plaintiff Fails to Establish Antitrust Standing ..............................13

            4.    Plaintiff's Antitrust Allegations Are Time Barred.......................14

III.  PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AS
      FRIVOLOUS.................................................................................15

IV.   LEAVE TO AMEND SHOULD BE DENIED ................................................15

1

2

## TABLE OF AUTHORITIES

3

**Cases**                                                                                           **Page(s)**

4
5
*3rd Eye Surveillance, LLC v. United States*,
    156 Fed. Cl. 104 (2021) ........................................................................................9

6
*Abe v. AFCH, Inc.*,
    No. 2:20-cv-08193-ODW (PVCx), 2021 WL 2209309 (C.D. Cal. June 1, 2021) .............7

7
8
*Adaptix, Inc. v. Amazon.com, Inc.*,
    No. 5:14-cv-01379-PSG, 2015 WL 4999944 (N.D. Cal. Aug. 21, 2015) ..........................7

9
*American Ad Management, Inc. v. General Telephone Co. of California*,
    190 F.3d 1051 (9th Cir. 1999) .......................................................................................13

10
11
*Annamalai v. United States*,
    No. 16-815C, 2016 WL 4249108 (Fed. Cl. Aug. 10, 2016) .............................................15

12
*Apple Inc. v. Iancu*,
    No. 5:20-cv-06128-EJD, 2021 WL 5232241 (N.D. Cal. Nov. 10, 2021)...........................5

13
14
*Arunachalam v. Apple, Inc.*,
    No. 5:18-cv-01250-EJD, 2018 WL 5023378 (N.D. Cal. Oct. 16, 2018).....................9, 10

15
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................5

16
17
*Association of General Contractors of California, Inc. v. California State Council of Carpenters*,
    459 U.S. 519 (1983).......................................................................................................14

18
*Aurora Enterprises, Inc. v. NBC, Inc.*,
    688 F.2d 689 (9th Cir. 1982) .........................................................................................15

19
20
*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................................6

21
*Bird v. United States*,
    51 Fed. Cl. 536 (2002) ....................................................................................................9

22
23
*Bowser, Inc. v. United States*,
    420 F.2d 1057 (Ct. Cl.), *on reconsideration*, 427 F.2d 740 (Ct. Cl. 1970) .......................9

24
*Brain Life, LLC v. Elekta Inc.*,
    746 F.3d 1045 (Fed. Cir. 2014).......................................................................................7

25
26
*California Architectural Building Products, Inc.  v. Franciscan Ceramics, Inc.*,
    818 F.2d 1466 (9th Cir. 1988) .......................................................................................15

27
28
*Cygnus Telecommunications Technology, LLC v. American International*
    *Telephonics, LLC*,
    569 F. Supp. 2d 1035 (N.D. Cal. 2008) ..........................................................................7

*Delano Farms Co. v. California Table Grape Commission*,
    655 F.3d 1337 (Fed. Cir. 2011).......................................................................12

*Feitelson v. Google Inc.*,
    80 F. Supp. 3d 1019 (N.D. Cal. 2015) ............................................................14

*Golden v. Apple Inc.*,
    819 F. App'x 930 (Fed. Cir. 2020) ..........................................................1, 3, 12

*Golden v. Apple Inc.*,
    No. 6:19-cv-02557-DCC, 2020 WL 415896 (D.S.C. Jan. 27, 2020)..........1, 2, 3

*Golden v. Apple Inc.*,
    No. 6:20-cv-02270-BHH-KFM, 2020 WL 11624670 (D.S.C. Sept. 11, 2020)................11

*Golden v. Apple Inc.*,
    No. 6:20-cv-02270-JD-KFM, 2021 WL 4260782 (D.S.C. Sept. 20, 2021)................1, 2, 4

*Golden v. Apple, Inc.*,
    No. 21-2160, 2022 WL 986984 (4th Cir. Mar. 31, 2022)................................1, 4

*Golden v. Google, LLC*,
    No. 6:21-cv-00244-JD-KFM, 2021 WL 5083804 (D.S.C. Nov. 2, 2021)....................1, 6

*Golden v. United States*,
    156 Fed. Cl. 623 (Fed. Cl. 2021) .............................................................1, 2, 6

*Golden v. United States*,
    955 F.3d 981 (Fed. Cir. 2020)........................................................................3

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109, 1120 (9th Cir. 2018) ..............................................................13

*In re Multidistrict Vehicle Air Pollution*,
    591 F.2d 68 (9th Cir. 1979) ...........................................................................15

*Jacobsen v. Katzer*,
    No.  No. C 06-01905 JSW, 2006 WL 3000473 (N.D. Cal. Oct. 20, 2006) ......................14

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .......................................................................15

*Lindblad v. Walgreens Corps.*,
    No. 21-cv-07507-TSH, 2021 WL 7448540 (N.D. Cal. Nov. 15, 2021) ...........................6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)........................................................................................8

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) .........................................................................8

*Menzel v. Scholastic, Inc.*,
    No. 17-cv-05499-EMC, 2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) .........................12

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984)...................................................................................11

*Neitzke v. Williams*,
    490 U.S. 319 (1989)...................................................................................15

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
    562 F. Supp. 3d 1073 (E.D. Cal. 2021)....................................................13

*Pace Industries, Inc. v. Three Phoenix Co.*,
    813 F.2d 234 (9th Cir. 1987) ....................................................................15

*In re PersonalWeb Technologies LLC*,
    961 F.3d 1365 (Fed. Cir. 2020)...................................................................7

*Rebel Oil Co. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ....................................................................12

*Retractable Technologies, Inc. v. Becton Dickinson & Co.*,
    842 F.3d 883 (5th Cir. 2016),
    *aff'd*, 919 F.3d 869 (5th Cir. 2019)..........................................................11

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ....................................................................13

*Sonos, Inc. v. Google LLC*,
    No. C 21-07559 WHA, 2022 WL 799367 (N.D. Cal. Mar. 16, 2022) ............11

*Space Exploration Technologies Corp. v. Boeing Co.*,
    No. CV 05-07533 FMC (MANx), 2006 WL 7136649 (C.D. Cal. May 12, 2006)...........14

*Spindler v. Johnson & Johnson Corp.*,
    No. C 10-01414 JSW, 2011 WL 12557884 (N.D. Cal. Aug. 1, 2010) .............12

*Typhoon Touch Technologies, Inc. v. Dell, Inc.*,
    659 F.3d 1376 (Fed. Cir. 2011)................................................................10

*Venkee Communications, LLC v. Ubiquiti Networks, Inc.*,
    No. SACV 21-1009 PSG (DFMx), 2022 WL 2286754 (C.D. Cal. Jan. 26, 2022)...........10

*Villegas v. Wray*,
    No. 19-cv-00135-VKD, 2019 WL 10632652 (N.D. Cal. Feb. 11, 2019) ...........6

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971)...................................................................................14

**Statutes**

15 U.S.C. § 1................................................................................................11

15 U.S.C. § 2................................................................................................12

15 U.S.C. § 15b............................................................................................14

15 U.S.C. § 16...................................................................................................................13

28 U.S.C. § 1915(e)(2)(B) ................................................................................................15

35 U.S.C. § 271(a) ...............................................................................................................9

35 U.S.C. § 271(b) .............................................................................................................10

35 U.S.C. § 271(c) .............................................................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff's Complaint marks his *ninth* lawsuit asserting nearly identical claims premised on effectively identical alleged facts. Six of Plaintiff's cases were dismissed by district courts at the pleading stage as frivolous or duplicative—two in the Court of Federal Claims[1] and four in the U.S. District Court for the District of South Carolina.[2] Plaintiff has appealed each dismissal, and in each concluded appeal, the appellate court has affirmed.[3] The still-pending appeals are consolidated and scheduled for submission to the Federal Circuit without argument on September 7, 2022.[4] Having exhausted those jurisdictions, Plaintiff now turns to the Northern District of California, filing three new complaints (including this action) to avoid the preclusive effect of his dismissals elsewhere.[5]

Plaintiff's Complaint is frivolous and should be dismissed. It asserts in vague and conclusory terms that the Department of Homeland Security ("DHS") conspired with various companies, including Apple, to preclude Plaintiff from licensing his patents. While Plaintiff claims his patents were infringed, he offers nothing in support beyond identifying the supposed infringers, identifying his patents, and referencing the devices that could be made with his patents. As in the complaints other courts have rejected, this Complaint "present[s] a dizzying array of disorganized assertions . . . disingenuously using the words of the claims to generally describe cryptically identified structures." *Golden v. Apple Inc.*, 819 F. App'x 930, 931 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 1067 (2021).

Despite "ha[ving] had eight years to come up with a plausible theory of infringement against the United States and the third parties whose products he alleges were made at the behest of the

---

[1] *Golden v. United States*, 156 Fed. Cl. 623 (Fed. Cl. 2021) [hereinafter *Golden I*]; *Golden v. United States*, No. 1:19-cv-00104-EGB (Fed. Cl. May 14, 2019), ECF No. 12 [hereinafter *Golden II*].
[2] *Golden v. Apple Inc.*, No. 6:19-cv-02557-DCC, 2020 WL 415896 (D.S.C. Jan. 27, 2020) [hereinafter *Golden III*], *aff'd*, 819 F. App'x 930 (Fed. Cir. 2020); *Golden v. Apple Inc.*, No. 6:20-cv-02270-JD-KFM, 2021 WL 4260782 (D.S.C. Sept. 20, 2021) [hereinafter *Golden IV*], *aff'd*, No. 21-2160, 2022 WL 986984 (4th Cir. Mar. 31, 2022); Opinion & Order, *Golden v. Apple Inc.*, No. 6:20-cv-04353-JD-KFM (D.S.C. Nov. 2, 2021), ECF No. 26 [hereinafter *Golden V*]; *Golden v. Google, LLC*, No. 6:21-cv-00244-JD-KFM, 2021 WL 5083804 (D.S.C. Nov. 2, 2021) [hereinafter *Golden VI*], *appeal filed*, No. 22-1267 (Fed. Cir. Dec. 16, 2021).
[3] *Golden v. United States*, No. 2019-2134 (Fed. Cir. Apr. 10, 2020), ECF No. 37; *Golden v. Apple Inc.*, 819 F. App'x 930 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 1067 (2021); *Golden v. Apple, Inc.*, No. 21-2160, 2022 WL 986984 (4th Cir. Mar. 31, 2022).
[4] *Golden v. United States*, No. 22-1196 (Fed. Cir. filed Nov. 29, 2021).
[5] *Golden v. Qualcomm, Inc.*, No. 4:22-cv-03283-HSG (N.D. Cal. filed June 6, 2022); *Golden v. Intel Corp.*, No. 5:22-cv-03828-NC (N.D. Cal. filed June 28, 2022).

1   government," *Golden I*, 156 Fed. Cl. at 632, Plaintiff again fails to do so.  In view of the Complaint's

2   deficiencies, and against the backdrop of Plaintiff's history of nearly identical frivolous litigation,

3   Apple respectfully requests this Court dismiss Plaintiff's Complaint in its entirety with prejudice.

4                                              **BACKGROUND**

5   **I.    PLAINTIFF'S PATENTS**

6           Plaintiff claims to be the holder of several patents for "Communicating, Monitoring,

7   Detecting, and Controlling (CMDC) devices, Central Processing Units (CPUs) for New and

8   Improved Cell Phones, and Stall, Stop, and Vehicle Slow-Down Systems (SSVSS)." (Compl. ¶ 18).

9   *See also Golden IV*, 2021 WL 4260782, at *1.  The patents "appear to involve technology that can

10  be used to detect explosives/radiation and then disable vehicles or other apparatuses wherein the

11  explosives/radiation are detected."  *Golden III*, 2020 WL 415896, at *1.  Plaintiff contends that he

12  "competed" with Apple for a DHS contract to create "a new and improved cell phone capable of

13  biological and chemical sensing," (Compl. ¶ 42), but DHS chose to partner with Qualcomm, LG,

14  Apple, and Samsung in 2010 instead.  (*Id*. ¶ 44).  Plaintiff alleges DHS's partnership with these

15  third-party companies, led to the development of new devices using CMDC technology.  In this

16  Complaint and Plaintiff's dismissed complaints, the primary injury alleged is that the corporations,

17  allegedly working with DHS, used Plaintiff's (unlicensed) patented technology to develop new

18  products to be compatible with various add-on sensors, depriving him of royalty compensation.

19  **II.   PROCEDURAL HISTORY**

20          On May 1, 2013, Plaintiff filed his first complaint pursuant to 28 U.S.C. § 1498(a), alleging

21  that the United States government was infringing U.S. Reissue Patent No. RE43,990, (990).

22  Complaint, *Golden I*, No 1:13-cv-00307-EGB (Fed. Cl. filed May 1, 2013).  As here, Plaintiff's

23  infringement allegation was based on DHS's solicitations for its Cell-All project seeking to create

24  technology for sensing biological and chemical substances, and after six chances, the Sixth Amended

25  Complaint was dismissed with prejudice.  That claim is now before the Federal Circuit, to be

26  submitted without argument on September 7, 2022.  *Golden v. United States*, No. 22-1196 (Fed. Cir.

27  filed Nov. 29, 2021).

28

1    Following his initial complaint (*Golden I*), Plaintiff filed a series of cases in the Court of

2    Federal Claims and the District of South Carolina.  His second case asserted Takings Clause claims

3    against the government for the same patents as in *Golden I* and was dismissed and affirmed by the

4    Federal Circuit.  *Golden II*, ECF No. 12; *Golden v. United States*, 955 F.3d 981 (Fed. Cir. 2020),

5    *cert. denied*, 141 S. Ct. 908 (2022).  Plaintiff filed a third case based upon the same patents and

6    alleged infringement as in *Golden I* and *Golden II*, seeking damages against the third-party

7    companies instead of the government.  *Golden III*, 2020 WL 415896, at *1-2.  The court dismissed

8    the complaint because "[t]hat action involves the same patents and the alleged infringement is

9    substantially identical" *Id*. at *2. The dismissal was affirmed by the Federal Circuit, which in turn

10   recognized the "conclusory formulaic recitations of the elements of patent infringement as to each

11   defendant," the "vague generalities and block quotes of statutes, cases and treatises," and the absence

12   of "nonfrivolous allegations of infringement of any claim by any actual product made, used, or sold

13   by any defendant."  *Golden*, 819 F. App'x at 931.

14   Plaintiff then filed a fourth suit in the District of South Carolina, again against third-party

15   companies,[6] styled as asserting antitrust claims.  Report of Magistrate Judge, *Golden IV*, No. 6:20-

16   cv-02270-JD (D.S.C. Sept. 11, 2020), ECF No. 16 [hereinafter Report and Recommendation].  The

17   Magistrate Judge noted:

18   [A]lthough the plaintiff asserts that this action is not one seeking
     damages for patent infringement, the alleged antitrust allegations
19   herein rely upon the plaintiff's assertion that the defendants' actions
     constitute patent infringement (and thus that they owe him licensing
20   royalties).  Indeed, the plaintiff's antitrust allegations, in essence,
     are that he has been prevented from accessing the market for CMDC
21   devices because the defendants have refused to pay him licensing
     royalties.  Nevertheless, even ignoring this pleading deficiency, the
22   complaint still fails because it "offers only vague generalities and
     block quotes of statutes, cases and treatises, but nowhere points [] to
23   any nonfrivolous allegations of . . . any claim."  Accordingly, in light
     of the vague conclusory allegations in the complaint, and the
24   plaintiff's attempt to circumvent the dismissal of his patent
     infringement claims, the instant matter is subject to summary
25   dismissal as frivolous.

26

27   _____
     [6]  In *Golden IV*, Plaintiff sued six of the sixteen third-party companies originally included in *Golden
     III*.  Later, in *Golden V*, Plaintiff again sued the full original list of sixteen third-party companies.

28

1    *Id.* at 9 (citation omitted).  The district court adopted the Report and Recommendation, *Golden IV*,

2    2021 WL 4260782, at \*3, and the dismissal was affirmed by the Fourth Circuit, *Golden v. Apple*,

3    No. 21-2160, 2022 WL 986984 (4th Cir. Mar. 31, 2022) (*per curiam*).

4        Plaintiff then filed two more suits—his fifth and sixth—in South Carolina.  *Golden V*,

5    alleging largely identical patent claims and requesting damages against the third-party companies

6    (including Apple), was dismissed, *Golden V*, at 6 ECF No. 26 (D.S.C. Nov. 2, 2021).  *Golden VI*

7    named Google only, despite making similar allegations involving similar companies (including

8    Apple), *Golden VI*, No. 6:21-cv-00244-JD (D.S.C. filed Jan. 26, 2021), but was dismissed with

9    prejudice because it was "frivolous."  Opinion & Order, *Golden VI*, No. 6:21-cv-00244-JD, at 5

10    (D.S.C. Nov. 2, 2021), ECF No. 21.  Plaintiff appealed both cases; they were made companions with

11    *Golden I* and will be submitted without argument to the Federal Circuit on September 7, 2022.

12    *Golden v. Apple Inc.*, 22-1229 (Fed. Cir.); *Golden v. Google LLC*, 22-1267 (Fed. Cir.).

13        Beginning in June 2022, Plaintiff filed three new complaints in this District against Intel,

14    Qualcomm, and the instant action against Apple.  *See Golden v. Qualcomm, Inc.*, No. 4:22-cv-

15    03283-HSG (N.D. Cal. filed June 6, 2022); *Golden v. Intel Corp.*, No. 5:22-cv-03828-NC (N.D. Cal

16    filed June 8, 2022).  In each of this last set of suits, Plaintiff repackages and recycles the same

17    assertions already dismissed by every other court that has considered his complaints.

18    **III.**     **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

19        Plaintiff's Complaint advances the same patent infringement, antitrust violations, and unjust

20    enrichment claims that were rejected as frivolous in the Court of Federal Claims and the District of

21    South Carolina.  Plaintiff's fundamental complaint, both here and in his prior actions, is the belief

22    that Apple (and other companies), with the assistance of DHS, used his patents to design their

23    products to be compatible with various add-on sensors, and that he has been harmed because they

24    did not obtain a license from him.  Plaintiff alleges that under DHS's "Cell-All Ubiquitous Biological

25    and Chemical Sensing initiative," manufacturers like Apple developed and assembled devices using

26    "Plaintiff's patented [CMDC] device."  (Compl. ¶ 25).  Plaintiff alleges Apple "was able to form

27    and maintain its monopoly status by using, making, offering for sale, and selling Plaintiff's patented

28

inventions." (*Id.* ¶ 92). Plaintiff implies he has patents for Apple's technology, such as "smartphones, tablets, laptops, and smartwatches," (*id.* ¶¶ 38, 64, 82, 83), but the patents referenced in the Complaint and records attached thereto reflect Plaintiff's patents are for threat-detection devices that allegedly *may be used by* laptops, cell phones, or CPU technologies.

In connection with his antitrust and unjust enrichment claims, Plaintiff points to news articles describing purported conduct by Apple, including Apple's relationship with Qualcomm, AT&T, and DHS. (Compl. ¶¶ 26-31, 42-44, 48). Plaintiff asserts that Apple and others were motivated to conspire with DHS so that Apple would be "free from liability of infringement if [Apple] performed the work under a government contract." (*Id.* ¶¶ 45-47). Plaintiff also claims that his market entry was "prevent[ed]" when Apple "mass produced and rushed to market Plaintiff's patented inventions of new and improved cell phones, smartphones, laptops, tablets, and smartwatches; and new and improved CPUs made for Plaintiff's CMDC devices," which "restrained competition." (*Id.* ¶ 83). Plaintiff further contends that Apple's "collusion" destroyed all possibilities for him to receive royalty compensation for his patented CMDC devices. (*Id.* ¶ 49). Finally, Plaintiff claims that "Apple's antitrust violations proximately caused the Plaintiff[']s injury [because] Apple's secret conspiracy reduced competition by excluding and foreclosing the mobile phone market for OEMs [and] Plaintiff's antitrust injury resulted from Plaintiff's inability to . . . enter into a licensing agreement with Apple and its co-conspirators [or] OEMs." (*Id.* ¶ 63).

## ARGUMENT

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed when "the plaintiff fails to meet [its] burden of establishing subject-matter jurisdiction." *Apple Inc. v. Iancu*, No. 5:20-cv-06128-EJD, 2021 WL 5232241, at *3 (N.D. Cal. Nov. 10, 2021). Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In making this determination, the Court must "draw on its judicial experience and common sense." *Id.* at 679.

While *pro se* pleadings are "liberally construed and held to a less stringent standard than those drafted by lawyers," a *pro se* complaint (or portion thereof) should be dismissed "if it fails to

1   set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Villegas v. Wray*, No.

2   19-cv-00135-VKD, 2019 WL 10632652, at *2 (N.D. Cal. Feb. 11, 2019) (quoting *Bell Atl. Corp. v.*

3   *Twombly*, 550 U.S. 544, 570 (2007)).   Indeed, "[w]hile the Court must construe the complaint

4   liberally, it may not add to the factual allegations in the complaint." *Lindblad v. Walgreens Corps.*,

5   No. 21-cv-07507-TSH, 2021 WL 7448540, at *3 (N.D. Cal. Nov. 15, 2021).

6   **I.      THE COURT LACKS SUBJECT MATTER JURISDICTION.**

7          The Court lacks subject matter jurisdiction over Plaintiff's claims because the *with*-prejudice

8   dismissals of his complaints in both the Court of Federal Claims and the District of South Carolina[7]

9   result in collateral estoppel barring Plaintiff from relitigating his patent claims.  Plaintiff additionally

10  lacks Article III standing to bring his antitrust claims.

11         **A.      Plaintiff Is Precluded from Re-Litigating His Infringement Claims**

12         Plaintiff's patent infringement claim is recycled from his first, unsuccessful case against the

13  United States (*Golden I*).   There, Plaintiff asserted 25 patent claims against the United States,

14  accusing products of several of its purported contractors, including Apple, of infringing his patents.

15  Those same 25 claims are re-asserted against Apple here: claim 1 of Patent 7,385,497 (the '497

16  Patent); claim 10 of Patent 8,106,752 (the '752 Patent); claims 1-9 of Patent 9,096,189 (the '189

17  Patent); claims 13-23 of Patent 9,589,439 (the '439 Patent); and claims 4-6 of Patent 10,163,287 (the

18  '287 Patent).[8]   (Compl. ¶¶ 54-55, 75).  Plaintiff's infringement allegations now are identical to his

19  contentions against Apple in *Golden I*.   The claim chart attached to the Complaint as Exhibit F is a

20  partial copy of his infringement contentions against Apple from *Golden I*.  *Compare* Compl. Ex. F

21  with Decl. of Julia K. York ("York Decl."), Ex. 3 (Excerpt of *Golden I*, Doc. 240 at 479 – 697).  The

22  *Golden I* court found this claim chart deficient, dismissing on that basis.  York Decl. Ex. 4 at 11-12.

23         The litigation and resolution of Plaintiff's infringement allegations against Apple products in

24  *Golden I* precludes re-litigation of the infringement claims under both the issue preclusion doctrine

25

26  _____
    [7] *Golden I*, 156 Fed. Cl. at 632; *Golden VI*, 2021 WL 5083804, at *2-3.
    [8] Plaintiff attaches copies of Patent 10,984,619 (Exhibit K) and RE 43,891 (Exhibit M), but does not
27  include claims of those patents in Exhibit F. Claims 1, 11 of the '619 Patent and Claims 11 and 44
    of the '891 Patent are only glancingly addressed in Paragraph 85 of the Complaint.

28

1   and the *Kessler* doctrine, which shields adjudged non-infringing products from repeated harassing

2   patent infringement suits.  Both doctrines may be adjudicated at the motion to dismiss stage.  *See*

3   *Adaptix, Inc. v. Amazon.com, Inc.*, No. 5:14-cv-01379-PSG, 2015 WL 4999944, at *4 (N.D. Cal.

4   Aug. 21, 2015), *clarified by* No. 5:14-cv-01379-PSG, 2016 WL 948960 (N.D. Cal. Mar. 14, 2016)

5   (granting dismissal under the issue preclusion and *Kessler* doctrines).

6          With respect to issue preclusion, all of the elements are present: "(1) [a] final adjudication

7   (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted

8   against one who was a party in the first suit." *Abe v. AFCH, Inc.*, No. 2:20-cv-08193-ODW (PVCx),

9   2021 WL 2209309, at *4 (C.D. Cal. June 1, 2021) (citation omitted).  Dismissal with prejudice

10  following briefing on the merits is a final adjudication following actual litigation of Plaintiff's

11  infringement claims.  *See In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1379 (Fed. Cir. 2020).

12  Plaintiff's pending appeal of that loss does not prevent preclusion.  *See Cygnus Telecomms. Tech.,*

13  *LLC v. Am. Int'l Telephonics, LLC*, 569 F. Supp. 2d 1035, 1037-38 (N.D. Cal. 2008).

14         The *Kessler* doctrine, which "fills the gap between . . . preclusion doctrines," also protects

15  Apple, an "adjudged non-infringer," from "repeated harassment for continuing its business as usual

16  post-final judgment in a patent action." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056 (Fed.

17  Cir. 2014).  The *Kessler* Doctrine grants a "'limited trade right' that attaches to the product itself . . .

18  [that] extends to protect any products as to which the manufacturer established a right not to be sued

19  for infringement." *PersonalWeb Techs.*, 961 F.3d at 1378-79 (citation omitted).  Thus, because

20  Plaintiff's claims in *Golden I* were dismissed with prejudice, Apple has a *Kessler* trade right for the

21  products that Plaintiff unsuccessfully accused of infringement. *See id*. at 1379.  *Kessler* protection

22  is particularly justified here, where Plaintiff serially and unsuccessfully attempted to assert his

23  patents in at least six cases (so far).

24         **B.     Plaintiff Lacks Article III Standing to Pursue His Antitrust Claims.**

25         Article III of the United States Constitution gives federal courts limited jurisdiction over

26  actual cases or controversies, conferring standing to sue only if (1) the plaintiff suffered an "injury-

27  in-fact" that is both "actual and imminent" and "concrete and particularized;" (2) the injury is "fairly

28

traceable" to the defendants' conduct; and (3) a favorable decision will likely redress the alleged injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). At the pleading stage, the plaintiff must provide "general factual allegations of injury resulting from the defendant's conduct." *Id.* at 561. A "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

Plaintiff's vague descriptions of supposed injury and Apple's alleged conduct do not establish an actual antitrust case or controversy. The assertion that Apple foreclosed Plaintiff from marketing his patent, thus depriving him of patent royalties, is too nebulous and attenuated to satisfy the requirements that his injury be "actual," "concrete," and "traceable." News articles critical of Apple's business practices and Apple's association with the government and other companies, (Compl. ¶¶ 26-31, 42-44, 48), and speculation about Apple's alleged motives (*id.* ¶¶ 45-47), do not establish the nature of the injury that Plaintiff purportedly suffered as a result of Apple's vaguely defined business practices. Plaintiff cannot show Article III standing through sheer conjecture. (*Cf.*, *e.g.*, Compl. ¶ 53 (setting out the "belief" that Apple violated the Sherman Act)).

## II.     PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM.

Plaintiff's Complaint should also be dismissed under Rule 12(b)(6) because Plaintiff fails to state a claim for patent infringement, antitrust violations, or unjust enrichment. The Complaint lacks plausible factual allegations sufficient to support Plaintiff's conspiracy and monopolization claims, both of which are time-barred and could not proceed in any event because Plaintiff lacks antitrust standing. Further, Plaintiff's deficient antitrust claims are derivative of his deficient patent claims, so are precluded by dismissals of Plaintiff's predecessor cases.

### A.     Plaintiff's Patent Infringement Allegations Fail to State a Claim

The Complaint fails to state a claim for infringement for the same reasons that Plaintiff's claims were dismissed in *Golden I*: while he alleges that Apple products, when *combined* with third-party off-the-shelf products, are infringing, he does not claim that any *Apple* product infringes, nor

1  does he plausibly claim that Apple either is an infringer or is responsible for another's infringement.[9]

2  ### 1.   Plaintiff Does Not Plausibly Allege that Apple Directly Infringes.

3  To state a plausible claim for direct patent infringement, a complaint must contain factual

4  allegations that a specific accused product practices ***every element*** of a patent claim.   *See*

5  *Arunachalam v. Apple, Inc.*, No. 5:18-cv-01250-EJD, 2018 WL 5023378, at *2 (N.D. Cal. Oct. 16,

6  2018), *aff'd*, 806 F. App'x 977 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 451 (2020).   Every element

7  must still be met under the doctrine of equivalents (the "all elements rule").   *3rd Eye Surveillance,*

8  *LLC v. United States*, 156 Fed. Cl. 104, 108 (2021).   Plaintiff does not allege that Apple makes, uses,

9  sells, offers to sell, or imports a product that practices all the elements of a patent claim under 35

10  U.S.C. § 271(a).   Where Plaintiff makes specific contentions, he relies on non-Apple products to

11  satisfy at least one limitation of each asserted claim.

12  Plaintiff's allegations demonstrate that he does not, and cannot, assert that an Apple product

13  satisfies all the elements of any asserted claim.   His claim chart (Ex. F) maps each asserted claim to

14  a combination of an Apple product with third-party products.   Without an explanation of who

15  performs that combination, however, the allegations do not establish that any *Apple* product practices

16  all the elements of the claim.[10]   At bottom, the Complaint asserts that Apple products ***could be***

17  combined with other products to infringe Plaintiff's claims.   But the Federal Circuit squarely rejected

18  the notion of infringement premised upon a finding that an accused product is "merely *capable of*

19

20  [9] Plaintiff incorrectly asserts that Apple waived its non-infringement and invalidity claims in this case by failing to appear in *Golden I* or *Golden II*.   (Compl. ¶¶ 55, 58, 60, 77).   Plaintiff cites *Bowser, Inc. v. United States*, 420 F.2d 1057, 1061 (Ct. Cl.), *on reconsideration*, 427 F.2d 740 (Ct. Cl. 1970),

21  but *Bowser* preclusion applies only to cases in which the Government is a party.   *See Bird v. United States*, 51 Fed. Cl. 536, 543 (2002).   Moreover, the *Bowser* court applied a judgment after a trial that

22  a plaintiff's patent was valid and infringed, *Bowser*, 420 F.2d at 1059, but Plaintiff has obtained no such judgment from *any* court.

23  [10] Plaintiff asserts that an Apple product in combination with the third-party add-on sensor or equipment infringes the following claims: (i) '497 Patent cl. 1; '752 Patent cl. 10; '439 Patent cl.

24  13-14 and 22-23: NODE+ sensor.   Ex. F at 446, 453, 534, 543, 610, 621, 624; (ii) '189 Patent cl. 4-6; and '439 Patent cl. 16-18: sensor-embedded sleeve.   Ex. F at 484, 492, 499, 560, 568, 575; (iii)

25  '189 Patent cl. 1-2: unspecified interconnected product "capable of sending signals to lock and unlock doors . . . detect for Chemical, Biological, Radiological, Nuclear, or Explosive agents . . . ."

26  Ex. F at 462, 471; (iv) '189 Patent cl 3; and '439 Patent cl. 15: NFC tags integrated with a sensor. Ex. F at 480, 556; (v) '287 Patent cl. 4-6: unidentified "field devices (e.g., sensors, etc.)" Ex F. at

27  635, 645, 655; (vi) '189 Patent cl. 7-9; and '439 Patent cl. 19-21: no product identified (cites to patent specification). Ex. F. at 505, 514, 524, 581, 590, 600.

28

- 9 -

1    being modified in a manner that infringes the claims of a patent." *Typhoon Touch Techs., Inc. v.*

2    *Dell, Inc.*, 659 F.3d 1376, 1380 (Fed. Cir. 2011) (emphasis added) (citation omitted).

3           Plaintiff's remaining infringement allegations are too vague to survive a motion to dismiss.

4    *See Venkee Commc'ns, LLC v. Ubiquiti Networks, Inc.*, No. SACV 21-1009 PSG (DFMx), 2022 WL

5    2286754, at *4 (C.D. Cal. Jan. 26, 2022) (conclusory allegations of "use" of an invention

6    insufficient).  He gestures to "various government projects" that allegedly "include the integration

7    of at least an Apple iPad tablet; laptop; or smartphone."  (Compl. ¶ 57).  Plaintiff's allegations that

8    Apple assembled, produced, or designed Plaintiff's invention are without support.  (Compl. ¶¶ 85,

9    91).  Plaintiff also lists his patents and provides examples of purported infringement, but he does not

10   explain how any Apple product infringes any particular claim.  Plaintiff glancingly mentions Claims

11   1 and 11 of the '619 Patent (Examples X, XIV) and Claims 11 and 44 of the '891 Patent (Examples

12   XI, XII), but the brief charts do not assert that all of the elements of any claim are embodied in any

13   Apple product.  For example, Plaintiff lists the "Apple A13 Bionic Chip" in Chart II, entitled "Central

14   Processing Unit (CPUs) for CMDC Device–Claim 5 of the '287 Patent."  But that claim requires

15   "one or more detectors in communication with at least one CPU for detecting at least one of chemical,

16   biological, radiological, or explosive agents."  (Compl. Ex. F at 645).  Plaintiff provides no

17   explanation for how this sensor limitation is satisfied by Apple's A13 Bionic chip.

18                     2.      Plaintiff Does Not Plausibly Allege Indirect Infringement.

19          A defendant may be liable for indirectly infringing if the defendant actively induces or

20   contributes to another's direct infringement.  35 U.S.C. § 271(b), (c).  A plausible allegation that

21   someone directly infringes is a prerequisite to establishing either induced or contributory

22   infringement.  *See Arunachalam*, 2018 WL 5023378, at *3.  Plaintiff's indirect infringement claims

23   cannot survive as he fails to allege facts showing that anyone directly infringed any of his patents.

24          Plaintiff also fails to allege other elements of induced and contributory infringement.  Plaintiff

25   does not allege that Apple specifically intended for anyone to infringe any particular patent as is

26   required to state a claim for *induced* infringement.  35 U.S.C. § 271(b).  Likewise, Plaintiff does not

27   allege (as he must for a *contributory* infringement claim) that the accused product is not suitable for

28

a substantial non-infringing use.  *Sonos, Inc. v. Google LLC*, No. C 21-07559 WHA, 2022 WL 799367, at *6 (N.D. Cal. Mar. 16, 2022), *leave to appeal denied*, No. 2022-134, 2022 WL 1486359 (Fed. Cir. May 11, 2022).  Any indirect infringement claim thus fails.

### B.   Plaintiff's Antitrust Allegations Fail to State a Claim

Plaintiff's effort to dress his patent claims in antitrust garb cannot "circumvent . . . prior ruling[s]" dismissing his frivolous claims.  *Golden IV*, 2020 WL 11624670, at *5-6 (recognizing that, despite Plaintiff's disavowal of seeking patent infringement damages, the antitrust allegations "rel[ied] upon the plaintiff's assertion that the defendants' actions constitute patent infringement," as well as the argument that defendants' refusal to pay licensing royalties "prevented [Plaintiff] from accessing the market for CMDC devices.").  Critically, Plaintiff's failure to plausibly allege that Apple infringed his patents renders the purportedly "anticompetitive" conduct innocuous since the alleged deleterious effect of the anticompetitive conduct was patent infringement.[11]  *See Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 893 (5th Cir. 2016) (recognizing that, even if properly pleaded, patent infringement is not cognizable antitrust injury), *aff'd*, 919 F.3d 869 (5th Cir. 2019).  Moreover, even if the antitrust claims were distinct from the patent claims, they are deficient because they rely on conclusory allegations and Plaintiff lacks antitrust standing.

### 1.   Plaintiff's Section 1 Claims Lack Plausible Allegations of a Conspiracy

A Section 1 Sherman Act (15 U.S.C. § 1) claim requires a "contract, combination . . . , or conspiracy, in restraint of trade or commerce," which in turn requires a showing that the alleged conspirators "had a conscious commitment to a common scheme designed to achieve an unlawful objective."  *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (citation omitted).  Here, Plaintiff "believes" that "Apple's conspiracy comprised of agreements, and an understanding or meeting of the minds . . . in the Cell-All initiative."  (Compl. ¶ 32).  Despite repeatedly parroting the elements of a Section 1 claim (*id.* ¶¶ 32, 52, 53, 88) and hypothesizing about motives for

---

[11] Similarly, Plaintiff's unjust enrichment claims should also be dismissed as derivative of and seeking the same relief as his patent-infringement claims.  Plaintiff alleges that Apple has been enriched by using Plaintiff's patented technology.  (Compl. ¶ 64).  Plaintiff cannot circumvent the previous dismissal of his patent claims by disguising them as unjust enrichment.

companies to work with DHS on the Cell-All initiative (*id.* ¶¶ 45-47), Plaintiff never alleges any direct or circumstantial evidence of any supposed conspiracy and makes no effort to explain the supposedly unlawful objective of the Cell-All initiative or how the alleged conspiracy restrained trade.  As before, Plaintiff "nowhere points us to any nonfrivolous allegations," instead offering only "conclusory formulaic recitations of the elements of [his claims]" that are plainly deficient.  *Golden*, 819 F. App'x at 931.

## 2.    Plaintiff's Contradictory Section 2 Claims Are Wholly Conclusory

Plaintiff's Section 2 Sherman Act (15 U.S.C. § 2) claim fares no better.  Plaintiff alternates between allegations that Apple conspired to monopolize, attempted to monopolize, and unlawfully monopolized—each a distinct cause of action under Section 2.   While this "dizzying array of disorganized assertions," *Golden*, 819 F. App'x at 931, leaves Defendant guessing as to Plaintiff's precise theory, the conclusory allegations do not state a Section 2 claim in any event.  Both attempted monopolization and conspiracy to monopolize claims require a plaintiff to demonstrate "specific intent to control prices or destroy competition." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1432-33 (9th Cir. 1995).  But the Complaint does not allege Apple's intent to monopolize any market, instead reciting the elements of a Section 2 claim and pasting news reports about Apple and other companies.  (Compl. ¶¶ 20, 33, 61, 84, 88).  Plaintiff's pleadings are characteristic of "conclusory allegation[s] based on information and belief" that are "insufficient under *Iqbal/Twombly*." *Menzel v. Scholastic, Inc.*, No. 17-cv-05499-EMC, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018).

Any claim that Apple monopolized, attempted to monopolize, or conspired to monopolize is equally deficient because Plaintiff does not adequately allege any relevant antitrust product market— i.e., a market comprised of reasonably interchangeable products. *See Spindler v. Johnson & Johnson Corp.*, No. C 10-01414 JSW, 2011 WL 12557884, at *2–3 (N.D. Cal. Aug. 1, 2010); *Delano Farms Co. v. Cal. Table Grape Comm'n,* 655 F.3d 1337, 1351 (Fed. Cir. 2011) (applying Ninth Circuit law, noting "[w]ithout a definition of the relevant market, the anticompetitive effects of [the alleged conduct] are impossible to measure").  Instead, Plaintiff gestures to various nebulous potential product markets, including for: "Plaintiff's [CMDC] devices;" "smartphones;" "mobile phone

1    manufacturers;" "mobile phone market;" and "new and improved cell phones, smartphones, laptops,

2    tablets, and smartwatches."  (Compl. ¶¶ 45, 53, 56, 62, 83).  In the absence of any explanation of

3    why those "markets" are proper antitrust markets, however, the antitrust claims must be dismissed.

4    *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) (recognizing "a complaint may be

5    dismissed under Rule 12(b)(6) if the . . . 'relevant market' definition is facially unsustainable").

6                    3.    Plaintiff Fails to Establish Antitrust Standing

7            Plaintiff also fails to meet Clayton Act Section 4's (15 U.S.C. § 16) heightened standing

8    requirements for antitrust plaintiffs bringing claims under the Sherman Act, which require a showing

9    of "antitrust standing."  *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir.

10   1999).   To assess antitrust standing, courts consider, *inter alia*, whether the plaintiff's injury

11   constitutes an antitrust injury, the directness of the injury, and the speculativeness of the harm.

12           *Antitrust Injury*.   An antitrust plaintiff must "allege [a] credible injury caused by the

13   [allegedly] unlawful conduct" that "flows from that which makes the conduct unlawful," and is of

14   "the type the antitrust laws were intended to prevent."  *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th

15   Cir. 2013).   While Plaintiff declares his injury "is the type the antitrust laws were intended to

16   prevent," (Compl. ¶ 62), he makes no attempt to connect the alleged harm to any "specific factual

17   circumstances" in the case.  *Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 562 F. Supp. 3d 1073,

18   1089 (E.D. Cal. 2021).  He vaguely claims that "Apple's collusion, and conspiracy to hinder trade,

19   has destroyed all possibilities for the Plaintiff to receive royalty compensation for Plaintiff's patented

20   CMDC devices," (Compl. ¶ 49), and that "antitrust injury resulted from Plaintiff's inability to . . .

21   enter into a licensing agreement with Apple and its co-conspirators [or] OEMs."  (Compl. ¶ 63).  But

22   Plaintiff does not identify any particular anticompetitive act that led to this supposed exclusion, nor

23   facts indicating he was ever injured in any market in which Apple operates.  *Cf. Am. Ad Mgmt.*, 190

24   F.3d at 1057 ("Antitrust injury requires the plaintiff to have suffered its injury in the market where

25   competition is being restrained.").   Nor does the Complaint allege facts sufficient to demonstrate

26   that Plaintiff was "ready to compete" in the markets for "smartphones, tablets, laptops, and

27   smartwatches" (Compl. ¶ 83).  *See Space Expl. Techs. Corp. v. Boeing Co.*, No. CV 05-07533 FMC

28

1  (MANx), 2006 WL 7136649, at *4 (C.D. Cal. May 12, 2006).[12]

2        _Indirect and Speculative Injury_.  Even if the Court found the Complaint plausibly alleges

3  _some_ antitrust injury, that injury is not direct and is impermissibly speculative.  To establish antitrust

4  standing, Plaintiff must allege "not a mere causal link, but a direct effect."  _Jacobsen v. Katzer_, No.

5  C 06-01905 JSW, 2006 WL 3000473, at *3 (N.D. Cal. Oct. 20, 2006) (citation omitted).  Plaintiff

6  declares that "Apple's antitrust violations proximately caused [his] injury," and "Apple's secret

7  conspiracy reduced competition by excluding and foreclosing [Plaintiff from] the mobile phone

8  market for OEMs," (Compl. ¶ 63), but does not allege what acts Apple allegedly _did_ to exclude him

9  and does not explain _how_ those acts directly prevented Plaintiff from entering the mobile phone

10  market or receiving royalty payments.  Plaintiff's claim "rests at bottom on some abstract conception

11  or speculative measure of harm," _Assoc. General Contractors of California, Inc. v. California State_

12  _Council of Carpenters,_ 459 U.S. 519, 543 (1983) (citation omitted), and should be dismissed.

13                  4.    Plaintiff's Antitrust Allegations Are Time Barred

14        The statute of limitations and the doctrine of laches also preclude Plaintiff's antitrust claims.

15  Private actions for damages under the Clayton Act are subject to a four-year limitations period.  15

16  U.S.C. § 15b.  The limitations period begins to run for a violation "when a defendant commits an act

17  that injures a plaintiff's business."  _Zenith Radio Corp. v. Hazeltine Rsch., Inc.,_ 401 U.S. 321, 338

18  (1971).  Plaintiff claims harm from Apple's conduct in either 2007, when the alleged conspiracy

19  began, or 2010, when he claims that Apple was notified of an offer to license his patented technology.

20  (Compl. ¶¶ 17, 47).  Therefore, Plaintiff's claims became time-barred—at the latest—as of 2014, and

21  this Complaint is eight years too late.  Plaintiff does not allege a "continuing violation," whereby a

22  limitations period may restart if the defendant commits an "overt act" within the limitations period

23  that (1) is "new and independent" and (2) "inflict[s] new and accumulating injury on the plaintiff."

24  _Pace Indus., Inc. v. Three Phoenix Co.,_ 813 F.2d 234, 238 (9th Cir. 1987).  At best, Plaintiff alleges

25

26  [12] Plaintiff refers to market-wide injury, claiming his inability to license his patents with OEMs reduced competition for mobile devices.  (Compl. ¶ 63).  But "allegations of hypothetical loss of

27  consumer choice . . . are entirely too conclusory and speculative" to suffice for antitrust standing. _Feitelson v. Google Inc._, 80 F. Supp. 3d 1019, 1029 (N.D. Cal. 2015).

28

1  continuing harm from pre-limitation conduct, such as the alleged 2010 refusal to license, but harm

2  resulting from pre-limitations conduct is barred from recovery.  *See In re Multidistrict Vehicle Air*

3  *Pollution,* 591 F.2d 68, 71 (9th Cir. 1979).  Thus, Plaintiff's antitrust claims are time-barred.[13]

4  **III.     PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AS FRIVOLOUS**

5          A district court is required to dismiss a frivolous complaint from a litigant who is

6  proceeding *in forma pauperis.*  28 U.S.C. § 1915(e)(2)(B).  Frivolous complaints include those in

7  which the allegations asserted "lack an arguable basis either in law or in fact."  *Neitzke v.*

8  *Williams,* 490 U.S. 319, 325 (1989).  Plaintiff is serial filer, and the Complaint's "striking similarity

9  to [other] complaints he filed in district court that also [were] dismissed as frivolous" weighs in favor

10 of dismissal here as well.  *Annamalai v. United States*, No. 16-815C, 2016 WL 4249108, at *1 (Fed.

11 Cl. Aug. 10, 2016).  As this is now the ninth complaint filed with nearly identical frivolous claims

12 lacking a basis in law or fact, the Complaint should be dismissed.

13 **IV.     LEAVE TO AMEND SHOULD BE DENIED**

14         Plaintiff should be denied leave to amend his Complaint.  "Dismissal without leave to amend

15 is proper if it is clear that the complaint could not be saved by amendment."  *Kendall v. Visa U.S.A.,*

16 *Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).  "Valid reasons for denying leave to amend include undue

17 delay, bad faith, prejudice, and futility."  *California Architectural Bldg. Prod., Inc. v. Franciscan*

18 *Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1988).  In *Golden I*, Plaintiff amended his complaint

19 *six* times over *eight years*, each time failing to cure obvious deficiencies.  To avoid such an outcome

20 here, dismissal without leave to amend is proper.

21                                      **CONCLUSION**

22         For the foregoing reasons, the Court should dismiss with prejudice Plaintiffs' Complaint for

23 lack of subject matter jurisdiction and failure to state a claim and deny Plaintiff leave to amend.

24

25 _____

26 [13]  Plaintiff does not expressly seek injunctive relief under Section 16 of the Clayton Act, (*see* Compl. at 37), and his claims for injunctive relief appear to be no more than restyling his proposed patent law remedies.  To the extent Plaintiff seeks injunctive relief under the Clayton Act, the doctrine of

27 laches applies, with four years serving as a "guideline" for the limitations period.  *See, e.g. Aurora Enters., Inc. v. NBC, Inc.,* 688 F.2d 689, 694 (9th Cir. 1982).

28

1  DATED: August 30, 2022

2

**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP**

By: /s/ *Jack P. DiCanio*

3

4

Jack P. DiCanio (SBN 138782)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: jack.dicanio@skadden.com

5

6

7

8

Karen Hoffman Lent (*pro hac vice* pending)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
karen.lent@skadden.com

9

10

11

Julia K. York (*pro hac vice* pending)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile:  (202) 393-5760
Email:      julia.york@skadden.com

12

13

14

15

*Attorneys for Defendant Apple Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28