# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### (SAN FRANCISCO)

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

RECEIVED

JAN 1 1 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---

LARRY GOLDEN

*Pro Se* Plaintiff,

V.

APPLE INC.

Defendant.

CASE NO: 3:22-cv-04152-VC

**(JURY TRIAL DEMANDED)**

**(Sherman Act) (Conspiracy) (Unreasonable Restraint on Trade) (The Clayton Act) (Unjust Enrichment) (Willful Patent Infringement).**

## PLAINTIFF'S NOTICE OF RELATED FILINGS IN THE SUPREME COURT

January 10, 2024

Relevant to the cause(s) of action outlined in this case, is the recent case filed in the Supreme Court on January 9, 2024, *Larry Golden v. Qualcomm Incorporated*, Case No. 23-740

Pursuant to the Supreme Court, all petitions filed on or after July 1st of 2019 must include a "Related Cases" section. Relevant to petition filings, Rule 14 now asks for:

> [A] list of all proceedings in state and federal trial and appellate courts, including proceedings in this Court, that are directly related to the case in this Court. For each such proceeding, the list should include the court in question, the docket number and case caption for the proceeding, and the date of entry of the judgment. For the purposes of this rule, a case is "directly related" if it arises from the same trial court case as the case in this Court (including the proceedings directly on review in this case), or if it challenges the same [causes of actions; patents, etc.] as is challenged in this Court, whether on direct appeal or through state or federal collateral proceedings. Amended Rule 14.1(b)(iii).

The "Certificate of Service" not only include the Defendant's Attorney of record in this case, it also provides "Notice", and a list of other "Related Cases".

Attached as **Exhibit A** is a copy of the "Petition for Writ of Certiorari of the Related Case filed in the Supreme Court in *Larry Golden v. Qualcomm Incorporated*, Case No. 23-740"

Sincerely,

/ *Larry Golden*

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

2

# <u>CERTIFICATE OF NOTICE AND SERVICE</u>

The undersigned hereby certifies that on this 10th day of January, 2024, a true and correct copy of the foregoing "Notice of Related Filings in the Supreme Court" and a copy of the "Petition for Writ of Certiorari of the Related Case filed in the Supreme Court in *Larry Golden v. Qualcomm Incorporated*, Case No. 23-740", was served upon the following Defendants either by priority "express" mail; priority mail; or via email

1. *Golden v. Google LLC*, 3:2022cv05246, California Northern District Court – [**San Francisco**] Pending

   U.S. District Court-NDC-San Francisco
   450 Golden Gate Avenue, 16th Floor
   San Francisco, CA 94102

   Matthew S. Warren
   WARREN LEX LLP
   2261 Market Street, No. 606
   San Francisco, California, 94114
   Phone: (415) 895-2940
   Fax: (415) 895-2964
   Email: 22-5246@cases.warrenlex.com

2. *Golden v. Qualcomm, Inc.*, 4:2022cv03283, California Northern District Court - [**Oakland**] Judgement entered March 15, 2023

   U.S. District Court-NDC-Oakland
   1301 Clay Street, Suite 400 S
   Oakland, CA 94612

   Joseph John Stevens
   PATTERSON & SHERIDAN, LLP
   50 West San Fernando Street, Suite 250
   San Jose, CA 95113
   Phone: (650)384-4418 Fax: (650)330-2314
   Email: jstevens@pattersonsheridan.com

3. *Golden v. Intel Corporation*, 5:2022cv03828, California Northern District Court – [**San Jose**] Judgement entered November 22, 2022

   U.S. District Court-NDC-San Jose
   280 South 1st Street, Room 2112

San Jose, CA 95113

Richard Tyler Atkinson
McManis Faulkner
50 West San Fernando Street, 10th Floor
San Jose, CA 95113
Phone: (408) 279-8700
Fax: (408) 279-3244
Email: tatkinson@mcmanislaw.com

4. *Golden v. Apple, Inc.*, 3:2022cv04152, California Northern District Court – [**San**

   **Francisco**] Judgement entered October 20, 2022

   U.S. District Court-NDC-San Francisco
   450 Golden Gate Avenue, 16th Floor
   San Francisco, CA 94102

   Jack Patrick DiCanio
   Skadden Arps Slate Meagher & Flom LLP
   525 University Avenue
   Palo Alto, CA 94301
   Phone: 650-470-4500 Fax: 650-470-4570
   Email: jdicanio@skadden.com

5. *Golden v. Samsung Electronics America, Inc.*, 3:2023cv00048, California Northern

   District Court – [**San Francisco**] Judgement entered June 8, 2023

   U.S. District Court-NDC-San Francisco
   450 Golden Gate Avenue, 16th Floor
   San Francisco, CA 94102

   Hyun Sik Byun
   COVINGTON & BURLING LLP
   3000 El Camino Real, 10th Floor
   5 Palo Alto Square
   Palo Alto, CA 94306
   Phone: (650) 632-4707 Email: hbyun@cov.com

6. *Golden v. Samsung Electronics America, Inc.*, 0:2023cvpri02120, U.S. Court of Appeals,

   Federal Circuit. Pending

   U.S. Court of Appeals for the Federal Circuit
   717 Madison Place, NW
   Washington, DC 20439

   Hyun Sik Byun

COVINGTON & BURLING LLP
3000 El Camino Real, 10th Floor
5 Palo Alto Square
Palo Alto, CA 94306
Phone: (650) 632-4707 Email: hbyun@cov.com

7. *Golden v. Qualcomm Incorporated*, 0:2023cvpri01818, U.S. Court of Appeals, Federal

Circuit. Judgement entered October 10, 2023

U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC 20439

John Allen Yates
Kyrie Cameron
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX 77046
Tel: 713-623-4844 jyates@pattersonsheridan.com, kcameron@pattersonsheridan.com

8. *Golden v. US*, 0:2023cvus02139, U.S. Court of Appeals, Federal Circuit. Judgement

entered December 15, 2023

U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC 20439

Grant D. Johnson Trial Attorney
Commercial Litigation Branch
Civil Division Department of Justice
Washington, DC 20530
Grant.D.Johnson@usdoj.gov (202) 305-2513

9. *GOLDEN v. USA*, 1:2013cv00307, U.S. Court of Federal Claims. Judgement entered

November 10, 2021

ProSe_case_filings@cfc.uscourts.gov,
Grant.D.Johnson@usdoj.gov,

10. *GOLDEN v. USA*, 1:2023cv00185, U.S. Court of Federal Claims. Judgement entered

May 31, 2023

ProSe_case_filings@cfc.uscourts.gov,
Grant.D.Johnson@usdoj.gov,

11. *GOLDEN v. USA*, 1:2023cv00811, U.S. Court of Federal Claims. Pending

ProSe_case_filings@cfc.uscourts.gov,
Grant.D.Johnson@usdoj.gov,

12. *United States Department of Homeland Security, Petitioner, v. Larry Golden, Patent*

    *Owner*, Case IPR2014-00714, The United States Patent Trial and Appeal Board. Final

    Written Decision entered October 15, 2015

    Mail Stop PATENT BOARD
    Patent Trial and Appeal Board
    US Patent and Trademark Office
    PO Box 1450
    Alexandria, Virginia 22313-1450

    Lavanya Ratnam
    Nathan Grebasch
    William Washington
    Office of the General Counsel
    U.S. Department of Homeland Security
    245 Murray Lane, SW
    Mail Stop 0485
    Washington, DC 20528-0485
    lavanya.ratnam@hq.dhs.gov, nathan.grebasch@hq.dhs.gov,
    william.washington@tsa.dhs.gov

Sincerely,

/ *Larry Golden*

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

# Exhibit A

No. *23-740*



## In The
# Supreme Court of the United States

———— ♦ ————

LARRY GOLDEN,

*Petitioner,*

v.

QUALCOMM INC.,

*Respondent.*

———— ♦ ————

**On Petition For Writ Of Certiorari
To The United States Court Of Appeals
For The Federal Circuit**

———— ♦ ————

**PETITION FOR WRIT OF CERTIORARI**

———— ♦ ————

LARRY GOLDEN, Petitioner, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
(864) 288-5605
atpg-tech@charter.net

RECEIVED
JAN - 9 2024
OFFICE OF THE CLERK
SUPREME COURT, U.S.

i

## QUESTIONS PRESENTED

On March 6, 1857, in the *Dred Scott* decision, the U.S. Supreme Court decided that African Americans "had no rights which the white man was bound to respect" and that "all people of African descent, free or enslaved, were not U.S. citizens and therefore had no right to sue in federal court; the *Dred Scott* decision was made after the Fifth Amendment, which "requires that 'due process of law' be part of any proceeding that denies a citizen . . . property"; and the Seventh Amendment, that "preserves the right of a jury for civil cases in federal court"; yet, some would say the *Dred Scott* decision was effectively nullified in 1865 by the passage of the Thirteenth Amendment, which abolished slavery, and by the Fourteenth Amendment in 1868, which guaranteed full citizenship rights; but, where is it specifically written that a black and/or African American has the right to sue a White in federal court over property?

The Northern District of California Court and The Federal Trade Commission in *FTC v. Qualcomm*, 411 F. Supp. 3d 658 (N.D. Cal. 2019), has already investigated and discovered Qualcomm does not have the patent rights; a licensing agreement; or authorization to legally collect a 5% running royalty on the price of each smartphone sold. Therefore, is it fair to say Qualcomm's unauthorized "use" of the patented smartphone invention to collect tens of billions of dollars annually is in violation of 35 U.S.C. § 271(a), and the person injured is the inventor who owns the patent rights for the smartphone?

ii

QUESTIONS PRESENTED—Continued

Does systemic/structural racism in the District and Appellate Courts; does judicial abuse and bias against petitioner, a Black and/or African American; does denying Petitioner his 7th Amendment right to a trial by jury; create monetary liabilities for the company, Qualcomm, who benefits from the District and Appellate Courts' actions?

iii

## PARTIES TO THE PROCEEDING

The parties to the proceeding in the United States Court of Appeals for the Federal Circuit were Petitioner Larry Golden and Respondent Qualcomm Incorporated.

## RELATED CASES

- *Golden v. Google LLC*, 3:2022cv05246, California Northern District Court. Pending

- *Golden v. Qualcomm, Inc.*, 4:2022cv03283, California Northern District Court. Judgment entered March 15, 2023

- *Golden v. Intel Corporation*, 5:2022cv03828, California Northern District Court. Judgment entered November 22, 2022

- *Golden v. Apple, Inc.*, 3:2022cv04152, California Northern District Court. Judgment entered October 20, 2022

- *Golden v. Samsung Electronics America, Inc.*, 3:2023cv00048, California Northern District Court. Judgment entered June 8, 2023

- *Golden v. Samsung Electronics America, Inc.*, 0:2023cvpri02120, U.S. Court of Appeals, Federal Circuit. Pending

- *Golden v. Qualcomm Incorporated*, 0:2023cvpri01818, U.S. Court of Appeals, Federal Circuit. Judgment entered October 10, 2023

iv

**RELATED CASES**—Continued

- *Golden v. USA*, 0:2023cvus02139, U.S. Court of Appeals, Federal Circuit. Judgment entered December 15, 2023

  *Golden v. USA*, 1:2013cv00307, U.S. Court of Federal Claims. Judgment entered November 10, 2021

- *Golden v. USA*, 1:2023cv00185, U.S. Court of Federal Claims. Judgment entered May 31, 2023

- *Golden v. USA*, 1:2023cv00811, U.S. Court of Federal Claims. Pending

v

## TABLE OF CONTENTS

Page

QUESTIONS PRESENTED ................................. i

PARTIES TO THE PROCEEDING...................... iii

RELATED CASES ............................................... iii

TABLE OF CONTENTS ...................................... v

TABLE OF AUTHORITIES................................. viii

PETITION FOR A WRIT OF CERTIORARI ....... 1

OPINIONS BELOW............................................. 1

JURISDICTION.................................................. 1

STATUTES AND CONSTITUTIONAL PROVI-
SIONS INVOLVED............................................ 1

INTRODUCTION AND STATEMENT OF THE
CASE ............................................................... 2

REASONS FOR GRANTING THE WRIT........... 8

I.   PATENT INFRINGEMENT IS AN ISSUE-
     OF-FACT TRIED BY A JURY UNDER
     THE SEVENTH AMENDMENT .............. 14

II.  QUALCOMM'S   SMARTPHONE   FOR
     SNAPDRAGON  INSIDERS  LITERALLY
     MEETS EVERY LIMITATION OF PETI-
     TIONER'S PATENT CLAIMS .................. 15

III. QUALCOMM ACTIVELY INDUCED THE
     INFRINGEMENT   OF   PETITIONER'S
     PATENTS AND CONTRIBUTED TO THE
     INFRINGEMENT   WITH   ITS   SNAP-
     DRAGON CHIPSETS/CPUS.................... 21

vi

TABLE OF CONTENTS – Continued

Page

IV. THE NORTHERN DISTRICT OF CALI-
FORNIA COURT AND THE FEDERAL
TRADE COMMISSION IN *FTC V. QUAL-
COMM*, 411 F. SUPP. 3d 658 (N.D. CAL.
2019), HAS ALREADY INVESTIGATED
AND DISCOVERED QUALCOMM DOES
NOT HAVE THE PATENT RIGHTS TO
"USE" PETITIONER'S PATENTED SMART-
PHONE INVENTION TO COLLECT BIL-
LIONS IN ROYALTIES ............................. 27

V. THE U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT IN *GOLDEN
V. GOOGLE*, CASE NO. 22-1267, HAS AL-
READY DETERMINED A "SMARTPHONE"
LITERALLY INFRINGES CERTAIN IN-
DEPENDENT CLAIMS OF PETITIONER'S
PATENTS; THEREFORE, THE BURDEN
IS ON QUALCOMM TO SHOW ITS
SMARTPHONE AND THE THOUSANDS
OF SMARTPHONE MODELS QUALCOMM
COLLECTS A 5% RUNNING ROYALTY
FROM DOES NOT INFRINGE THE
SAME INDEPENDENT CLAIMS OF PE-
TITIONER'S PATENTS ........................... 32

VI. SYSTEMIC/STRUCTURAL RACISM AND
JUDICIAL BIAS AGAINST PETITIONER,
A BLACK AND/OR AFRICAN AMERI-
CAN LITIGANT, IN THE DISTRICT AND
APPELLATE COURTS ............................. 34

vii

TABLE OF CONTENTS – Continued

Page

VII.   THE FIFTH AMENDMENT "DUE PRO-
       CESS" CLAUSE OF THE U.S. CONSTI-
       TUTION .................................................... 38

VIII.  THE DISTRICT COURT DENIED PETI-
       TIONER HIS SEVENTH AMENDMENT
       RIGHT TO A TRIAL BY JURY ................. 40

CONCLUSION.................................................... 42

APPENDIX

Opinion: United States Court of Appeals for the
   Federal Circuit (CAFC) (10/10/2023) .............. App. 1

Order: Granting Motion to Dismiss; United
   States District Court for the Northern District
   of California (03/15/2023) ................................ App. 11

Order: Denying Motion for Reconsideration;
   United States District Court for the North-
   ern District of California (04/06/2023)........ App. 21

Order: Denying *En Banc* Rehearing; United
   States Court of Appeals for the Federal Cir-
   cuit (CAFC) (12/06/2023) ............................... App. 24

viii

TABLE OF AUTHORITIES

Page

CASES

*Ansell Healthcare Prod. LLC v. Reckitt Benck-iser LLC*, No. 15-CV-915-RGA, 2018 WL 620968 (D. Del. Jan. 30, 2018) ...............................26

*Baltimore & Carolina Line v. Redman*, 295 U.S. 654 (1935)...............................................................42

*Comcast Corp. v. National Association of African-American Owned Media* ...................................31, 34

*Dimick v. Schiedt*, 293 U.S. 474 (1935)......................42

*Dred Scott* .................................................................15

*Eko Brands, LLC v. Adrian Rivera Maynez En-ters., Inc.*, 946 F.3d 1367 (Fed. Cir. 2020).................6

*FastShip, LLC v. U.S*.................................................36

*FTC v. Qualcomm*, 411 F. Supp. 3d 658 (N.D. Cal. 2019).....................................2, 3, 5, 6, 10, 17, 27

*Gasoline Products Co. v. Champlin Ref. Co.*, 283 U.S. 494 (1931) .......................................................42

*General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 41 USPQ2d 1440 (Fed. Cir. 1997) ...................17

*Golden v. The DHS*.....................................................11

*Golden v. United States*, 129 Fed. Cl. 630 (2016).......39

*Golden v. USA*, Case No. 13-307C ....................9, 10, 38

*Larry Golden v. Google LLC*, Case No. 22-1267 .....4, 5, 17, 19, 20, 32

*Larry Golden v. Qualcomm, Inc.*, No. 4:22-cv-03283-HSG (03/15/23)......................................20, 39

ix

## TABLE OF AUTHORITIES – Continued

Page

*Machine Co. v. Murphy*, 97 U.S. 120, 24 L. Ed.
935 (1878)................................................................16

*Markman v. Westview Instruments, Inc.*, 517 U.S.
370 (1996)................................................................14

*McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S.
273 (1976)................................................................25

*Microsoft v. i4i*............................................................41

*Oakley, Inc. v. Int'l Tropic-Cal, Inc.*, 923 F.2d 167
(Fed. Cir. 1991).......................................................14

*Return Mail v. U.S. Postal Service*..........................9, 39

*Runyon v. McCrary*, 427 U.S. 160 (1976) ..................25

*SRI v. Matsushita Electronic Corp.*, 775 F.2d
1107, 227 USPQ 577 (Fed. Cir. 1985) .....................14

*Storix, Inc. v. Anthony Johnson* ..................................37

*Walker v. New Mexico & So. Pac. R.R.*, 165 U.S.
593 (1897)................................................................42

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
520 U.S. 17, 41 USPQ2d 1865 (1997) .....................16

*Williams v. Pennsylvania*............................................13

*Zoltek V* .......................................................................11

CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. V, cl. 4 ........................ 2, 11, 12, 38

U.S. CONST. amend. VII............. 2-7, 11, 12, 15, 40, 41

x

TABLE OF AUTHORITIES – Continued

Page

STATUTES

28 U.S.C. § 1254(1)..........................................................1

28 U.S.C. § 1498(a).......................................................11

35 U.S.C. § 271(a)............................... 1, 3, 11, 19, 20, 41

35 U.S.C. § 271(b).................................... 1, 4, 5, 22, 41

35 U.S.C. § 271(c) ..................................... 1, 4, 5, 23, 41

35 U.S.C. § 282 .....................................................33, 41

42 U.S.C. § 1981 ...................................................25, 34

42 U.S.C. § 2000d et seq.................................................9

Cal. Code Civ. Proc § 631(a).........................................14

OTHER AUTHORITIES

Code of Conduct for United States Judges................12

    Canon 2A...........................................................12, 13

    Canon 3C...............................................................13

    Canon 3(B)(6) .........................................................13

1

## PETITION FOR A WRIT OF CERTIORARI

Larry Golden petitions for a writ of certiorari to review the judgment of the United States Court of Appeals for the Federal Circuit in this case.

———————◆———————

## OPINIONS BELOW

The Court of Appeals opinions addressing the questions (App. 1-10) and (App. 24-25) are unreported. The District Court opinions addressing the questions (App. 11-20), and (App. 21-23) are unreported.

———————◆———————

## JURISDICTION

The District Court entered judgment on March 15, 2023 (App. 11). The District Court entered judgment on a motion for reconsideration on April 6, 2023 (App. 21). The Court of Appeals entered judgment on October 10, 2023 (App. 1). The Court of Appeals denied a timely filed petition for rehearing en banc on December 6, 2023 (App. 24). This Court has jurisdiction under 28 U.S.C. § 1254(1).

———————◆———————

## STATUTES AND CONSTITUTIONAL PROVISIONS INVOLVED

35 U.S.C. § 271(a) direct patent infringement and "use" of a patented invention; § 271(b) induced patent infringement; § 271(c) contributory patent

2

infringement; U.S. Constitution—Fifth Amendment "Due Process" Clause; U.S. Constitution—Seventh Amendment "Right to Trial by Jury"; and Antitrust law—illegal "tying" arrangement.

————◆————

## INTRODUCTION AND STATEMENT OF THE CASE

The District Court and the Appellate Court have victimized, mistreated, and prosecuted another Black and/or African American in a system of deeply embedded racist laws [systemic/structural racism], and has entrenched the practices and beliefs that produce, condone, and perpetuate the widespread unfair treatment and oppression of Blacks and/or African Americans [Petitioner] who attempt to bring actions in a court of law against Whites over property rights [Supreme Court "*Dred Scott*" case].

The Seventh Amendment of the United States Constitution provides in relevant part that "[i]n suits at common law, where the value in controversy exceeds twenty dollars, the right of trial by jury shall be preserved" [U.S. CONST. amend. VII]. The Northern District of California Court fail to adhere to the Circuit's own precedence [horizontal stare decisis] in *FTC v. Qualcomm*, 411 F. Supp. 3d 658 (N.D. Cal. 2019)

Judge Lucy H. Koh concluded Qualcomm is being "unjustly enriched" from its anticompetitive practices of collecting a 5% running royalty on the price of each "smartphone" sold [*FTC*—"unfair methods of

3

competition" and "unfair or deceptive acts or prac-
tices"] from the OEMs Samsung, Google, etc. Qual-
comm monopolized the market on illegally collecting
royalties on Petitioner's patented smartphone inven-
tion, thereby restraining Petitioner from collecting roy-
alties from the OEMs Samsung, Google, etc. for the
making, using, offering for sell, and selling of Peti-
tioner's smartphone invention [35 U.S.C. § 271(a)].
This type of antitrust injury to Petitioner is of a type
that the antitrust laws were intended to prevent; and
the Petitioner's injury flows from that which makes
Qualcomm's acts unlawful. The District Court and Ap-
pellate Court ignored the fact that the controversy ex-
ceeds twenty dollars, and Petitioner's right of trial by
jury is preserved [U.S. CONST. amend. VII].

The District Court and the Appellate Court fail to
allow a trial by jury [U.S. CONST. amend. VII] upon
Petitioner, a Black and/or African American demand,
to determine if Qualcomm's illegal collection of a 5%
running royalty on the price of each "smartphone" sold
violates antitrust laws only [*FTC v. Qualcomm*, 411
F. Supp. 3d 658 (N.D. Cal. 2019)]; patent laws only
[whoever "uses" any patented invention without au-
thority or legal right to do so, infringes the patent—35
U.S.C. § 271(a)], or both antitrust laws and patent
laws.

The District Court and the Appellate Court have
denied Petitioner a trial by jury [U.S. CONST. amend.
VII] of the patent infringement claims against Qual-
comm's literal infringement and infringement of the
doctrine of equivalents—35 U.S.C. § 271(a); induced

4

patent infringement—35 U.S.C. § 271(b); contributory patent infringement—35 U.S.C. § 271(c); and willful infringement—deliberate or intentional; that are issues-of-facts tried by a jury under the Seventh Amendment.

The Northern District of California Court, who is bound by and must follow the decisions of the U.S. Court of Appeals for the Federal Circuit [vertical stare decisis] fail to abide by the Circuit's decision in *Larry Golden v. Google LLC*, Case No. 22-1267, that a "smartphone" [Qualcomm's Smartphone for Snapdragon Insiders] literally and/or under the doctrine of equivalents infringes Petitioner's "independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 . . . and it does so in a relatively straightforward manner". The District Court denied Petitioner [systemic/structural racism] a trial by jury in this patent infringement claim that is an issue-of-fact [U.S. CONST. amend. VII].

Likewise, the U.S. Court of Appeals for the Federal Circuit [horizontal stare decisis] fail to adhere to the Circuit's own precedence in *Larry Golden v. Google LLC*, Case No. 22-1267, that a "smartphone" [Qualcomm's Smartphone for Snapdragon Insiders] literally and/or under the doctrine of equivalents infringes Petitioner's independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 . . . "and it does so in a relatively straightforward manner". The Appellate Court was complicit in denying the Petitioner, a Black and/or African American, [systemic/structural racism] a trial by jury in this patent infringement

5

claim that is an issue-of-fact [U.S. CONST. amend. VII].

The District Court and the Appellate Court ignored the precedence set by the U.S. Court of Appeals for the Federal Circuit [vertical stare decisis] in *Larry Golden v. Google LLC*, Case No. 22-1267 that establishes the "smartphone" directly infringes at least Petitioner's independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 . . . "and it does so in a relatively straightforward manner", when establishing the "direct infringement" requirement for induced patent infringement—35 U.S.C. § 271(b); and, contributory patent infringement—35 U.S.C. § 271(c).

The District Court and the Appellate Court fail to realize it is a jury's responsibility to decide if Qualcomm, with knowledge, has induced patent infringement by selling its Qualcomm Snapdragon Chipset that "ties" Petitioner's patented CPUs, through advertising; with instructions; and with a threat to refuse licensing its cellular modems for smartphones if the OEMs (i.e., Samsung; Google) does not purchase the two combined components [Petitioner's patented CPUs and Qualcomm's patented cellular modems] that forms Qualcomm's Snapdragon Chipset/SoC/CPU/Processor [*FTC v. Qualcomm*, 411 F. Supp. 3d 658 (N.D. Cal. 2019)].

The District Court and the Appellate Court fail to realize it is a jury's responsibility to decide if Qualcomm, with knowledge, has offered to sell or has sold within the United States, Qualcomm's Snapdragon

6

Chipset that "ties" Petitioner's patented CPUs [*FTC v. Qualcomm*]; is liable as a contributory infringer for using the "chipset" in practicing Petitioner's patented process, constituting a material part of the Petitioner's smartphone invention, knowing the same to be especially made or especially adapted for use in an infringement of Petitioner's patent(s), and not a staple article or commodity of commerce suitable for substantial non infringing use [contributory infringement].

The District Court and the Appellate Court ignored the precedence set by the U.S. Court of Appeals for the Federal Circuit [vertical stare decisis] in *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367 (Fed. Cir. 2020); "[t]he Federal Circuit court emphasized the actual standard that "willfulness requires a jury [U.S. CONST. amend. VII] to find no more than deliberate or intentional infringement."

On November 4, 2010, Petitioner emailed Kate Lane, Strategic IP, Qualcomm Incorporated (E-mail: ▓▓▓▓▓▓▓▓▓▓); Direct: ▓▓▓▓▓▓▓▓), to inform Ms. Lane of certain patented technology (i.e., CMDC—Smartphone—device; central processing unit (CPU)), and asked if Qualcomm would be interested in entering into a licensing agreement. December 7, 2010, Petitioner mailed letters addressed to the attention of Qualcomm's Chairman & CEO Dr. Paul E. Jacobs and Qualcomm's EVP & President Derek Aberle, informing the Executives of the Patent Owner's (Golden) patented technology and asked if Qualcomm would be interested in entering into a licensing agreement. After 10 months, Ms. Lane responded back via e-mail on

7

September 29, 2011 with, "Hi Larry, I'm just checking in to see if this portfolio is still available for purchase. Please let me know. Thank you, Kate". On October 5, 2011, Ms. Lane responded via e-mail, "Thanks Larry, [c]an you please take a few moments to fill out the attached Patent Information Request form for this? Please let me know if you have any questions. Best regards, Kate". On October 11, 2011, the Patent Owner (Golden) returned via e-mail, the answered Patent Information Request form to Ms. Lane. The Patent Owner made several attempts to contact Ms. Lane via e-mail and by phone after that, but never heard back from Ms. Lane. This evidence allows the Petitioner to argue to a jury [U.S. CONST. amend. VII] that his patented technology was vital to Qualcomm's chipsets and smartphone products being able to compete.

The District Court and the Appellate Court fail to realize that regardless of whether the above evidence ultimately results in a willfulness finding, getting the evidence before the jury [U.S. CONST. amend. VII] may increase the likelihood that the jury [U.S. CONST. amend. VII] will find infringement and the asserted patents valid. Depriving the Petitioner, a Black and/or African American, of his right to present Qualcomm's alleged deliberate and intentional infringement to a jury, not only violates Petitioner's right granted under the Seventh Amendment, it also demonstrates and verifies Petitioner's claim of racism [systemic and structural racism].

————————◆————————

8

## REASONS FOR GRANTING THE WRIT

The District Court Judge overstepped and the Appellate Court concurred; that the issue-of-facts to be tried by a jury under the Seventh Amendment (Petitioner's alleged literal infringement, infringement under the doctrine of equivalents, induced infringement, contributory infringement, willful infringement, unjust enrichment, and illegal "tying" arrangements); is a Constitutional right currently unavailable to the Petitioner, a Black and/or African American, who has been entangled in a judicial system of systemic and/or structural racism, and Judges who has proven themselves to be judicially bias in favor of the White-owned Qualcomm corporation. Patent infringement is an issue-of-fact tried by a jury under the Seventh Amendment.

Qualcomm has eluded prosecution for its illegal behavior, actions, and activities for years. Qualcomm has taken advantage of a judicial system that is plagued with systemic and structural racism; and Judges who are judicially bias toward the Government agencies and large corporations. over that of a *Pro Se* Black and/or African American litigant.

In 2008, Qualcomm was one of seven White-owned companies awarded contracts by the Dept. of Homeland Security (DHS) in the DHS S&T *Cell-All* BAA07-10 initiative, as the prime contractor responsible for developing three of Petitioner's, a Black and/or African American, inventions [new, improved cell phone; CBRNE sensors; and smartphone CPUs]. As long as

9

Qualcomm was performing work for the Government under the *Cell-All* BAA07-10 initiative, Qualcomm was shielded by the DHS [Government] from infringement liability.

Title VI, 42 U.S.C. § 2000d et seq., was enacted as part of the landmark Civil Rights Act of 1964. It prohibits the DHS, who awarded seven White-owned companies' contracts, from discriminating against the Petitioner, on the basis of race, color or national origin, in programs and activities receiving federal financial assistance. As President Kennedy said in 1963:

> "Simple justice requires that public funds, to which all taxpayers of all races [colors, and national origins] contribute, not be spent in any fashion which encourages, entrenches, subsidizes or results in racial [color or national origin] discrimination."

In 2014, the Dept. of Homeland Security (DHS), who was protecting Qualcomm from patent infringement liability, and the Dept. of Justice (DOJ), who was representing Qualcomm in *Golden v. USA*, Case No. 13-307C; petition the Patent Trials and Appeals Board (PTAB) as "persons" not authorized to do so [*Return Mail v. U.S. Postal Service*], with three unqualified patent references that do not antedate Petitioner's patent(s). The PTAB [Government], being judicially bias for the benefit of the DHS and DOJ, decided to institute trial against Petitioner, a Black and/or African American, with the three unqualified references of Astrin, Breed, and Mostov. Qualcomm or any of the six other white-owned companies could have petitioned the

10

PTAB as "persons" authorized to do so. The DHS, DOJ, and PTAB have never before instituted an IPR against a White with unqualified patent references to invalidate their patents.

In 2019, the Ninth Circuit in *FTC v. Qualcomm*, reversed the opinion of the Northern District of California Court of a permanent injunction against Qualcomm. The injunction was issued to enjoin Qualcomm from charging and collecting a royalty on Petitioner's patented CPU Qualcomm "tied" to its cellular modem and sells as a Snapdragon chipset; and collecting a 5% running royalty on the price of Petitioner's patented handsets.

The DOJ and the DOE intervened at the Ninth Circuit against a sister agency, the *FTC*, and basically stated the only person harmed by Qualcomm's actions is a Black and/or African American patent owner. Qualcomm was made knowledgeable of the IP in 2008.

In 2019, Qualcomm was notified by the DOJ and the U.S. Court of Federal Claims (COFC) to appear in *Golden v. USA*, Case No. 13-307C, but Qualcomm failed to appear. The DOJ proceeded to drop everything the prime contractor Qualcomm in the DHS S&T *Cell-All* BAA07-10 initiative was responsible for developing [Petitioner's patented new, improved cell phone; CBRNE sensors; and CPUs] just to make the case a dispute between private parties.

The COFC Judge, knew or should have known, the COFC does not have jurisdiction to litigate disputes between private parties [the DOJ dropped Qualcomm

11

and the other six white-owned companies awarded
contracts under the DHS S&T *Cell-All* BAA07-10 ini-
tiative and narrowed the dispute between the private
parties of Golden and Apple, away from that of *Golden
v. The DHS*]. The Petitioner is not required to prove di-
rect infringement under 35 U.S.C. § 271(a) as a predi-
cate to proving direct infringement under 28 U.S.C.
§ 1498(a) *Zoltek V.*

The COFC [Government], being judicially bias in
favor of the DHS and DOJ, decided to blame the Peti-
tioner, a Black and/or African American, for failure to
prove direct infringement under 35 U.S.C. § 271(a) as
a predicate to proving direct infringement under 28
U.S.C. § 1498(a) (*Zoltek V*) and dismissed the case.

Between the years 2019 and 2022, Petitioner, a *Pro
Se* Black and/or African American, have demanded a
jury trial under the Seventh Amendment to litigate Pe-
titioner's alleged patent infringement claims against
Qualcomm, in the U.S. District Court for the District of
South Carolina and the U.S. District Court for the
Northern District of California; but, because of sys-
temic/structural racism and judicial bias in favor of
Qualcomm, Petitioner have been denied his Seventh
Amendment right to a trial by jury. Petitioner's patent
infringement claims against Qualcomm is an issue-of-
fact tried by a jury under the Seventh Amendment.

The Due Process Clause of the Fifth Amendment
generally prohibit federal governments [judges in-
cluded] from "depriving any person of [ ] property, with-
out due process of law." Due process, while not

12

"precisely defined," generally refers to a "fundamental fairness" requirement when the government [judges included] seeks to burden an individual's property interests. According to the Supreme Court, the "touchstone" of due process is "the protection of the individual against arbitrary action of government [judges]."

The Supreme Court has determined that the Due Process Clause contain both "substantive" and "procedural" components. Procedural due process is concerned with fairness of the procedures employed when the government seeks to deprive an individual of their property interests. The substantive component "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" The substantive due process inquiry revolves around deprivation of a person's property is justified.

This Court should grant the petition, because as it stands, the District Court and Appellate Court Judges have deprived Petitioner of his property without due process of law, and has denied Petitioner, a Black and/or African American, his Seventh Amendment right to a jury trial. Plus, the District Court and Appellate Court Judges lack the ability to be impartial and unbiased; and has violated certain codes of conduct for United States Judges:

> Canon 2A. "An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality,

13

temperament, or fitness to serve as a judge is impaired."

"[P]ublic manifestation by a judge of the judge's knowing approval of invidious discrimination on any basis gives the appearance of impropriety under Canon 2 and diminishes [] the integrity and impartiality of the judiciary, in violation of Canon 2A."

"The duty under Canon 2 to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary applies to all the judge's activities, including the discharge of the judge's adjudicative [] responsibilities. The duty to be respectful includes [] avoid [] behavior that could reasonably be interpreted as [], prejudice or bias."

Canon 3C. "Disqualification. (1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including []: (a) the judge has a personal bias or prejudice concerning a party . . . "

Canon 3B(6). "Public confidence in the integrity and impartiality of the judiciary is promoted when judges take appropriate action based on reliable information of likely misconduct. Appropriate action [] should be to prevent harm to those affected by the misconduct and to prevent recurrence."

As Justice Kennedy acknowledged in *Williams v. Pennsylvania*, impartiality in our justice system and the guarantees of due process are "necessary to the

14

public legitimacy of judicial pronouncements and to
the rule of law itself."

## I.    PATENT INFRINGEMENT IS AN ISSUE-OF-FACT TRIED BY A JURY UNDER THE SEVENTH AMENDMENT

Assuming the Petitioner, an African American inventor, has the constitutional right to sue Qualcomm, a White-owned company, in Federal Court; the question of whether Qualcomm's alleged infringing devices, methods or products are covered by the Petitioner's patent claims is a question of fact to be resolved by the jury. *See*, e.g., *Oakley, Inc. v. Int'l Tropic-Cal, Inc.*, 923 F.2d 167, 169 (Fed. Cir. 1991) ("Infringement is a question of fact"); *SRI v. Matsushita Electronic Corp.*, 775 F.2d 1107, 1125, 227 USPQ 577, ___ (Fed. Cir. 1985) ("It is settled that the question of infringement (literal or by equivalents) is factual").

Patent infringement is an issue-of-fact tried by a jury under the Seventh Amendment. No particular form for a jury trial demand is prescribed by California statute or court rule. (See Cal. Code Civ. Proc. § 631(a): "[t]he right to a trial by jury as declared by Section 16 of Article I of the California Constitution shall be preserved to the parties inviolate"; "[t]rial by jury is an inviolate right—not to be violated or broken—and shall be secured to all").

It has been over twenty-five years since the Court last assessed the scope of the constitutional right to a jury in a patent-infringement case. *Markman v.*

15

*Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). More remarkable, that decision has been its only direct pronouncement on the matter in the 230 years that patent infringement has been actionable [Act of Apr. 10, 1790, ch. 7, §§ 1, 4, 1 Stat. 109, 110, 111 (first federal patent act)].

The Seventh Amendment requires juries in "Suits at common law" [U.S. CONST. amend. VII]. Law courts always offered juries; and early juries tried nearly all infringement and validity issues.

Long-standing equity principles, according to the Supreme Court, dictated that "only under the most imperative circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equity principles."

Therefore, why was Petitioner, an African American inventor, denied his Seventh Amendment right to a jury trial, in a suit over property against Qualcomm, a white-owned company, "but for" the decision of the *Dred Scott* case is still promulgated as "rule of law"?

## II. QUALCOMM'S SMARTPHONE FOR SNAP-DRAGON INSIDERS LITERALLY MEETS EVERY LIMITATION OF PETITIONER'S PATENT CLAIMS

### Direct Patent Infringement

Qualcomm's alleged infringing device that Petitioner claims is literally infringing his patent claims,

16

is Qualcomm's Smartphone for Snapdragon Insiders. The Petitioner's literal infringement claim is a question of fact to be resolved by the jury.

If a jury finds that Qualcomm's alleged infringing devices, methods or products does not literally meet one (or more) limitation of the patent's claims, the jury then inquires whether Qualcomm's alleged infringing devices, methods or products incorporates an equivalent of the missing limitation, *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 38, 41 USPQ2d 1865, ___ (1997) ("The Federal Circuit held that it was for the jury to decide whether the accused process was equivalent to the claimed process . . . ")

Equivalency is established using a "three-way test" which sets out three questions of fact to be decided by a jury. In the case of Qualcomm's Snapdragon Chipset/SoC/CPU, the jury must determine whether the Qualcomm's Snapdragon Chipset/SoC/CPU, that "ties" Petitioner's patented central processing unit (CPU) for smartphones: 1) performs substantially the same function as the claimed element; 2) in substantially the same way; and, 3) to give substantially the same result, *Machine Co. v. Murphy*, 97 U.S. 120, 125, 24 L. Ed. 935 (1878) ("if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape").

For a finding of literal (direct) infringement, the jury must find that Qualcomm's alleged infringing devices, methods or products literally meets every

17

limitation of the patent's claims. As noted by a CAFC panel, "[t]he literal infringement determination, whether properly construed claims read onto an accused product or method, is a question of fact." *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 41 USPQ2d 1440 (Fed. Cir. 1997).

The phrase "each handset sold," as defined in *FTC v. Qualcomm*, 411 F. Supp. 3d 658 (N.D. Cal. 2019), carries the same meaning as "each *smartphone* of the OEM's (i.e., Samsung, Google, Apple, etc.) sold". The smartphone is the "genus" and the particular or specific brand/model (i.e., Qualcomm's Smartphone for Snapdragon Insiders; Apple's iPhone 15; Samsung's Galaxy S21; Google's Pixel 8), are the species of the smartphone.

The Federal Circuit on 09/08/2022, in *Larry Golden v. Google LLC*, Case No. 22-1267—"VACATED AND REMANDED" the relevant Case No. 22-1267 Document 15; back to the District Court "to be filed and request service of process". The Federal Circuit determined the complaint, "includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 [species] Smartphone [genus], to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" . . . "in a relatively straightforward manner" . . .

> "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 . . . It

18

[claim chart] attempts [ ] to map claim limita-
tions to infringing product features, and it
does so in a relatively straightforward man-
ner . . . [W]e conclude that the district court's
decision in the Google case is not correct with
respect to at least the three claims mapped
out in the claim chart. Mr. Golden has made
efforts to identify exactly how the accused
products meet the limitations of his claims in
this chart. . . ."

The CAFC ruled that a "smartphone", which is
the "genus" literally (directly) infringes "independent
claims from [Petitioner] U.S. Patent Nos. 10,163,287,
9,589,439, and 9,069,189" . . . because the claim chart
"map claim limitations to infringing product features,
and it does so in a relatively straightforward manner
. . .".

The specific patents at issue in this case for the
Petitioner's patented "new, improved upon, and useful
cell phone and/or smartphone" are U.S. Patents
9,589,439 ("the '439 patent") that includes eleven
(11) independent patent claims for the smartphone
(i.e., new, improved upon, and useful "cell phone");
9,096,189 ("the '189 patent") that includes nine (9) in-
dependent patent claims for the smartphone (i.e., new,
improved upon, and useful "cell phone"); 10,163,287
("the '287 patent") that includes six (6) independent
patent claims for the smartphone (i.e., new, improved
upon, and useful "cell phone"); and, 10,984,619 ("the
'619 patent") that includes two (2) independent patent
claims and eighteen (18) dependent patent claims for
the smartphone (i.e., new, improved upon, and useful

19

"cell phone"). That's a combined total of forty-six (46) independent and dependent patent claims for the Petitioner's patented smartphone (i.e., new, improved upon, and useful "cell phone").

In *Larry Golden v. Google LLC*, Case No. 22-1267, the Petitioner only used three (3) of the twenty-eight (28) independent patent claims Petitioner has asserted in this case against Qualcomm's making, using, offering for sell, and selling of the Qualcomm Smartphone for Snapdragon Insiders; and Qualcomm's *use* 35 U.S.C. § 271(a) of hundreds of brands/models of smartphones (i.e., handsets) to illegally collect a 5% running royalty on the price of each smartphone sold; without patent, license, or authorization from Petitioner to do so, goes against everything patent laws are written for. Why have 200 years of precedence supporting a Patent Owner's right to exclude others from "using" a patented invention without authorization, only to waive that right when the patents are owned by a Black and/or African American?

When Petitioner demonstrated to the District Court that Qualcomm's Smartphone for Snapdragon Insiders literally (directly) infringes "independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" . . . because the claim chart "map claim limitations to infringing product features, [ ] in a relatively straightforward manner . . . ", the District Court was bound by the doctrine of vertical stare decisis, to uphold the CAFC's decision.

20

Vertical stare decisis binds lower courts to follow strictly the decisions of higher courts within the same jurisdiction (e.g., the Northern District of California Court must follow the decisions of the U.S. Court of Appeals for the Federal Circuit). The Supreme Court defines vertical stare decisis as the doctrine, "a lower court must strictly follow the decision(s) handed down by a higher court within the same jurisdiction".

A court engages in vertical stare decisis when it applies precedent from a higher court. For example, if the Northern District of California Court in *Golden v. Qualcomm, Inc.* adhered to a previous ruling from the United States Court of Appeals for the Federal Circuit, in *Larry Golden v. Google LLC*, Case No. 22-1267, that would be vertical stare decisis.

Also, under the 35 U.S.C. § 271(a) clause for direct infringement: "whoever without authority makes, **_uses_**, offers to sell, or sells any patented invention, within the United States . . . infringes the patent." It was determined by the Federal Trade Commission (FTC) and the N.D. Cal. Court in 2019 that Qualcomm is **_using_** Petitioner's patented smartphone invention to collect a 5% running royalty on each handset [smartphone] sold, without patent, authorization, or license to do so. Clearly, Qualcomm has in the past and continues to do so today, use Petitioner's patented invention to collects tens of billions of dollars annually. Which means Qualcomm is liable for "unjustly enriching" itself.

21

The District Court and the Federal Circuit can't get pass the thought of a Black and/or African American invented the "smartphone" and has decided to adjudicate individual claim limitations such as "a lock capable of", "a vehicle that stops", or "a detection system for detecting". This case is about Petitioner's communicating, monitoring, detecting, and controlling (CMDC) device (i.e., smartphone; improved upon cell phone; handset; or communication device), and Qualcomm's alleged infringement of Petitioner's CMDC device.

## III. QUALCOMM ACTIVELY INDUCED THE INFRINGEMENT OF PETITIONER'S PATENTS AND CONTRIBUTED TO THE INFRINGEMENT WITH ITS SNAPDRAGON CHIPSETS/CPUS

**Indirect Patent Infringement**

Based on the statutes, there are two types of indirect patent infringement: induced patent infringement and contributory patent infringement.

> *Petitioner's indirect patent infringement claims against Qualcomm is an issue-of-fact tried by a jury under the Seventh Amendment. As the Supreme Court has observed, "[m]aintenance of the jury as a factfinding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Consistent with that approach, the Court has*

22

*construed the Seventh Amendment broadly to
protect the right to jury trial.*

Inducement of infringement holds Qualcomm responsible for inducing infringement of Petitioner's patent as an infringer. Liability for induced infringement is defined by 35 U.S.C. § 271(b): Whoever actively induces infringement of a patent shall be liable as an infringer.

Qualcomm has induced patent infringement by selling its Qualcomm Snapdragon Chipset that "ties" Petitioner's patented CPUs, through advertising; with instructions; and with a threat to refuse licensing its cellular modems for smartphones if the OEMs (i.e., Samsung; Google) does not purchase the two combined components [Petitioner's CPUs and Qualcomm's cellular modems] that forms Qualcomm's Snapdragon Chipset/CPU. See *FTC v. Qualcomm*, 411 F. Supp. 3d 658 (N.D. Cal. 2019). The instructions when performed by a user of the product lead to direct patent infringement.

Petitioner's patented CPU (Qualcomm's Snapdragon chipset) is considered the "brains" of the smartphone/handset and is capable of carrying out the functional and operational instructions of the smartphone/handset. Qualcomm knew, or was willfully blind, that the "Snapdragon chipsets (CPU)" products are configured to infringe Petitioner's '189, '439, '287, and '619 Patents upon normal use.

Contributory patent infringement defines a means by which Qualcomm is held liable for patent infringement.

23

This does not require Qualcomm to actually engage in the patent infringement. It is found when Qualcomm sells its Qualcomm Snapdragon Chipset component to be used in Petitioner's patented CMDC product or process.

Qualcomm's liability for contributory patent infringement is defined by 35 U.S.C. § 271(c): "Whoever offers to sell or sells within the United States [] a component of [] a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non infringing use, shall be liable as a contributory infringer."

Additional requirements for induced and contributory infringement includes proof that Qualcomm knew of Petitioner's patent, and acted, encouraged, instructed, or threaten, in a manner that infringed Petitioner's patent, and knew or should have known that Qualcomm's acts would cause infringement of Petitioner's patent(s). Must also prove that Qualcomm had specific intent that its actions would lead to the patent infringement.

Qualcomm's knowledge of Petitioner's patents, and intent to directly and indirectly infringe Petitioner's patents, goes back to at least year 2008:

Petitioner sent President Bush, VP Cheney, and U.S. Senators Holland, DeMint, and Graham, three economic stimulus packages (SafeRack; V-Tection;

24

ATPG) as solutions to mitigating terrorism acts and stimulate the economy that included the technology rational for implementing each stimulus package.

In support of the strategies and for implementation, President Bush, VP Cheney, and U.S. Senators Holland, DeMint, and Graham, sent the three economic stimulus packages (SafeRack; V-Tection; ATPG) over to the Department of Homeland Security (DHS).

Following Petitioner's "product grouping" strategies, the DHS issued the DHS S&T BAA07-10 *Cell-All Ubiquitous Biological and Sensing Solicitation* with a request for proposal on developing Petitioner's new, improved upon, and useful patented cell phone. Petitioner submitted a proposal for the BAA07-10 *Cell-All* solicitation.

In 2008, the DHS awarded the white-owned company Qualcomm the prime contract, alone with six other white-owned companies, and a government agency (i.e., Synkera, Rheivision, SeaCoast, NASA, Qualcomm, Apple, Samsung, and LG) contracts to develop and commercialize Petitioner's new, improved upon, and useful patented cell phone.

The Petitioner, a Black and/or African American, who introduced the technology rational and specifications, and who hold several patents for the new, improved upon, and useful patented cell phone was not awarded a contract; nor considered for a patent licensing agreement.

25

> "42 U.S.C. § 1981 prohibits race discrimination in the making and enforcing of contracts. It prohibits racial discrimination against whites as well as nonwhites. See *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976) (Section 1981 was intended to "proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race"). In *Runyon v. McCrary*, 427 U.S. 160 (1976), the Supreme Court held that Section 1981 regulated private conduct as well as governmental action."

With the knowledge of Petitioner's intellectual property, it was always Qualcomm's intention to directly infringed Petitioner's patents while performing work for the Government, and with the protection of the Government to avoid infringement liability.

> "[A] 'form factor phone" developed by Qualcomm . . . DHS S&T secured Cooperative Research and Development Agreements with four primary cell phone manufacturers—Qualcomm, LG, Apple, and Samsung—with the objective of accelerating the "commercialization of technology developed for government purposes" . . . as a Qualcomm representative argued: "Let's take advantage of the 300 million cell phones that are out there today. They're always with us" (Hoffman, 2011) . . . Qualcomm's role has been to develop a smartphone app and the associated network software for processing data. Smartphone users can download the app from Google Play and, eventually, from Apple's

26

iTunes store, so Cell-All will be operational on all phones using either Google's Android or Apple's iPhone operating systems." *Crowdsourcing urban surveillance: The development of homeland security markets for environmental sensor networks*. Torin Monahan Jennifer T. Mokos.

Petitioner alleged in the District Court that the copying and selling of Qualcomm's products [Qualcomm's Smartphone for Snapdragon Insiders and Qualcomm's Snapdragon Chipset-CPU's] that are covered in Petitioner patents, was made with actual knowledge of the patent(s), and intent to do so, satisfy the knowledge requirement for willful infringement.

In *Ansell Healthcare Prod. LLC v. Reckitt Benckiser LLC*, No. 15-CV-915-RGA, 2018 WL 620968 (D. Del. Jan. 30, 2018), "The court noted that, if a defendant was willfully blind to a patent covering a product that it copied and then sold, it "could satisfy the knowledge requirement for willful infringement, because the defendant's willful blindness demonstrates the same level of culpability as if the defendant copied the product with actual knowledge of the patent."

Because of systemic and structural racism; and because of judicial bias, the Petitioner [the Black and/or African American denied an award or license in the *Cell-All* initiative] was never allowed to present the above issues-of-fact to a jury of Qualcomm's knowledge and intent.

27

Petitioner demanded a jury because literal infringement, infringement under the doctrine of equivalents, induced infringement, contributory infringement, and willful infringement are all issues-of fact tried by a jury under the Seventh Amendment. The jury trial has long been the foundation of the American civil justice system and is deeply embedded in American culture.

Petitioner's induced and contributory patent infringement claims against Qualcomm are issues-offact tried by a jury under the Seventh Amendment. The jury trial has long been the foundation of the American civil justice system and is deeply embedded in American culture. As the Supreme Court has observed, "[m]aintenance of the jury as a factfinding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Consistent with that approach, the Court has construed the Seventh Amendment broadly to protect the right to jury trial.

## IV. THE NORTHERN DISTRICT OF CALIFORNIA COURT AND THE FEDERAL TRADE COMMISSION IN *FTC V. QUALCOMM*, 411 F. SUPP. 3d 658 (N.D. CAL. 2019), HAS ALREADY INVESTIGATED AND DISCOVERED QUALCOMM DOES NOT HAVE THE PATENT RIGHTS TO "USE" PETITIONER'S PATENTED SMARTPHONE INVENTION TO COLLECT BILLIONS IN ROYALTIES

Petitioner presented the district court's findings in *FTC v. Qualcomm*, 411 F. Supp. 3d 658 (N.D. Cal.

28

2019) as **evidence** Qualcomm was unjustly enriching
itself by collecting royalties of 5% on each handset (i.e.,
new, improved upon, or useful cell phone) sold. District
Judge Lucy H. Koh concluded Qualcomm is being un-
justly enriched from its anticompetitive practices:

> "Qualcomm stopped licensing rival modem
> chip suppliers and instead started licensing
> only OEMs (i.e., Samsung, Google, etc.) at a
> *5% running royalty on the price of each hand-
> set sold*. These licenses are called Subscriber
> Unit License Agreements ("SULA")"

> "Specifically, Qualcomm charges a 5% run-
> ning royalty on handset sales for a license to
> Qualcomm's CDMA patent portfolio. Qual-
> comm's 5% royalty rate on the price of each
> phone sold is a species of unfair competition.
> The Federal Trade Commission Act bans "un-
> fair methods of competition" and "unfair or
> deceptive acts or practices."

>> "Qualcomm has capped the maximum
>> royalty base or net selling price of the
>> handset at $400. Tr. at 1979:19-23; see
>> also JX0122-010 (royalty base cap in
>> SULA between Samsung and Qual-
>> comm). In some SULAs, Qualcomm
>> charges an upfront fee in addition to the
>> running royalty rate on handset sales.
>> See JX0042-011"

>> "Under the 2004 SULA Amendment, LGE
>> paid Qualcomm a 5% running royalty on
>> handsets containing Qualcomm modem
>> chips and a 5.75% running royalty on

29

handsets containing non-Qualcomm mo-
dem chips" . . . "Under the May 2012 Sony
Interim License, Sony agreed to provi-
sionally pay Qualcomm a 5% royalty on
CDMA handsets" . . . "The 2014 SULA
requires Huawei to pay a 5% running roy-
alty rate on devices containing WCDMA
technology and a 3.5% running royalty
rate on devices containing LTE technol-
ogy . . . "

This evidence was never disputed by Qualcomm
and the evidence was never rejected at the Ninth Cir-
cuit. See id. ¶¶ 76-78; cf. *FTC v. Qualcomm Inc.*, 969
F.3d 974, 1001-1002 (9th Cir. 2020) (finding no anti-
trust violation based on "no license, no chips"). Qual-
comm's 5% running royalty on the price of each
handset sold, and Qualcomm's "no license, no chips"
policies are separate issues that harms the Patent Sys-
tem and Petitioner; not competitors.

Qualcomm is being unjustly enriched for charging
a 5% royalty rate per the price of the phone, i.e., Peti-
tioner's CMDC device; handset; smartphone, etc. Peti-
tioner has the right to exclude Qualcomm from "using"
Petitioner's CMDC devices—handsets to unjustly en-
rich itself.

Petitioner is entitled to stop Qualcomm's "use" of
Petitioner's inventions to generate revenue (5% royalty
on each handset sold) by seeking a legal injunction in
Federal Court.

30

The Trial Court further restrains Petitioner from possibly collecting damages by refusing Petitioner his Seventh Amendment right to a trial-by-jury.

Under patent law Petitioner can collect damages for Qualcomm's unauthorized and illegal "use" of Petitioner's patented CMDC (smartphone) devices.

Also, the described antitrust injury to Petitioner is of a type that the antitrust laws were intended to prevent; and the Petitioner's injury flows from that which makes Qualcomm's acts unlawful. The *FTC* bans "unfair or deceptive acts or practices."

It has been the Petitioner's experience, as an African American inventor who own patents, and the right to exclude others from making, using, offering for sell, and selling Petitioner's patented inventions, and the right to sue infringers; that the experience is no different than someone who decides to sue without owning patents.

Petitioner owns the patents rights for the smartphone. The specific patents at issue in this case for the Petitioner's patented "new, improved upon, and useful cell phone and smartphone" are U.S. Patents 9,589,439 ("the '439 patent") that includes eleven (11) independent patent claims for the smartphone (i.e., new, improved upon, and useful "cell phone"); 9,096,189 ("the '189 patent") that includes nine (9) independent patent claims for the smartphone (i.e., new, improved upon, and useful "cell phone"); 10,163,287 ("the '287 patent") that includes six (6) independent patent claims for the smartphone (i.e., new, improved

31

upon, and useful "cell phone"); and, 10,984,619 ("the
'619 patent") that includes two (2) independent patent
claims and eighteen (18) dependent patent claims for
the smartphone (i.e., new, improved upon, and useful
"cell phone"). That's a combined total of forty-six (46)
independent and dependent patent claims for Peti-
tioner's patented smartphone (i.e., new, improved
upon, and useful "cell phone").

How is it possible the District Court and Appellate
Court can ignore Petitioner's forty-six (46) independ-
ent and dependent patent claims for Petitioner's pa-
tented smartphone and allow Qualcomm to collect tens
of billions in royalties each year on the sale of millions
of smartphones that Qualcomm does not have the pa-
tent rights on; "But-For" Qualcomm is a White-owned
company and the Petitioner is a Black and/or African
American?

On March 23, 2020, the Supreme Court of the
United States, *in Comcast Corp. v. National Associa-
tion of African-American Owned Media*, ruled that a
plaintiff who alleges race discrimination [ ] has the [ ]
burden of showing that race was a [B]ut-for cause of [ ]
injury.

32

## V.    THE U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT IN *GOLDEN V. GOOGLE*, CASE NO. 22-1267, HAS ALREADY DETERMINED A "SMARTPHONE" LITERALLY INFRINGES CERTAIN INDEPENDENT CLAIMS OF PETITIONER'S PATENTS; THEREFORE, THE BURDEN IS ON QUALCOMM TO SHOW ITS SMARTPHONE AND THE THOUSANDS OF SMARTPHONE MODELS QUALCOMM COLLECTS A 5% RUNNING ROYALTY FROM DOES NOT INFRINGE THE SAME INDEPENDENT CLAIMS OF PETITIONER'S PATENTS

The Federal Circuit on 09/08/2022, in *Larry Golden v. Google LLC*, Case No. 22-1267—"VACATED AND REMANDED" the relevant Case No. 22-1267 Document 15; back to the District Court "to be filed and request service of process". The Federal Circuit determined the complaint, "includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 [species] Smartphone [genus], to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" . . . "in a relatively straightforward manner" . . .

> "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 . . . It [claim chart] attempts [] to map claim limitations to infringing product features, and it

33

does so in a relatively straightforward man-
ner . . . [W]e conclude that the district court's
decision in the Google case is not correct with
respect to at least the three claims mapped
out in the claim chart. Mr. Golden has made
efforts to identify exactly how the accused
products meet the limitations of his claims in
this chart. . . ."

Under 35 U.S.C. § 282: "[a] patent shall be pre-
sumed valid. Each claim of a patent (whether in inde-
pendent, dependent, or multiple dependent form) shall
be presumed valid independently of the validity of
other claims; dependent or multiple dependent claims
shall be presumed valid even though dependent upon
an invalid claim. The burden of establishing invalidity
of a patent or any claim thereof shall rest on the party
asserting such invalidity".

The Petitioner has asserted forty-six (46) *pre-
sumed valid* independent and dependent patent claims
for the Petitioner's patented smartphone (i.e., new, im-
proved upon, and useful "cell phone") invention and
twenty-three (23) *presumed valid* independent and de-
pendent patent claims for a "central processing unit
(CPU)" designed for Petitioner's smartphone inven-
tion.

How is it possible the District Court and Appellate
Court can ignore Petitioner's forty-six (46) independ-
ent and dependent patent claims for Petitioner's pa-
tented smartphone and allow Qualcomm to collect tens
of billions in royalties each year on the sale of millions
of smartphones that Qualcomm does not have the

34

patent rights on, without compelling Qualcomm to present evidence its smartphone and the smartphone brand/models Qualcomm collects a running 5% royalty from does not infringe Petitioner's patents; "But-For" Qualcomm is a White-owned company and the Petitioner is a Black and/or African American?

On March 23, 2020, the Supreme Court of the United States, in *Comcast Corp. v. National Association of African-American Owned Media*, ruled that a plaintiff who alleges race discrimination under 42 U.S.C. § 1981 must plead and has the ultimate burden of showing that race was a [B]ut-for cause of the plaintiff's injury, and that burden remains constant over the life of the lawsuit.

## VI. SYSTEMIC/STRUCTURAL RACISM AND JUDICIAL BIAS AGAINST PETITIONER, A BLACK AND/OR AFRICAN AMERICAN LITIGANT, IN THE DISTRICT AND APPELLATE COURTS

The Supreme Court must deliver justice in this case, in a manner that inspires public trust and confidence. The Supreme Court must inform the District Court and the Appellate Court that all individuals must be treated fairly and impartially in every interaction with the court system. To achieve public trust and confidence, the existence of systemic racism in Petitioner's case against Qualcomm must be acknowledged.

35

Specifically, the Supreme Court must recognize that the Petitioner, a Black and/or African American, who have contact with the legal system through the various Courts, have often not been treated equitably or with the same dignity and respect as Petitioner's white counterparts.

Systemic and structural racism are forms of racism that are pervasively and deeply embedded in systems, laws, and entrenched practices and beliefs that produce, condone, and perpetuate widespread unfair treatment and oppression of Blacks and/or African Americans. They reflect both ongoing and historical injustices.

An example of systemic racism and judicial bias: As an African American inventor who has in the past, and currently is, suing White-owned companies like Qualcomm for infringement, the District and Appellant Courts opinions are the same as if someone, anyone, tried to sue without a patent. Examples: 1- the case is frivolous; 2- did not state a claim for relief; 3- lack subject matter jurisdiction; 4- we are not persuaded; 5- did not state enough facts; 6- page-count is to high; 7- barred by preclusion; 8- barred by the Kessler doctrine; 9- time-barred because of statute of limitation; 10- don't deserve oral argument; 11- have not stated an injury; 12- cannot claim patent infringement as a takings; 13- cannot claim CPUs as CBRNE sensors; 14- cannot identify sensors inside the device; 15- cannot prove infringement; and, 16- don't deserve a chance to amend.

36

An example of judicial bias against Petitioner as a Black and/or African American: Under the DHS *Cell-All* initiative, Qualcomm entered into a contract with the DHS ["the Government"] to assemble and commercialize Petitioner's new, improved upon, and useful cell phone devices and CPUs, alone with NASA, and six other White-owned companies [Synkera, SeaCoast, Apple, Samsung, LG, and Rhevision], who was tasked with developing and manufacturing the CBRNE sensors and detectors.

The CFC Court knew, or should have known, that the *"Cell-All"* cell phone sensing device could never be "suitable for use" without the inclusion of the CBRNE sensors of NASA, Synkera, SeaCoast, and Rhevision, and CPUs of Qualcomm.

The Federal Circuit in *FastShip, LLC v. U.S.*, "[W]e interpret "manufactured" in § 1498 [ ] such that a product is "manufactured" when it is made to include each limitation of the thing invented and is therefore "suitable for use". Petitioner's CMDC cell phone sensing device limitations requiring CBR sensors and CPUs was rejected by the CFC Court as enhancing or enlarging the case, and was thereby dismissed.

The prime contractor in the case Qualcomm responsible for providing three of the four major components of the new and improved cell phone, alone with all the other contractors with the exception of Apple, was dropped from the case.

An example of judicial bias against Petitioner as a *Pro Se* litigant: Mr. Anthony Johnson was a *Pro Se*

37

litigant who experienced judicial bias in very much the same way as Petitioner. The major difference is Mr. Johnson was at least granted a jury trial. *See Storix, Inc. v. Anthony Johnson*—**A Case Study-Judicial Bias**. Topics: "Judicial Abuse Against Pro Se Civil Litigants"; "Bias Against Pro Se Litigants"; "Judicial Abuse is Pervasive and Unchecked"; "The More Clear the Judicial Bias, the More Likely the Decisions Will Be Upheld on Appeal"; "The Most Abused Civil Litigant in U.S. History that Multiple Courts Will Stop at Nothing to Keep Quiet". https://www.judicial-abuse.com/pro-se-bias

Mr. Johnson's legal research, pleadings and arguments far surpassed that of the prestigious attorneys who opposed him. And that's why you will never see Mr. Johnson's arguments in any of the orders and opinions of the courts. The judges simply would not allow a self-represented plaintiff to win against their favored attorneys; but they concealed their judicial bias in ambiguous rulings that left out anything that would show the absurdity of their decisions.

Mr. Johnson's case disproves the common misconception that everyone who complains about a biased judge is just a disgruntled loser. It took a pro se litigant to expose the rampant bias of civil court judges, and no one, other than the Petitioner, a Black and/or African American, has endured such clear legal abuse by so many judges, that has lasted so long against the Big-Law attorneys they support.

38

In July of this year 2023, Mr. Johnson committed suicide. While it cannot be proven at this point, it is the belief of Petitioner that the ex-employees; the trial court judges; and, several courts of appeals caused the decision of Mr. Johnson to end his life. Mr. Johnson was tasked with defending himself against a bunch of evil people and a stable of corrupted Judges. "Ditto".

## VII.  THE FIFTH AMENDMENT "DUE PRO-CESS" CLAUSE OF THE UNITED STATES CONSTITUTION

The Due Process Clause of the Fifth Amendment generally prohibit federal governments [judges included] from "depriving any person of [intellectual] property, without due process of law." Due process, while not "precisely defined," generally refers to a "fundamental fairness" requirement when the government [judges included] seeks to burden an individual's property interests. According to the Supreme Court, the "touchstone" of due process is "the protection of the individual against arbitrary action of government [judges]."

Without due process of law and without researching the facts in *Golden v. USA* (13-307C) to discover it was the DHS who awarded in 2008, seven White-owned companies and a government agency [Qualcomm, Synkera, Apple, Rhevision, SeaCoast, NASA, Samsung, LG] contracts to develop and commercialize the intellectual property of the Petitioner; the Black and/or African American, who submitted a proposal in

39

response to the DHS S&T BAA07-10 solicitation; Justice Breyer in *Return Mail v. U.S. Postal Service* dissented on behalf of the DHS and the prime contractor Qualcomm with comments that placed Petitioner's life and the lives of Petitioner's family in danger.

> "Justice Breyer dissents in *Return Mail, Inc. v. United States Postal Service et al*. 587 U.S. ___ (2019) When, for example, the Department of Homeland Security recently instituted a research initiative to equip cell phones with hazardous-materials sensors in order to mitigate the risk of terrorist attacks, it faced an infringement lawsuit that threatened to interfere with the project. *See Golden v. United States*, 129 Fed. Cl. 630 (2016); Brief for Prof. Tejas N. Narechania as Amicus Curiae 9."

What if, an American patriot who believes Petitioner is working for terrorist and is placing him and his family lives in danger, may take it upon himself to end the threat that interferes with the DHS initiative to mitigate terrorist attacks.

The District court in this current case, *Golden v. Qualcomm*, participated in the takings of Petitioner's property without *due process* of law, by admitting the Court never adjudicated Petitioner's case on the merits; the Appellate court erred in affirming the lower court's dismissal.

In *Larry Golden v. Qualcomm, Inc*. "Order Granting Motion to Dismiss"; Case 4:22-cv-03283-HSG Document 49 Filed 03/15/23 Page 3 of 6: "[b]ecause Golden

40

neither breaks his allegations down into counts, ***nor provides a numbering system*** . . . [t]he Court's challenge here is compounded because Plaintiff has attached nearly 1,200 pages of documents to the complaint" . . . "[t]he ***Court need not, and will not, wade through the attachments*** . . . ". Petitioner's patent infringement claims against Qualcomm is an issue-of-fact tried by a jury under the Seventh Amendment. The attachments show evidence of Qualcomm's knowledge, willful infringement, direct and indirect infringement.

The District Court, by its own admission, never adjudicated the case on the merits. The Court immediately ruled in Qualcomm's favor without *due process* of law. How is it possible "But For" Qualcomm is a White-owned company and the Petitioner is a Black and/or African American.

## VIII. THE DISTRICT COURT DENIED PETITIONER HIS SEVENTH AMENDMENT RIGHT TO A TRIAL BY JURY

This Court has enough facts to reverse the lower Court's decision to deny Petitioner his Seventh Amendment right to a jury, and Qualcomm's infringement liability. Petitioner's patent infringement claims against Qualcomm are issues-of-fact to be tried by a jury under the Seventh Amendment.

If this Court decides to ignore Petitioner's claim that Qualcomm is unjustly enriching itself when Qualcomm collects 5% running royalties on the price of each

41

of Petitioner's patented new, improved upon, and use-
ful cell phone; smartphone, and *NOT* order a trial, the
Court is literally setting new precedence that the Con-
stitutional provision which states "anyone who makes,
uses, offers for sell, or sells patented others, without
authorization, is liable for direct infringement as de-
fined by 35 U.S.C. § 271(a), induced infringement as
defined by 35 U.S.C. § 271(b), and, contributory in-
fringement as defined by 35 U.S.C. § 271(c)" is no
longer valid and any company who wants to "use" an-
other's patented invention to collect a running royalty
on the price of the invention, is free to do so without
fear of being accused of infringing.

If this Court decides to ignore Petitioner's patents
and patent claims asserted in this case, the Court is
substantiating a "loop hole" for invalidating patents
and patent claims without claim construction or a
*Markman hearing*. The "loop hole" is: by denying or
avoiding trial at all cost, Qualcomm does not have to
prove the patents and patent claims are invalid,
thereby invalidating the patents and patent claims
and rendering them worthless against Qualcomm.

The Constitutional provision for invalidating pa-
tents and patent claims is no longer applicable or rele-
vant. The Supreme Court in *Microsoft v. i4i* affirmed
that 35 U.S.C. § 282 of the Patent Act requires an inva-
lidity defense to be proved by clear and convincing ev-
idence.

The primary purpose of the Seventh Amendment
is to preserve the common law distinction between the

42

province of the court and that of the jury, whereby, in the absence of express or implied consent to the contrary, issues of law are resolved by the court and issues of fact are to be determined by the jury under appropriate instructions by the court. *Baltimore & Carolina Line v. Redman*, 295 U.S. 654, 657 (1935); *Walker v. New Mexico & So. Pac. R.R.*, 165 U.S. 593, 596 (1897); *Gasoline Products Co. v. Champlin Ref. Co.*, 283 U.S. 494, 497–99 (1931); *Dimick v. Schiedt*, 293 U.S. 474, 476, 485–86 (1935).

————◆————

## CONCLUSION

For the foregoing reasons, the Court should grant this petition.

Respectfully submitted,

LARRY GOLDEN, Petitioner, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
(864) 288-5605
atpg-tech@charter.net



2311 Douglas Street
Omaha, Nebraska 68102-1214

1-800-225-6964
(402) 342-2831
Fax: (402) 342-4850

E-Mail Address:
contact@cocklelegalbriefs.com

Web Site
www.cocklelegalbriefs.com

No. _____

LARRY GOLDEN,
Petitioner,
v.
QUALCOMM INC.,
Respondent.

**CERTIFICATE OF COMPLIANCE**

As required by Supreme Court Rule 33.1(h), I certify that the PETITION FOR WRIT OF CERTIORARI in the above entitled case complies with the typeface requirement of Supreme Court Rule 33.1(b), being prepared in New Century Schoolbook 12 point for the text and 10 point for the footnotes, and this brief contains 8997 words, excluding the parts that are exempted by Supreme Court Rule 33.1(d), as needed.

Subscribed and sworn to before me this 5th day of January, 2024.
I am duly authorized under the laws of the State of Nebraska to administer oaths.

State of Nebraska – General Notary
ANDREW COCKLE
My Commission Expires
April 9, 2026

Andrew H. Cockle
Notary Public

Renee J. Goss
Affiant

44630

i

APPENDIX TABLE OF CONTENTS

Page

Opinion: United States Court of Appeals for the
  Federal Circuit (CAFC) (10/10/2023)............... App. 1

Order: Granting Motion to Dismiss; United
  States District Court for the Northern District
  of California (03/15/2023)................................ App. 11

Order: Denying Motion for Reconsideration;
  United States District Court for the North-
  ern District of California (04/06/2023)........ App. 21

Order: Denying *En Banc* Rehearing; United
  States Court of Appeals for the Federal Cir-
  cuit (CAFC) (12/06/2023) ............................... App. 24

App. 1

NOTE:   This disposition is nonprecedential.

**United States Court of Appeals
for the Federal Circuit**

———————————

**LARRY GOLDEN,**
*Plaintiff-Appellant*

**v.**

**QUALCOMM INCORPORATED,**
*Defendant-Appellee*

———————————

2023-1818

———————————

Appeal from the United States District Court for the Northern District of California in No. 4:22-cv-03283-HSG, Judge Haywood S. Gilliam, Jr.

———————————

Decided:   October 10, 2023

———————————

LARRY GOLDEN, Greenville, SC, pro se.

JOHN ALLEN YATES, Patterson & Sheridan LLP, Houston, TX, for defendant-appellee. Also represented by KYRIE CAMERON.

———————————

Before LOURIE, BRYSON, and CHEN, *Circuit Judges.*

PER CURIAM.

Larry Golden appeals from an order of the United States District Court for the Northern District of California dismissing his antitrust, patent infringement,

App. 2

and unjust enrichment claims. *Golden v. Qualcomm, Inc.*, No. 22-CV-03283, 2023 WL 2530857 (N.D. Cal. Mar. 15, 2023) ("*Decision*"). For the following reasons, we *affirm*.

BACKGROUND

Golden owns various patents directed to systems for locking, unlocking, or disabling a lock upon the detection of chemical, radiological, or biological hazards. The specific patents at issue in this case are U.S. Patents 9,589,439 ("the '439 patent"), 9,096,189 ("the '189 patent"), 10,163,287 ("the '287 patent"), 10,984,619 ("the '619 patent"). Appellant's Br. at 2. On several previous occasions, Golden has unsuccessfully asserted infringement of those patents against other defendants. *See*, *e.g.*, *Golden v. Apple Inc.*, No. 2023-1161, 2023 WL 3400595 (Fed. Cir. May 12, 2023); *Golden v. Intel Corp.*, No. 2023-1257, 2023 WL 3262948 (Fed. Cir. May 5, 2023); *Golden v. United States*, No. 2022-1196, 2022 WL 4103287 (Fed. Cir. Sept. 8, 2022).

Golden filed the present suit against Qualcomm Inc. ("Qualcomm") on June 6, 2022. The district court interpreted the complaint, which included nearly 1,200 pages of attachments, as alleging (1) patent infringement, (2) antitrust violations, and (3) unjust enrichment. *Decision* at *2. After Qualcomm moved to dismiss Golden's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court granted the motion without

App. 3

leave to amend. *Decision* at *4. Golden appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

This court applies the law of the regional circuit when reviewing a motion to dismiss. *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012). The Ninth Circuit reviews challenges to a dismissal for failure to state a claim under Rule 12(b)(6) *de novo. Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 595 (9th Cir. 2004).

Rule 12(b)(6) requires "well-pleaded facts, not legal conclusions, that plausibly give rise to an entitlement to relief." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Because Golden appeals the district court's dismissal as to each of his (1) patent infringement, (2) antitrust violation, and (3) unjust enrichment claims, we discuss each issue in turn.

I

Regarding patent infringement, although a plaintiff "need not prove its case at the pleading stage" and "is not required to plead infringement on an element-by-element basis," it "cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding

App. 4

that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352–53 (Fed. Cir. 2021) (internal citations and quotations omitted).

The district court here found that Golden failed to adequately plead (1) direct infringement, (2) contributory infringement, or (3) induced infringement. *Decision* at *3.

Concerning direct infringement, the district court faulted Golden for failing to explain what Qualcomm product supposedly infringed the asserted patents, or how. *Id.* Although the complaint did include two claim charts, the district court found those irrelevant as they only covered products produced by two non-parties, GM and Samsung, not Qualcomm. *Id.*

On appeal, Golden argues that he "illustrates how Qualcomm is infringing Plaintiff's patented . . . devices" and provides several technical specification tables and figures relating to Qualcomm's "Snapdragon" chipset. Appellant's Br. at 11–26. Qualcomm responds that Golden added new factual allegations in his opposition and reply brief at the district court, as well as in his opening brief on appeal, that were not included in his district court complaint. Appellee's Br. at 23. Qualcomm further argues that even if those belated arguments are considered, they still do not state a plausible direct infringement claim. *Id.*

We agree with the district court that Golden's complaint failed to sufficiently plead a claim for direct infringement. It failed to clearly identify which specific claims of the asserted patents are being infringed.

App. 5

Furthermore, Golden's complaint failed to clearly identify which Qualcomm products infringe the asserted patents. To the extent that references in the complaint can be read to imply that Qualcomm's "phone for Snapdragon Insiders" and/or "Snapdragon Ride Platform" are the alleged infringing products, S.A. 40–42, the complaint did not adequately explain *how* those products infringe the asserted patent claims. As the district court noted, Golden included two claim charts in his complaint. *Decision* at *3. However, these claim charts only reference products made by two non-parties, GM and Samsung, not products made by Qualcomm, the accused infringer in this case.

Golden argues that the claim charts in this complaint are enough to adequately plead patent infringement because they "mirror" a claim chart presented in a previous case, *Golden v. Apple Inc.*, No. 2022-1229, 2022 WL 4103285 (Fed. Cir. Sept. 8, 2022). Appellant's Br. at 2. However, Golden's complaint contains no such reliance on that previous claim chart, neither directly nor through incorporation by reference. Such a reference on appeal is improper, as a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Moreover, *Golden v. Apple Inc.* provides no help in this context because this court explicitly stated there that "[w]e express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous." *Golden v. Apple Inc.*, No. 2022-1229, 2022 WL 4103285, at *2 (Fed. Cir. Sept. 8, 2022). We made clear that "the district court should allow the

App. 6

complaint to be filed and request service of process;" however, "[o]ur decision [did] not preclude subsequent motions to dismiss by the defendant for failure to state a claim." *Id.* We thus agree with the district court that Golden failed to adequately plead direct infringement by Qualcomm or its customers, as his complaint does not include allegations beyond the identity of the defendant, implied references to the alleged infringing devices, and the alleged infringed-upon patents.[1] *Decision* at *2–3; *see also Golden v. Apple*, No. 20-cv-04353, 2021 WL 5074739 at *2, *aff'd as to that holding*, No. 22-1229, 2022 WL 4103285 (Fed. Cir. Sept. 8, 2022).

Because Golden has failed to adequately plead direct infringement by Qualcomm or its customers in this case, his complaint also fails to sufficiently plead contributory or induced infringement. *See Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972). We thus agree with the district court that "[Golden] fails to plausibly or adequately plead patent infringement." *Decision* at *2.

---

[1] For the first time in this case, in a supplemental appendix attached to his Appellant's Reply Brief, Golden included a claim chart mapping features of Qualcomm's Snapdragon phone to limitations in specific claims of the asserted patents. Appellant's Reply Brief Appendix at 85-92. Such a submission is untimely and will not be considered. A complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 821 (Fed. Cir. 1992) ("We generally will not consider issues that were not presented in the district court." (internal citations omitted)).

App. 7

## II

A party seeking to bring a private antitrust action must establish antitrust injury. *American Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 & n.3 (9th Cir. 1999); *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110 n.5 (1986). To plead antitrust injury, a party must allege that it suffered the suffered the type of injury that antitrust laws were designed to prevent. *American Ad Mgmt.*, 190 F.3d at 1055, 1057. The Supreme Court has identified five factors for determining whether a plaintiff who has borne an injury has antitrust standing: (1) the nature of the plaintiff's alleged injury; that is, whether or not it was the type the antitrust laws were intended to forestall, (2) the directness of the injury, (3) the speculative measure of the harm, (4) the risk of duplicative recovery, and (5) the complexity in apportioning damages. *Id.* at 1054 (summarizing the factors identified in *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983)). Although no single factor is dispositive, *id.* at 1055 (citing *R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 146 (9th Cir.1989) (en banc)), the injured party must "be a participant in the same market as the alleged malefactors," *Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985) (citing *Associated Gen. Contractors*, 459 U.S. at 538–39).

The district court found Golden's antitrust claims to be frivolous based on his failure to plead antitrust standing. *Decision* at *2. The court found that Golden did not allege that he is a participant in the same

App. 8

market as Qualcomm or that he suffered antitrust injury in that market. *Id.* Rather, the court found that Golden failed to allege the contours of the relevant market whatsoever. *Id.*

On appeal, Golden argues that the district court misinterpreted his antitrust injury claim by discounting the evidentiary value provided by *Federal Trade Commission v. Qualcomm Inc.*, 411 F. Supp. 3d 658, 675 (N.D. Cal. 2019), *rev'd and vacated*, 969 F.3d 974 (9th Cir. 2020) regarding a running royalty rate charged by Qualcomm. Appellant's Br. at 5–6. Golden also argues that the district court did not give adequate weight to his "tying" arrangement arguments. *Id.* at 7. Qualcomm responds that (1) Golden's antitrust claims are time-barred, (2) Golden failed to adequately plead his participation in the same market as Qualcomm, and (3) Golden failed to adequately plead injury suffered in that market. Appellee's Br. at 14–18.

Although Golden's complaint contains general allegations that Qualcomm's activities "substantially affected the flow of interstate commerce," S.A. 23, it fails to allege that Golden is a participant in the same market as Qualcomm. In fact, Golden's complaint seems to allege that he is *not* a participant in the same market as Qualcomm. S.A. 36 ("Qualcomm's anticompetitive practices has [sic] restrained Plaintiff from entering the market to collect royalties on his patented inventions."). Moreover, Golden's complaint fails to adequately address his injury's directness, speculative nature, or complexity in apportioning damages. Instead, the complaint alleges injury only in a conclusory

App. 9

fashion. *See, e.g.*, S.A. 36 ("Qualcomm's anticompetitive practices has [sic] restrained Plaintiff from entering the market to collect royalties on his patented inventions. Plaintiff is entitled to collect damages for any unlicensed use of his inventions. Damages are generally calculated based on lost profits Plaintiff suffered as a result of the use."). Although Golden's complaint seems to reference patent infringement as the purported injury in this way, we have determined that Golden failed to properly plead patent infringement, *supra*.

To the extent that Golden attempts to premise his antitrust claim on a barrier to entry, we agree with the district court that this is "fatally implausible," as Golden "is free to license his patents to whoever wants to license them, but [Golden's conclusory] theory does not state a viable antitrust claim." *Decision* at *2. Golden's arguments on appeal explaining the limited relevance of a district court case that was subsequently reversed and vacated, and clarifying his tying claim, do not remedy the insufficiency of his pleading. We thus agree with the district court that Golden has failed to plausibly plead an antitrust claim.

III

Based on Golden's failure to state a claim for patent infringement, the district court held that he also failed to state a claim for unjust enrichment. This court has recognized that "unjust enrichment is not recognized under California law as a separate cause of action." *Golden v. Intel Corp.*, No. 2023-1257, 2023 WL

App. 10

3262948, at *2 n.3 (Fed. Cir. May 5, 2023) (citing *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004)). Because Golden failed to adequately plead patent infringement, we agree with the district court that he also failed to state plausible a claim for unjust enrichment.

CONCLUSION

We have considered Golden's remaining arguments but find them unpersuasive. For the foregoing reasons, the order of the district court is *affirmed.*

**AFFIRMED**

———————————————————

App. 11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY GOLDEN,<br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM, INC.,<br><br>Defendant. | Case No. 22-cv-03283-HSG<br><br>**ORDER GRANTING<br>MOTION TO DISMISS**<br><br>Dkt. No. 6<br><br>(Filed Mar. 15, 2023) |

## I.   BACKGROUND

This case is one of several Plaintiff has filed in different districts over a period of years raising overlapping or materially identical claims. *See Golden v. Intel Corp.*, No. 22-cv-03828-NC, 2022 WL 17735388, at *4-5 (N.D. Cal. Nov. 22, 2022), Dkt. No. 31 at 4-5, 7-8 (order granting motion to dismiss without leave to amend and listing prior cases); *Golden v. Apple, Inc.*, No. 22-cv-04152-VC (N.D. Cal. Oct. 20, 2022), Dkt. No. 29 (dismissing complaint without leave to amend, and observing that "Golden has been pressing these frivolous claims (or some variation thereof) for nearly 10 years in multiple jurisdictions").

With one exception, every case of which the Court is aware in which a court has issued a ruling has been dismissed as frivolous, in either this district, the District of South Carolina, or the Federal Court of Claims. *Golden v. Apple Inc.*, No. 19-cv-02557-DCC, 2020 WL 415896, at *2–3 (D.S.C. Jan. 27, 2020), *aff'd*, 819 Fed. App'x. 930, 931 (Fed. Cir. 2020) (affirming dismissal

App. 12

"not on the basis of duplicity, but on the ground of frivolousness"); *Golden v. Apple Inc.*, No. 20-cv-02270-JD-KFM, 2021 WL 4260782, at \*2–3 (D.S.C. Sept. 20, 2021), *aff'd*, No. 21-2160, 2022 WL 986984, at \*1 (4th Cir. Mar. 31, 2022); *Golden v. Apple Inc.*, No. 20-cv-04353-JD-KFM, 2021 WL 5074739, at \*2–3 (D.S.C. Nov. 2, 2021), *aff'd*, No. 22-1229, 2022 WL 4103285, at \*2 (Fed. Cir. Sept. 8, 2022); *Golden v. Google, LLC*, No. 21-cv-00244-JD-KFM, 2021 WL 5083804, at \*3 (D.S.C. Nov. 2, 2021); *Golden v. Intel Corp.*, No. 22-03828-NC, 2022 WL 17735388, at \*4–5; *Golden v. Apple, Inc.*, No. 22-cv-04152-VC.

In particular, the Court of Claims dismissed Plaintiff's case against the United States government, in which he alleged that the government "caused cell phone manufacturers," including Qualcomm, "to produce devices that infringe on one or more of his patents." *Golden v. United States*, 156 Fed. Cl. 623, 625 (2021). The District of South Carolina then dismissed a patent infringement lawsuit naming Qualcomm and fifteen other companies, and the Federal Circuit affirmed that dismissal "on the ground of frivolousness." *See* Dkt. No. 6-6; *Golden v. Apple Inc.*, No. 19-cv-02557, 2020 WL 415896 at \*2–3; *Golden v. Apple Inc.*, 819 Fed. Appx. at 931. Six months later, Plaintiff filed another suit in the District of South Carolina against Qualcomm and other defendants, alleging violations of state and federal antitrust law, and that suit too was dismissed based on the Magistrate Judge's recommendation that the claims were "patently frivolous." *Golden v. Apple Inc.*, No. 20-cv-02270-BHH-KFM, 2020

App. 13

WL 11624670, *4 (D.S.C. Sept. 11, 2020), *report and recommendation adopted by Golden v. Apple Inc.*, No. 20-cv-02270- JD-KFM, 2021 WL 4260782 (D.S.C. Sept. 20, 2021). Plaintiff filed yet another lawsuit in the District of South Carolina, which was dismissed as frivolous. *Golden v. Apple Inc.*, No. 20-cv-04353-JD-KFM, 2021 WL 5890508, *5 (D.S.C. Feb. 5, 2021), *report and recommendation adopted by Golden v. Apple Inc.*, No. 20-cv-04353-JD-KFM, 2021 WL 5074739 (D.S.C. Nov. 2, 2021). And shortly thereafter, Plaintiff filed another lawsuit in South Carolina naming Google as the sole defendant, but alleging that Google jointly infringed his patents with both Qualcomm and Apple. *Golden v. Google, LLC*, No. 21-cv-00244-JD-KFM, 2021 WL 5890440, *4 (D.S.C. Apr. 9, 2021), *report and recommendation adopted by Golden v. Google, LLC*, No. 21-cv-00244-JDKFM, 2021 WL 5083804 (Nov. 2, 2021). This case was also dismissed with prejudice as frivolous, with the Magistrate Judge specifically noting that Plaintiff could not "circumvent prior rulings by this court that infringement allegations against Apple/Qualcomm are frivolous." *Golden v. Google, LLC*, 2021 WL 5890440 at *4 (D.S.C. Apr. 9, 2021).[1]

---

[1] The Federal Circuit affirmed the November 2, 2021 dismissal of the complaint against Apple, but reversed the April 9, 2021 dismissal of the complaint against Google. *Golden v. Apple*, 2022 WL 4103285 at *2 (Fed. Cir. 2022). As to the complaint against Google, the Federal Circuit found that the complaint included a claim chart that "attempts—whether successfully or not—to map claim limitations to infringing product features, and it does so in a relatively straightforward manner." *Id.* The Federal Circuit remanded to allow the complaint to be filed and served, but noted that "[o]ur decision does not preclude subsequent motions to

App. 14

The Court finds that the claims in this case are equally as frivolous as Plaintiff's many allegations against Qualcomm that preceded them. As other courts have observed, "[b]ecause Golden neither breaks his allegations down into counts, nor provides a numbering system, it is challenging to say exactly how many counts are at issue." *Golden v. Intel*, 2022 WL 17735388 at *3, n.1. The Court's challenge here is compounded because Plaintiff has attached nearly 1,200 pages of documents to the complaint. The Court need not, and will not, wade through the attachments to attempt to ferret out aspects of the claims not fairly and squarely addressed in the body of the 37-page complaint: Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" Fed. R. Civ. P. 8(a)(2).

With these caveats, it appears Plaintiff is asserting three claims: (1) antitrust violations; (2) unjust enrichment; and (3) patent infringement. Complaint at 1 ("COMPLAINT FOR ANTITRUST LAW VIOLATIONS AND PATENT INFRINGEMENT").

---

dismiss by the defendant for failure to state a claim," and it "express[ed] no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous." *Id.* In the present case, as described below, Plaintiff's allegations fail to meet this standard, and the issue comes before the Court on a fully-briefed motion to dismiss.

App. 15

## II.  MOTION TO DISMISS

### A.  Plaintiff fails to plausibly plead an antitrust claim.

The Complaint alleges that "[u]pon information and belief, Plaintiff believes Qualcomm has formed or created its monopoly for chipsets by 'tying' Plaintiff's CPUs to its wireless cellular modems." Compl. ¶ 52. The theory appears to be that "Qualcomm's 'hold out' strategy of 'no license, no chip' was used to force the co-conspirator OEMs to purchase Plaintiff's patented CPU that Qualcomm 'tied' to its modem." *Id.* ¶ 54. The alleged harm appears to be that "Qualcomm's anticompetitive practices has [sic] restrained Plaintiff from entering the market to collect royalties on his patented inventions." *Id.* ¶ 83. Plaintiff relies heavily throughout the complaint on the district court's findings in *FTC. v. Qualcomm*, 411 F. Supp. 3d 658 (N.D. Cal. 2019), and attaches a copy of that decision to the complaint, without recognizing that the case was reversed and vacated by the Ninth Circuit. *See id.* ¶¶ 76-78; *cf. FTC v. Qualcomm Inc.*, 969 F.3d 974, 1001-1002 (9th Cir. 2020) (finding no antitrust violation based on "no license, no chips" policy because district court "failed to identify how the policy directly impacted Qualcomm's competitors or 'distorted the area of effective competition,'" and policy "involve[d] potential harms to Qualcomm's *customers*, not its competitors, and thus falls outside the relevant antitrust markets") (citations omitted; emphasis in original).

App. 16

Plaintiff's antitrust claim is frivolous. At the outset, Plaintiff lacks antitrust standing. A party seeking to bring a private antitrust action must establish antitrust injury. *American Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 & n.3 (9th Cir. 1999); *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110 n.5 (1986) (requiring antitrust injury to seek injunctive relief under the Clayton Act). To plead antitrust injury, Plaintiff must allege that he suffered the type of injury antitrust laws were designed to prevent and that he is a participant in the same market as the alleged wrongdoers. *Golden v. Intel*, 2022 WL 17735388 at *4 (citing *American Ad Mgmt.*, 190 F.3d at 1055, 1057). Plaintiff fails to allege that he is a participant in the same market as Qualcomm or that he suffered injury in that market, and does not even allege the contours of the claimed market. To the extent the claim is that he is "restrained" from "entering the market to collect royalties on his patented inventions," Compl. ¶ 83, that is fatally implausible: he is free to license his patents to whoever wants to license them, but this theory does not state a viable antitrust claim. To the extent Plaintiff's actual purported injury is patent infringement, the Court addresses that claim below.

## B.  Plaintiff fails to plausibly or adequately plead patent infringement.

As in his prior cases, Plaintiff "fail[s] to include factual allegations beyond the identities of the defendant[], reference to the alleged infringing devices, and the alleged infringed-upon patents." *Golden v. Apple*,

App. 17

No. 20-cv-04353-JD-KFM, 2021 WL 5074739 at *2, *aff'd as to this holding*, No. 22-1229, 2022 WL 4103285 (Fed. Cir. Sept. 8, 2022). The complaint lists two illustrative claims, without explaining what product made by Qualcomm supposedly infringes, or how. Compl. ¶¶ 86-88. Plaintiff references his complaint in *Golden v. United States* for the premise that Qualcomm "had an opportunity" to show that certain claims were invalid, but "failed to appear." *Id.* ¶¶ 84-85. That is irrelevant, and does nothing to adequately put Defendant on notice of his theory of infringement. Nor does a claim chart regarding a GM product, *id.* ¶ 107, or a multi-hundred page claim chart concerning Samsung products, Dkt. No. 1-7, adequately state a claim.

Plaintiff also fails to adequately plead contributory or induced infringement. As for contributory infringement, Plaintiff fails to plead any of the elements of that offense: (1) selling a device capable of infringing the patent, which is not suitable for substantial noninfringing use; (2) with knowledge that the infringing device was especially adapted for use in an infringement of such patent; and (3) actual infringement by another. *Golden v. Intel*, 2022 WL 17735388 at *2. For example, Plaintiff fails to plead facts plausibly supporting a claim that the Snapdragon chipsets or Snapdragon ride platform do not have other noninfringing uses. *See Uniloc U.S.A., Inc. v. Logitech, Inc.*, No. 18-cv-01304, 2018 WL 6025597 (N.D. Cal. Nov. 17, 2018) (granting motion to dismiss where plaintiff "fail[ed] to provide factual underpinnings for its allegations that there are no substantial noninfringing uses of the

App. 18

accused devices"). Similarly, as to induced infringe-
ment, Plaintiff fails to allege facts plausibly supporting
an inference that Qualcomm purposely induced an-
other party to infringe any patent. *See Lifetime Indus.,
Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir.
2017) ("For an allegation of induced infringement to
survive a motion to dismiss, a complaint must plead
facts plausibly showing that the accused infringer spe-
cifically intended another party to infringe the patent
and knew that the other party's acts constituted in-
fringement.") (citation and internal quotation marks
and brackets omitted).

### C. Plaintiff fails to plausibly plead unjust enrichment.

Because Plaintiff fails to state a claim for either
direct or contributory infringement, he also fails to
state a claim for unjust enrichment. *See Golden v. Intel*,
2022 WL 17735388 at *3.

### D. The complaint is dismissed as frivolous without leave to amend.

As noted above, Plaintiff's claims have almost uni-
formly been dismissed in jurisdictions around the na-
tion, often without leave to amend. *See Golden v. Intel*,
No. 22-cv-03828-NC, 2022 WL 17735388 (N.D. Cal,
Nov. 22, 2022); *Golden v. Apple Inc.*, No. 19-cv-02557-
DCC, 2020 WL 415896 (D.S.C. Jan. 27, 2020), *aff'd*, 819
Fed. App'x. 930 (Fed. Cir. 2020) (affirming dismissal
"not on the basis of duplicity, but on the ground of

App. 19

frivolousness"); *Golden v. Apple Inc.*, No. 20-cv-02270-JD-KFM, 2021 WL 4260782 (D.S.C. Sept. 20, 2021), *aff'd*, No. 21-2160, 2022 WL 986984 (4th Cir. Mar. 31, 2022); *Golden v. Apple Inc.*, No. 20-cv-04353-JD-KFM, 2021 WL 5074739 (D.S.C. Nov. 2, 2021), *aff'd*, No. 22-1229, 2022 WL 4103285 (Fed. Cir. Sept. 8, 2022); *Golden v. Google, LLC*, No. 21-cv-00244-JD-KFM, 2021 WL 5083804 (D.S.C. Nov. 2, 2021); *Golden v. Apple*, 22-cv-04152-VC (N.D. Cal. Oct. 20, 2022).

The same result is warranted here: ultimately, Plaintiff has repeatedly shown that he is not capable of pleading these sprawling and repetitive claims against Qualcomm in a manner that satisfies the basic requirements of federal pleading, such that granting leave to amend under these unusual circumstances would be futile. In particular, given what has already been pled, including the complaint's very heavy reliance on the district court's reversed findings in *F.T.C. v. Qualcomm*, no amendment of the antitrust claim at the core of the complaint could cure the fundamental problem that Plaintiff does not have antitrust standing. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (finding that leave to amend is only warranted "if the deficiencies can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint"). And Plaintiff's infringement claims against Qualcomm repeat, either directly or in substance, claims previously found more than once to be frivolous. Accordingly, this is the rare

App. 20

case in which dismissal without leave to amend is war-
ranted on the first round motion to dismiss.

## III. CONCLUSION

The motion to dismiss the complaint is
**GRANTED WITHOUT LEAVE TO AMEND**. All
pending motions, Dkt. Nos. 15, 22, 34, and 46, are de-
nied as moot. The Clerk is directed to enter judgment
against Plaintiff and in favor of Defendant and close
the case.

**IT IS SO ORDERED.**

Dated:   3/15/2023

/s/ Haywood S. Gilliam, Jr.
HAYWOOD S. GILLIAM, JR.
United States District Judge

App. 21

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY GOLDEN,<br><br>　　　Plaintiff,<br><br>　v.<br><br>QUALCOMM, INC.,<br><br>　　　Defendant. | Case No. 22-cv-03283-HSG<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 51<br><br>(Filed Apr. 6, 2023) |

Pending before the Court is Plaintiff Larry Golden's motion for reconsideration of the Court's order granting Defendant Qualcomm's motion to dismiss, Dkt. No. 49. Dkt. No. 51.[1] Qualcomm filed an opposition (Dkt. No. 53, "Opp."), and Plaintiff then filed a document styled as "supplemental authority." (Dkt. No. 54). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). The Court **DENIES** the motion.

## I.   LEGAL STANDARD

In the Northern District of California, Local Rule 7-9 allows for the filing of motions for reconsideration only with respect to interlocutory orders made in a

---

[1] In addition to the motion, Dkt. No. 51, Plaintiff submitted Dkt. No. 52, entitled "Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Reconsideration." The Court considered both filings.

App. 22

case prior to the entry of final judgment. *See* Civil L.R. 7-9(a). Post judgment motions for reconsideration are construed as motions to alter or amend judgment under Federal Rule of Civil Procedure 59(e) (motion to alter or amend judgment) or motions for relief from judgment or order under Federal Rule of Civil Procedure 60(b) (motion for relief from judgment).

Motions for reconsideration should not be frequently made or freely granted; they are not a substitute for appeal or a means of attacking some perceived error of the court. *See Twentieth Century - Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981). 3 [T]he major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989) (quoting *United States v. Desert Gold Mining Co.*, 433 F.2d 713, 715 (9th Cir. 1970)).

Rule 60(b) lists six grounds for relief from a judgment: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial; (3) fraud by the adverse party; (4) the judgment is void; (5) the judgment has been satisfied; (6) any other reason justifying relief. Fed. R. Civ. P. 60(b); *School Dist. 1J v. ACandS Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993).

App. 23

## II.  DISCUSSION

Plaintiff's motion does not present any basis for reconsideration of the Courts dismissal order or the resulting judgment. It simply contends that the Court was wrong to dismiss his case, raising substantially the same arguments Plaintiff presented in opposing the motion to dismiss. Plaintiff has every right to make these arguments on appeal, but he may not relitigate them here. The Court has issued its ruling, final judgment has been entered, and this case remains closed. The motion for reconsideration is thus **DENIED**, and the Clerk is directed not to accept any further filings in this closed case.

**IT IS SO ORDERED.**

Dated:   4/6/2023

/s/ Haywood S. Gilliam, Jr.
HAYWOOD S. GILLIAM, JR.
United States District Judge

App. 24

NOTE:   This order is nonprecedential.

**United States Court of Appeals
for the Federal Circuit**

————————————

**LARRY GOLDEN,**
*Plaintiff-Appellant*

**v.**

**QUALCOMM INCORPORATED,**
*Defendant-Appellee*

————————————

2023-1818

————————————

Appeal from the United States District Court for the Northern District of California in No. 4:22-cv-03283-HSG, Judge Haywood S. Gilliam, Jr.

————————————

**ON PETITION FOR PANEL REHEARING AND
REHEARING EN BANC**

————————————

(Filed Dec. 6, 2023)

Before MOORE, *Chief Judge*, LOURIE, BRYSON[1], DYK, PROST, REYNA, TARANTO, CHEN, HUGHES, STOLL, CUNNINGHAM, and STARK, *Circuit Judges.*[2]

PER CURIAM.

—————

[1] Circuit Judge Bryson participated only in the decision on the petition for panel rehearing.

[2] Circuit Judge Newman did not participate.

App. 25

## ORDER

Larry Golden filed a combined petition for panel rehearing and rehearing en banc. The petition was referred to the panel that heard the appeal, and thereafter the petition was referred to the circuit judges who are in regular active service.

Upon consideration thereof,

IT IS ORDERED THAT:

The petition for panel rehearing is denied.

The petition for rehearing en banc is denied.

The mandate of the court will issue December 13, 2023.

FOR THE COURT

[SEAL]

December 6, 2023           /s/ Jarrett B. Perlow
    Date                 Jarrett B. Perlow
                                Clerk of Court



2311 Douglas Street
Omaha, Nebraska 68102-1214

1-800-225-6964
(402) 342-2831
Fax: (402) 342-4850

E-Mail Address:
contact@cocklelegalbriefs.com

Web Site
www.cocklelegalbriefs.com

No. _____

LARRY GOLDEN,
Petitioner,
v.
QUALCOMM INC.,
Respondent.

**AFFIDAVIT OF SERVICE**

I, Renee Goss, of lawful age, being duly sworn, upon my oath state that I did, on the 5th day of January, 2024, send out from Omaha, NE 1 package(s) containing 3 copies of the PETITION FOR WRIT OF CERTIORARI in the above entitled case. All parties required to be served have been served by Priority Mail.  Packages were plainly addressed to the following:

SEE ATTACHED

**To be filed for:**

LARRY GOLDEN, Petitioner, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
(864) 288-5605
atpg-tech@charter.net

Subscribed and sworn to before me this 5th day of January, 2024.
I am duly authorized under the laws of the State of Nebraska to administer oaths.

State of Nebraska – General Notary
ANDREW COCKLE
My Commission Expires
April 9, 2026

Notary Public

Affiant

44630

**SERVICE LIST**

John Allen Yates
Kyrie Cameron
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX 77046
Tel: 713-623-4844
jyates@pattersonsheridan.com
kcameron@pattersonsheridan.com